UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

---------------------------------------- x
::
JOHN DOE, on behalf of himself and all :
others similarly situated, :
:
    *Plaintiff*, :
:
v. : Case No. 4:24-cv-00391-AW-MJF
:
TRULIEVE INC., :
:
    *Defendant.* :
:
---------------------------------------- x

**PLAINTIFF'S MOTION FOR LEAVE TO FILE ANONYMOUSLY**

Plaintiff John Doe addresses the Court's Order Regarding "John Doe" Plaintiff, ECF No. 7, and respectfully moves this Court for entry of an order permitting Plaintiff to proceed anonymously and submits the following memorandum of law in support.

**I.    INTRODUCTION**

States' effort to decriminalize the use of medical marijuana notwithstanding, marijuana remains a Schedule I controlled substance pursuant to the Controlled Substances Act—illegal at the federal level—and its use highly stigmatized. Florida, for instance, does not prohibit discrimination against medical marijuana users in employment. Nor does federal law.

Because the very injury litigated against—the disclosure of Plaintiff's status as a medical marijuana user—would be incurred as a result of the disclosure of his identity in the pleadings, because any such disclosure would expose Plaintiff to unfair discrimination in the workplace for which he has no protection, and because Plaintiff's identity as a medical marijuana user likely qualifies as protected health information under the Health Insurance Portability and Accountability Act, Plaintiff's is an "exceptional circumstance" allowing him to proceed anonymously under Eleventh Circuit law.

## II.   BACKGROUND

Plaintiff John Doe, a medical marijuana user, has suffered from a debilitating condition for several years. Plf.'s Decl. ¶¶ 1–2.[1] His physician issued a medical marijuana certificate, determining that the seriousness of Plaintiff's condition made the medical benefits of marijuana use likely to outweigh any potential health risks. *Id*. ¶¶ 3–5. Plaintiff continues to use marijuana responsibly to manage his condition and associated pain, adhering to his employer's policies regarding drug use both on and offsite. *Id*. ¶¶ 6–7. For Plaintiff, the distinction is clear: while medical marijuana use is legal, workplace impairment remains strictly prohibited, and Plaintiff abides by such distinction at all times. *Id*. ¶ 8. Plaintiff is currently employed in the medical

---

[1] Plaintiff will file his declaration as soon as the Court approves his Motion to File Under Seal in accordance with Local Rule 5.5.

field and is pursuing further studies with the intention of obtaining a graduate degree in medicine or nursing along with admission in any necessary boards. *Id*. ¶¶ 9–10.

Plaintiff frequented and purchased medical marijuana from Defendant's website on numerous occasions. Compl. ¶ 47 (ECF No. 1). He had no idea that Defendant would allow his unique identifiers to be paired with information about his private marijuana purchasing behavior in a manner that could identify him to third party advertisers or that Defendant would share information about his use of Defendant's site with unnamed third parties. *Id*. Because he was harmed by Defendant's actions, and because unless enjoined, Defendant will continue to commit the privacy violations described in the Complaint, Plaintiff brought seven counts against Defendant for damages and injunctive relief, among other things. *Id*. ¶¶ 92, 99, 105, 133.

Growing societal acceptance notwithstanding, "consistent with its status as a banned drug, [marijuana] users still face the threat of legal sanctions and experiences of stigma that challenge the assumptions of the normalization thesis." Andrew D. Hathaway, et al., *Cannabis normalization and stigma: Contemporary practices of moral regulation*, 11 BRITISH SOC. CRIMINOLOGY 451 (2011). Medical marijuana use—even when offsite and outside of work hours—continues to carry significant stigma, with workplace culture and even employees themselves contributing to the issue. Employees in low safety-sensitive roles tend to view workplace policies

permitting medical marijuana use less favorably than those accommodating prescription medications. Donald M. Trujillo, et al., *Reactions to Employer Policies Regarding Prescription Drugs and Medical Marijuana: The Role of Safety Sensitivity*, 28 J. BUS. & PSYCH. 145 (2013). In higher-risk professions, such as nursing, organizations with strict drug-free policies are often seen as more appealing to prospective employees. *Id*.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 regulates controlled substances, including their manufacturing, distributing, dispensing, and possessing. 21 U.S.C. §§ 841(a)(1), 844(a). Controlled substances are categorized into five schedules based on medical use, abuse potential, and effects. Schedule I drugs possess, in Congress's view, a high potential for abuse, no accepted medical use, and a lack of established safety for use under medical supervision. 21 U.S.C. § 812(b)(1). Despite its initial classification as a Schedule I drug based on the apparently temporary recommendation of the Assistant Secretary of the Department of Health, Education, and Welfare to retain it there pending further studies, *Gonzales v. Raich*, 545 U.S. 1, 14 (2005), marijuana remains a Schedule I substance, *see* 21 U.S.C. § 812(c). This classification makes its manufacture, distribution, or possession a criminal offense, with limited exceptions for use in FDA-approved research studies. *Gonzales*, 545 U.S. at 14.

Florida's medical marijuana statute "is silent as to whether employers must accommodate off-site use of marijuana." Gregory A. Hearing & Matthew A. Bowles, *Medical Marijuana's Effect on Employment Law: The Smoke is Clearing*, 91 FLA. BAR J. 30 (2017). The result is that Florida employers have discretion to discriminate against medical marijuana users in view of marijuana's federal illegality. *Id*.

The Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1301 *et seq*., "is intended to keep a person's protected health information strictly confidential." *Mathews v. Cole*, No. 6:21-CV-808-WWB-EJK, 2023 WL 1102653, at *1 (M.D. Fla. Jan. 30, 2023) (citing *OPIS Management Resources, LLC v. Secretary, Florida Agency for Health Care Admin*., 713 F.3d 1291, 1293 (11th Cir. 2013)). Protected health information (PHI) includes data that relates to an individual's physical or mental health condition, healthcare provision, or healthcare payment, which can identify or reasonably be expected to identify the individual. 45 C.F.R. §§ 160.103, 164.501. "[M]edical marijuana companies . . . might collect and possess data" subject to HIPAA. Barak Cohen, et al., *Cannabis Companies Don't Overlook Data-Related Litigation Risks*, ABA SciTech Law, Summer 2021, at 28, 30; *HIPAA Medical Marijuana Compliance*, COMPLIANCY GROUP, https://compliancy-group.com/hipaa-medical-marijuana-compliance/ (last accessed Nov. 19, 2024) ("HIPAA does in fact apply to the medical marijuana industry.").

The exclusion of HIPAA-protected information from the public record is often a valid reason for filing under seal in federal court in Florida. *See Mathews*, No. 2023 WL 1102653, at *1; *Jones v. Teixeira.*, No. 6:23-CV-1738-PGB-DCI, 2024 WL 4818499, at *2 (M.D. Fla. Nov. 18, 2024) ("If a party wishes to file PHI with the Court, it must be submitted with a motion for filing under seal.").

### III.   ARGUMENT

Under Federal Rule of Civil Procedure 10(a), "every pleading" must name "all the parties." FED. R. CIV. P. 10(a) (2024). Accordingly, there is a strong, but not absolute, presumption that each party is to proceed in his own name. *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (2011). "[W]hether a party's right to privacy overcomes the presumption of judicial openness is a totality-of-the-circumstances question." *In re: Chiquita Brands International, Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020). Three factors, however, stand out: "whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Id*. at 1247 (citing *Plaintiff B*, 631 F.3d at 1316).

Courts also consider whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity in the pleadings, *Doe v. Frank*, 951 F.2d 320, 324 n.6 (1992) (citing *Roe v. Ingraham,* 364 F. Supp. 536

(S.D.N.Y.1973)), and in certain exceptional circumstances, whether public disclosure of the plaintiff's medical condition would cause severe embarrassment and risk full recovery, *Alexandra H. v. Oxford Health Ins., Inc.*, No. 11-23948-CIV, 2012 WL 13194941, at *1 (S.D. Fla. Mar. 23, 2012).

In *Roe v. Ingraham*, the Southern District of New York allowed multiple patients to proceed under pseudonyms while challenging the constitutionality of a New York law requiring the reporting and collection of prescription information. *Ingraham*, 364 F. Supp. at 540–41. The court was persuaded by the plaintiffs' assertion that "requiring disclosure of the identity of certain patients invades the patient's right of privacy and confidentiality, infringes on the doctor's right to prescribe treatment for his patients solely on the basis of medical considerations and discriminates against persons suffering from certain diseases by requiring their identification to a governmental agency as a condition to receiving medical treatment for their illness." *Id*. The Eleventh Circuit approvingly discussed *Ingraham* in a footnote in *Doe v. Frank*. The court clarified that *Ingraham* did not concern the disclosure of highly intimate information; rather, the case pivoted around the fact that revealing the plaintiff's name would have undermined the lawsuit's purpose. *See Frank*, 951 F.2d at 324 n.6. The Eleventh Circuit specified that *Ingraham* applies where the risk of future injury remains, not where "[t]he injury litigated against . . . has already occurred." *Id.*

7

In *Alexandra H. v. Oxford Health Insurance, Inc.*, moreover, despite the Southern District of Florida's recognition that the mere presence of a medical issue does not justify the use of a fictitious name, the court allowed the plaintiff to proceed anonymously because her circumstances exceeded a standard medical matter. 2012 WL 13194941, at *1. The plaintiff suffered from a severe eating disorder and major depression, with a high relapse rate evidenced by her extensive history of inpatient treatments. *Id*. Her psychiatrist affirmed that public disclosure of her identity would cause severe embarrassment and risk her recovery, and her position as an elementary school teacher raised additional concerns about career impact due to the sensitive nature of her condition. *Id*. The court therefore found that the plaintiff had met the burden of demonstrating that her case was exceptionally sensitive and posed a real danger of harm if her identity were disclosed. *Id*.

Like the plaintiff in *Alexandra H.*, Plaintiff risks severe professional repercussions and stigma as a medical marijuana user treating a debilitating condition. His physician certified marijuana as his treatment; but as marijuana remains a federally classified Schedule I substance, 21 U.S.C. § 812(b)(1), its use subjects Plaintiff to heightened legal risks and social stigma, despite Plaintiff's strict adherence to workplace policies.

Plaintiff is pursuing a high-risk profession in medicine or nursing, fields known for their strict views on drug use and policies that often view medical

8

marijuana unfavorably compared to prescription drugs. Donald M. Trujillo, et al., *supra*. Florida's lack of employment protections for offsite medical marijuana use further exposes him to workplace discrimination. *See* Gregory A. Hearing & Matthew A. Bowles, *supra*.

Further, as in *Ingraham*, Plaintiff has sued Defendant to protect his privacy against unwanted disclosure. Plaintiff wishes to stop the publication of his private medical marijuana usage and purchasing information to third parties without consent. Compl. ¶¶ 47, 133. While Plaintiff seeks redress for these past illegal disclosures, he also aims to enjoin any future unauthorized disclosures and data dissemination. *Id.* ¶ 133. If revealing Plaintiff's identity were required for the instant lawsuit, not only would Defendant's third-party advertisers gain access to this information, but the public at large would become aware of Plaintiff's medical marijuana use and purchasing habits, exposing him to potential stigma, professional discrimination, and legal repercussions. Public disclosure of his identity risks undermining the litigation's purpose—preventing unauthorized dissemination of his sensitive medical data—and threatens irreparable harm to his career and reputation.

Finally, given the likelihood that Plaintiff's medical marijuana information qualifies as PHI under HIPAA, disclosure of such data in a public court record would contradict established protections. *See Mathews v. Cole*, No. 6:21-CV-808-WWB-EJK, 2023 WL 1102653, at *1 (M.D. Fla. Jan. 30, 2023) (permitting filing under

seal of HIPAA-protected information); *Jones v. Teixeira.*, No. 6:23-CV-1738-PGB-DCI, 2024 WL 4818499, at *2 (M.D. Fla. Nov. 18, 2024) (same); *Brese v. AMF Bowling Centers, Inc.*, No. 8:20-CV-2469-T-36CPT, 2020 WL 7385691, at *2 (M.D. Fla. Dec. 16, 2020) (same). Accordingly, the confidentiality of Plaintiff's medical marijuana use and purchasing history under HIPAA further strengthens the credibility of his request to avoid public disclosure.

In view of the sensitive nature of Plaintiff's medical condition, the societal stigma surrounding marijuana use, the professional risks involved, and HIPAA's confidentiality guarantees, Plaintiff's case presents an exceptional circumstance warranting the right to proceed pseudonymously.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant the Motion.


Dated: November 19, 2024                  Respectfully submitted,

                                          */s/ Arturo Peña Miranda*
                                          Arturo Peña Miranda
                                          Jennifer Czeisler*
                                          Edward Ciolko*
                                          STERLINGTON, PLLC
                                          One World Trade Center, 85th Floor
                                          New York, New York 10007
                                          Tel.:  929-709-1493
                                          arturo.pena@sterlingtonlaw.com
                                          jen.czeisler@sterlingtonlaw.com

*ed.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
Tycko & Zavareei LLP
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.:  202-973-0900
*kaizpuru@tzlegal.com*

*Counsel for Plaintiff*

**\****Pro Hac Vice* forthcoming

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum, including body, headings, quotations, and footnotes, and excluding those portions exempt from the Rule, contains 2,223 words as measured by Microsoft Office.

*/s/ Arturo Peña Miranda*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The foregoing document was served upon all counsel of record registered as ECF users.

*/s/ Arturo Peña Miranda*