**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JOHN DOE, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

TRULIEVE INC.,

*Defendant.*

Case No. 4:24-cv-00391-AW-MJF

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel.: 929-709-1493
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*ed.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

**Pro Hac Vice* forthcoming

December 6, 2024

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ........................................................................................... 2

III. LEGAL STANDARDS ........................................................................................... 6

A. 12(b)(1) ........................................................................................... 6

B. 12(b)(6) ........................................................................................... 7

IV. ARGUMENT ........................................................................................... 7

A. Trulieve's confusing and contradictory Cookie Button and Privacy Policy do not compel dismissal of any of Plaintiff's claims. ........................................................................................... 7

B. Plaintiff pleads Article III standing. ........................................................................................... 9

1. Plaintiff pleads injury-in fact. ........................................................................................... 10

2. Plaintiff pleads causation and redressability. ........................................................................................... 14

C. Plaintiff states a claim for invasion of privacy. ........................................................................................... 16

1. The Complaint sufficiently alleges intrusion into Plaintiff's private marijuana consumption habits. ........................................................................................... 16

2. The Complaint sufficiently alleges public disclosure of private facts. ........................................................................................... 18

D. Plaintiff states a claim for negligence. ........................................................................................... 20

E. Plaintiff states a claim for violation of the FDUTPA. ........................................................................................... 22

F. Plaintiff states a claim for breach of contract or, in the alternative, breach of implied contract. ........................................................................................... 25

G. Plaintiff states a claim for unjust enrichment in the alternative to breach of contract...... 28

H. Plaintiff states a claim for violations of ECPA. ........................................................................................... 29

V. CONCLUSION ........................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Accord Brahm v. Hosp. Sisters Health Sys.*,
2024 WL 3226135 (W.D. Wisc. June 28, 2024) .......... 27

*Accord Williams v. City of Minneola*,
575 So.2d 683 (Fla. Dist. Ct. App. 1991) .......... 19

*Agency for Health Care Admin. V. Assoc. Indus. of Fla.*,
678 So.2d 1239 (Fla. 1996).......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......... 7

*Barron v. Snyder's-Lance, Inc.*,
2015 WL 11182066, (S.D. Fla. Mar. 20, 2015).......... 23

*Bartsch v. Costello*,
170 So.3d 83 (Fla. Dist. Ct. App. 2015) .......... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......... 7

*Bennett v. Spear*,
520 U.S. 154 (1997).......... 11

*Bray v. Gamestop Corp.*
No. 17-cv-1365, 2018 WL 11226516 (D. Del. Mar. 16, 2018).......... 27

*Cape Publications, Inc. v. Hitchner*,
549 So.2d 1374 (Fla. 1989).......... 18

*Conradis v. Buonocore*,
2021 WL 4243720 (M.D. Fla. Sept. 17, 2021).......... 19

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) .......... 31

*Degutis v. Fin. Freedom, LLC*,
978 F. Supp. 3d 1243 (M.D. Fla. 2013).......... 22

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019).......... 15

*Doe v. Cnty. of Santa Clara,*
2024 WL 3346257 (N.D. Cal. July 8, 2024) .................... 9

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................... 9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................... 26

*Feldman v. Star Tribune Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) .................... 12

*Fraga v. UKG, Inc.*,
2022 WL 19486310 (S.D. Fla. May 10, 2022) .................... 22

*Garcia v. Copenhaver, Bell & Assocs.*,
104 F.3d 1256 (11th Cir. 1997) .................... 6

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .................... 31

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) .................... 11

*Guilder v. State*,
899 So. 2d 412 (Fla. Dist. Ct. App. 2005) .................... 30

*Hall v. Centerspace, LP*,
2023 WL 3435100 (D. Minn. May 12, 2023) .................... 27

*In Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*
48 F.4th 1236 (11th Cir. 2022) .................... 13, 20

*In re 21st Century Oncology Customer Data Sec. Breach Litig*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019) .................... 22

*In re Brinker Data Incident Litig.*,
2020 WL 691848, (M.D. Fla. Jan. 27, 2020) .................... 21, 26, 28

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 12

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
2024 WL 4547212 (S.D. Fla. Sept. 18, 2024) .................... 11, 21

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................... 27

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .................... 10

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .................... 21, 28

*In re In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019 .................... 12

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .................... 12

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................... 12, 13, 21

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .................... 28

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................... 31

*Morgan v. Public Storage*,
2015 WL 11233111 (S.D. Fla. Aug. 17, 2015) .................... 24

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) .................... 7

Muransky v. Godiva Chocolatier, Inc.
979 F.3d 917 (11th Cir. 2020) .................... 12, 13

*Orkin Exterminating Co. v. Petsch*,
872 So.2d 259 (Fla. Dist. Ct. App. 2004) .................... 23

*Parker v. Town of Palm Beach*,
2017 WL 2629490 (S.D. Fla. June 19, 2017) .................... 17

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .................... 11, 13

*Pileggi v. Wash. Newspaper Pub'g Co.*,
2024 WL 324121 (D.D.C. Jan. 29, 2024) .................... 12

*Purrelli v. State Farm Fire & Cas. Co.*,
698 So. 2d 618 (Fla. Dist. Ct. App. 1997) ..... 17

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) ..... 31

*Rector v. Larson's Marine, Inc.*,
479 So.2d 783 (Fla. Dist. Ct. App. 1985) ..... 27

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ..... 16

*Rosado v. Barry Univ. Inc.*,
499 F. Supp. 3d 1152 (S.D. Fla. 2020) ..... 28

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ..... 12

*Selinger v. Kimera Labs, Inc.*,
2022 WL 34444 (S.D. Fla. Jan. 3, 2022) ..... 19

*Shevin v. Sunbeam Television Corp.*,
351 So. 2d 723 (Fla. 1977) ..... 30

*Smith v. Volusia Cnty., Fla.*,
2011 WL 1598741 (M.D. Fla. Apr. 28, 2011) ..... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 6

*Steele v. Offshore Shipbuilding, Inc.*,
867 F.2d 1311 (11th Cir. 1989) ..... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 10

*Trump v. Hawai'i*,
585 U.S. 667 (2018) ..... 14

*Tubby's Customs, Inc. v. Euler*,
225 So.3d 405 (Fla. Dist. Ct. App. 2017) ..... 27

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ..... 7

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019) ........................................................................ 11, 14, 15

**Statutes**

18 U.S.C. § 2511 ............................................................................................................ 29

Fla. Stat. § 501.202(2)..................................................................................................... 22

Fla. Stat. § 934.03(2)(d) .................................................................................................. 30

**Other Authorities**

Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) ..................................... 16

## I. INTRODUCTION

The consumption of marijuana, particularly medical marijuana, is a highly sensitive and private act. Complaint, Dkt. 1 (“Compl.”) ¶ 1. Even in states where marijuana consumption is legal for medical and/ or recreational purposes, marijuana is highly stigmatized. *Id.* As a result, dispensaries bear a significant responsibility to their customers to maintain and protect their personal information. *Id.*

This case arises from Defendant Trulieve, Inc.’s (“Trulieve” or “Defendant”) intentional and harmful misuse of its customers’ private information relating to the purchase and consumption of marijuana. The Complaint alleges that Trulieve intentionally embeds tracking code onto its website that allows over 20 advertising companies to intercept and collect users’ highly sensitive and valuable personal and health information. *See generally* Compl. Trulieve’s egregious privacy violations are extremely offensive, but consumers, including Plaintiff, who use Trulieve’s website to purchase marijuana products do not know that Trulieve is monetizing and selling their data because Trulieve does not disclose its practices. In fact, Trulieve promises that it does not use consumer information for “business purpose[s].” Plaintiff brought this action on behalf of himself and a proposed class of consumers who used Trulieve’s website to recover damages and prevent Trulieve from continuing its deceptive acts.

Trulieve asks the Court to dismiss this action, but its Motion ("Mot.") falls short. Trulieve relies primarily on its Privacy Policy, but as shown in the Complaint and below, Defendant's Privacy Policy is internally contradictory and misleading to consumers—it fails to provide any useful information about Trulieve's conduct, and certainly cannot insulate Trulieve from liability for its misdeeds. Trulieve's other arguments similarly are lacking and insufficient as they largely turn on blind ignorance of the Complaint and rather inaccurately claim that Plaintiff has not alleged facts that are clearly and prominently alleged. Nothing in the Motion supplies a basis for dismissal.

For these reasons, and those herein, Plaintiff respectfully requests that the Court deny this Motion. If the Court is inclined to grant the Motion in any respect, Plaintiff requests that any dismissal be without prejudice in order that Plaintiff may seek leave to amend.

## II. BACKGROUND

Defendant Trulieve is the largest medical marijuana dispensary in Florida, with hundreds of locations and multiple processing facilities. Compl. ¶¶ 2, 11, 19. Through its website and mobile application, Trulieve markets and sells marijuana products and services. *Id.* In the course of doing business and providing marijuana, including medical marijuana, to consumers in Florida and across the country, Trulieve collects personally identifiable information ("PII") and protected health

information ("PHI") from visitors, including IP address (which can reveal users' location), information about medical marijuana purchases and activity on the Trulieve website, and physical location. *Id.* ¶¶ 3, 21.

Trulieve knows or should know that privacy is of utmost importance to consumers who purchase marijuana, including medical marijuana. Marijuana consumption is highly stigmatized and therefore is a personal and private act. *Id.* ¶¶ 1, 4, 14-18.

Unbeknownst to the consumers that use its website, and in direct contradiction to the promises it makes those users, including Plaintiff and the proposed Class Members, Trulieve shares that information with 20+ advertising technology companies—effectively allowing these interlopers to peer over the shoulders of its customers and monitor consumer marijuana consumption without consumer consent. *Id.* ¶¶ 2 & n.2, 22-30.

Consumers who access Trulieve's website are presented with a pop-up window ("Cookie Button") requiring the user to "agree" to Trulieve's use of cookies to "analyze website traffic and enhance your experience on our website." *Id.* ¶ 30; Mot. Ex. A. The Cookie Button fails to disclose that Trulieve will share information about consumers' use of the Trulieve website and mobile app with *other* parties apart from Trulieve itself. *Id.*

Trulieve's website also contains a Privacy Policy that contains misleading and untrue statements about how Trulieve handles consumers' PII and PHI collected through its website. *Id.* ¶¶ 22-25. In response to the frequently asked question "Do we disclose the information we collect to Third Parties," the Privacy Policy discloses only that Trulieve makes disclosures to a government agency—omitting that Trulieve also discloses user information to numerous advertising technology companies:

> **Third Party Disclosure**
>
> *Do we disclose the information we collect to Third-Parties?*
>
> In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

*Id.* ¶ 23; Mot. Ex. B. The Privacy Policy also contains additional disclosures seemingly limited only to California residents:

**Your California Privacy Rights**

The following applies solely to California "consumers" as defined in Section 17014 of Title 18 of the California Code of Regulations. We adopt this notice to comply with the California Consumer Privacy Act of 2018 ("CCPA"). This policy describes our collection, use, disclosure, and "sale" of "personal information" of California consumers as these terms are defined under the CCPA.

Please note that job applicants, current and former employees, and individuals subject to business-to-business communications are not considered "consumers" for the purpose of this policy.

Please note: Trulieve does not knowingly sell personal information of California consumers under the age of sixteen (16) years.

Information We Collect and Share:

We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device ("personal information"). Specifically, we have collected the following categories of personal information from consumers and collected them for the following purposes within the last twelve (12) months:

| Category | Example(s) | Source(s) | Purpose of Collection | Categories of third parties with whom the PI is shared |
|---|---|---|---|---|
| **Identifiers** | Name, postal address, IP address, personal email address, business email address, account name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Customer records** | Name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Commercial Information** | Purchase history | Directly from users | Processing orders/transactions, verifying identity upon receipt of privacy request | N/A |
| **Internet/ Network Activity** | IP address, Information regarding a consumer's interaction with our website, and mobile application. | Directly from users | Providing advertising or marketing services, providing analytic services | AdTech companies |
| **Geolocation Data** | Physical location | Directly from users | Website and app analytic purposes. | AdTech companies |
| **Audio, electronic, visual, etc. information** | Audio recordings | Directly from users | Providing customer service, quality and training purposes. | N/A |

Disclosure of Personal Information for a Business Purpose

Trulieve does not share your personal information with third parties for business purpose.

Compl. ¶ 24; Mot. Ex. B.[1] These deficient disclosures imply that only California residents' information is shared with unnamed "AdTech companies" and so that *Trulieve* can advertise products and services to those California residents—not for third party advertising. Compl. ¶ 24. The Privacy Policy also falsely states that "Trulieve does not share your personal information with third parties for business purpose," rendering the policy confusing and internally contradictory. *Id.* ¶ 22.

[1] *See also* Trulieve, Privacy Policy: Safeguarding Your Online Data, https://www.trulieve.com/privacy (last accessed by counsel Nov. 6, 2024).

Plaintiff is a Florida resident and medical marijuana patient. *Id.* ¶ 45. He used Trulieve's website for several purchases of medical marijuana for personal consumption. *Id.* ¶ 47. He had no idea that Trulieve would allow his unique identifiers to be paired with information about his private marijuana purchasing behavior in a manner that could identify him to third party advertisers or that Trulieve would share information about his use of the Trulieve site with unnamed third parties. *Id.* Plaintiff and the proposed Class Members were harmed when Trulieve sold data about their marijuana consumption, including medical marijuana consumption, to third parties. *Id.* ¶ 39. They were deprived of the value of their information and suffered injury from their loss of privacy rights. *Id.*

## III. LEGAL STANDARDS

### A. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for lack of subject matter jurisdiction, including standing. *See Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). Standing under Article III consists of three elements: (1) injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) which is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A facial attack on Article III standing requires the court merely to look and see whether the plaintiff has sufficiently alleged a basis for subject matter

jurisdiction; the Court may take the allegations in the complaint as true for purposes of the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

### B. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether to dismiss under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

## IV. ARGUMENT

### A. Trulieve's Confusing And Contradictory Cookie Button And Privacy Policy Do Not Compel Dismissal Of Any Of Plaintiff's Claims.

Trulieve's Motion repeatedly relies on the incorrect assertion that the faulty and confusing disclosures in its Cookie Button and Privacy Policy compel dismissal of Plaintiff's complaint and insulate it from liability. This argument fails as to each count because Trulieve's inadequate disclosures fail to put a reasonable person on notice that Trulieve shares their PII and PHI, such as information about browsing

and purchase of marijuana (including medical marijuana) with over 20 third party advertising technology companies for their own business purposes.

First, the Cookie Button does not disclose that Trulieve would disclose Plaintiff's PII or PHI to *other parties*. It discloses only that Trulieve would "analyze website traffic and enhance your experience on our website." Reasonable consumers would interpret this to mean that Trulieve was collecting information for its own use on its own website, not to hand over to an assortment of AdTech companies. Further, the Cookie Button does not actually disable the use of cookies on the Trulieve website or contain any information about the retention or deletion of information collected about users. Thus, consumers who disable cookies are not afforded any benefits and the Cookie Button does not disclose to consumers how Trulieve is using and sharing their information.

Similarly, the Privacy Policy discloses only that Trulieve gives personal information to a state health agency. Reasonable consumers would not infer from this disclosure that Trulieve also gives information to third party advertisers. And although the screenshot in Trulieve's brief cuts off the prominent "Your California Privacy Rights" heading and the "print-to-PDF" version attached as Exhibit B creates an artificial break between the heading and subsequent content, the screenshot above demonstrates that the placement of the "Your California Privacy Rights" heading limits the scope of Trulieve's disclosure to California buyers. Thus,

buyers like Plaintiff, who lives outside California, would not have any reason to think that Trulieve is disclosing their information to AdTech Companies.

Even if that were not so, the Privacy Policy is so confusing and internally contradictory that it can hardly be said to preclude any injury. Apart from giving the false impression that the only third party to receive "the information we collect" is "the Florida Department of Health's Compassionate Use Registry," the Privacy Policy also falsely states that "Trulieve does not share your personal information with third parties for business purpose [*sic*]."

Neither of these misleading and internally contradictory disclosures are sufficient to put Plaintiff or the proposed Class Members on notice of Trulieve's practices, and arguments based on either webpage should be rejected. *See, e.g.*, *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) (internally contradictory disclosures that "disclosed use of some tracking features" but also "indicate that Favor would not disclose (or sell or use for marketing) users' personal information" were not a basis for dismissal); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (disclosures that "some personally identifiable information might be disclosed" for defendant's use were insufficient to put plaintiff on notice of disclosure of PII and PHI to "third parties for those third parties' own use" and foreclose liability).

### B. Plaintiff Pleads Article III Standing.

Contrary to Trulieve's arguments, Plaintiff pleads facts sufficient to show Article III standing. Plaintiff pleads numerous injuries that courts, including in this Circuit, have recognized as cognizable under Article III; causation, because his and the proposed Class Members' injuries are directly traceable to Trulieve's conduct; and redressability in that Plaintiff has alleged that monetary redress will compensate him and the proposed Class Members for their injuries.

**1. Plaintiff Pleads Injury-In Fact.**

"In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). Yet Trulieve asks the Court to agree that Plaintiff's multiple allegations of injury are insufficient to establish the right to proceed in federal court. Trulieve's argument misstates the law and the contents of the Complaint, which alleges numerous injuries sufficient to plead injury-in-fact.

Courts recognize three types of harm under Article III: (1) tangible harms, like physical and monetary harm; (2) intangible harms, like injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts; and (3) material risk of future harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th

883, 889 (11th Cir. 2023). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing. *Bennett v. Spear*, 520 U.S. 154, 168 (1997); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019).

Here, the Complaint pleads that Plaintiff and the proposed Class Members suffered multiple injuries and types of harm: (1) invasion of their privacy rights and loss of their privacy and confidentiality, Compl. ¶¶ 39, 67, 131; (2) pecuniary loss from the sale of their private data to third parties and the resulting loss of value of their private information, *id.* ¶¶ 41, 80, 131; (3) the theft and unauthorized use of their personal property, *id.* ¶¶ 91, 110-112, 131; (4) the loss of the benefit of their bargain with Trulieve, *id.* ¶¶ 98, 104, 131; and (5) the diminishment of their property rights in their PII and PHI, *id.* ¶ 131. *see also infra* at H.

In the data privacy context, these injuries give rise to Article III standing. Invasion of privacy is well-established as analogous to the longstanding tort, while the remaining injuries are concrete and quantifiable. *See, e.g.*, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) (allegation that defendant violated plaintiff's privacy by sharing video rental history with third parties sufficient to confer standing because it was analogous to well-established torts of invasion of privacy and intrusion upon seclusion); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 4547212, at *5 (S.D. Fla. Sept. 18, 2024)

(recognizing that "loss of privacy and confidentiality of . . . private information" and "loss of value of private information" are concrete harms); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) (finding allegations that defendant breached contract to provide data security and plaintiffs lost benefit of their bargain are sufficient to confer Article III standing).[2]

Trulieve's cases are distinguishable. In *Muransky v. Godiva Chocolatier, Inc.*, the plaintiff's purported injuries relied solely on a statutory violation rather than harm to his property or interests and were not analogous to a long-established tort. 979 F.3d 917, 922-932 (11th Cir. 2020). In *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, the only alleged harm was that a debt collector sent information to a mail vendor that populated the data into a form letter. *See* 48 F.4th 1236, 1245

---

[2] *See also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024) (allegation that "personally identifiable information" was disclosed to third party via advertising tracker was sufficiently related to "public disclosure of private facts" to show concrete injury); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (finding that violations of a substantive right to privacy encompassed in the Wiretap Act and other statutes are sufficiently concrete to confer standing); *In re In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019 (allegations that a party tracked browser activity in violation of promises not to do so were sufficiently concrete to confer standing); *Pileggi v. Wash. Newspaper Pub'g Co.*, 2024 WL 324121, at *5 (D.D.C. Jan. 29, 2024) (invasion of privacy was concrete harm sufficient to confer standing); *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1014-15 (D. Minn. 2023) (disclosure of private video-viewing history to third party was sufficiently concrete harm to confer standing); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) (finding that loss of value of PII was sufficient to confer standing).

(11th Cir. 2022). Here, in contrast to *Muransky* and *Hunstein*, Plaintiff has alleged concrete pecuniary harms, such as loss of the benefit of his bargain and loss of the value of his information, as well as intangible harm in that Trulieve shared his private information with third parties—a harm that the Eleventh Circuit has recognized is analogous to the common law invasion of privacy torts, and thus sufficient to establish standing. *See Perry*, 854 F.3d at 1340-41. There is no requirement that Plaintiff "reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace" to establish standing. *In re Mednax*, 603 F. Supp. 3d at 1204. Rather, the plaintiff need only plead some monetary harm or some injury with a close relationship to a traditional tort, like invasion of privacy.

Trulieve also asserts that its confusing and misleading Cookie Button and Privacy Policy should insulate it from a finding of Article III standing. These arguments fail for the reasons stated above. *See supra* Part IV.A.

Finally, the Complaint describes in considerable detail how marijuana usage is heavily stigmatized and the corresponding value and importance consumers place on maintaining their privacy. Compl. ¶¶ 14-18, 43. In light of these facts, consumers who use Trulieve to browse and purchase marijuana products have a reasonable expectation that Trulieve will handle their information with care and not allow unnamed third parties to look over their shoulders to inspect their purchasing data.

The facts in the complaint support the concrete injuries and harm that Plaintiff has alleged, and Plaintiff has satisfied the requirements of Article III.

### 2. Plaintiff Pleads Causation And Redressability.

The Complaint alleges that the harms suffered by Plaintiff and the proposed Class Members are directly traceable to Trulieve's act of placing advertising trackers on its website to capture users' personal information and transmit it to over 20 third-party advertisers. Plaintiff also alleges that monetary redress would compensate him and the proposed Class Members for their injuries. At the pleading stage, these facts are all that is required to show both causation and redressability under Article III.

"To satisfy Article III's causation requirement, the named plaintiffs must allege that their injuries are connected with the conduct of which they complain." *Wilding*, 941 F.3d at 1125 (quoting *Trump v. Hawai'i*, 585 U.S. 667, 697 (2018)). There is no requirement to show proximate causation; the plaintiff merely need show that the injury alleged is fairly traceable to the defendant's conduct, and even harms that flow indirectly from the action in question can suffice. *Wilding*, 941 F.3d at 1125-26. Here, the Complaint alleges that Trulieve permits over 20 third parties to deploy tracking and/or cookie technology to monitor Plaintiff's and the proposed Class Members' activities on Trulieve's site, leading to invasion of privacy by the third parties, pecuniary loss and loss of value from the sale of their information, unauthorized use of personal property, and the loss of the benefit of their bargain.

Because "Article III requires no more than de facto causality," these allegations are sufficient to show traceability. *See Wilding*, 941 F.3d at 1126 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)). Plaintiff's standing does not rely on speculation about the effects of Trulieve's actions in installing or permitting the installation of ad trackers on its site; the effects are pleaded directly in the Complaint. *Dep't of Commerce*, 588 U.S. at 768 (where "theory of standing does not rest on mere speculation" but instead upon a "predictable effect" of the defendant's acts, traceability is satisfied); *In re Fortra*, 2024 WL 4547212, at *6 (finding traceability satisfied by alleging that defendants failed to secure their data and put them at risk). Trulieve's argument that Plaintiff has not connected his injuries to Defendant's conduct ignores the allegations in the complaint.

As for redressability, Trulieve challenges this element in a single sentence (unsupported by authority) asserting that Plaintiff has not connected the remedies sought to the harms suffered. Again, Trulieve ignores the complaint which alleges the harms suffered and further alleges that his injuries are redressable via damages and injunctive relief. *See* Compl. ¶¶ 69, 80-82, 91-92, 98-99, 103-105, 113-114, 131-133. To have Article III standing, a plaintiff need not demonstrate anything more than "a substantial likelihood of redressability." *Wilding*, 941 F.3d at 1126-27. Where the plaintiff alleges that if he prevails he is entitled to damages, redressability

is satisfied. *Id. See also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (finding standing where plaintiffs "allege a monetary injury and an award of compensatory damages would redress that injury"). As Plaintiff has pleaded that damages and the other relief pleaded in the complaint would redress his and the proposed Class Members' injuries, redressability is satisfied.

### C. Plaintiff States A Claim For Invasion Of Privacy.

The right to privacy is essentially "the right to be let alone, the right to live in a community without being held up to public gaze if you don't want to be held up to public gaze." Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890). The Complaint alleges two ways in which Trulieve invaded Plaintiff's privacy: (1) intrusion into a private matter, and (2) public disclosure of private facts.[3] Since the Privacy Policy does not dispose of Plaintiff's privacy interest in his marijuana purchasing activities, Trulieve's arguments fail.

#### 1. The Complaint Sufficiently Alleges Intrusion Into Plaintiff's Private Marijuana Consumption Habits.

To establish an invasion of privacy based on intrusion, the plaintiff must show (1) an intentional intrusion by the defendant into a matter (2) into which the plaintiff

[3] Florida law recognizes four types of wrongful conduct that can be remedied through an invasion of privacy action: (1) appropriation, i.e., unauthorized use of a name or likeness for a benefit; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye. *See Agency for Health Care Admin. V. Assoc. Indus. of Fla.*, 678 So.2d 1239, 1252 n.20 (Fla. 1996).

has a right to keep private (3) by use of a method that is objectionable to a reasonable person. *See Parker v. Town of Palm Beach*, 2017 WL 2629490, at *3 (S.D. Fla. June 19, 2017) (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618 (Fla. Dist. Ct. App. 1997)). Here, Plaintiff alleges that his browsing and purchasing of marijuana, including medical marijuana, is a "matter," and that Trulieve intruded on that "matter" when it allowed unauthorized third parties to access that "matter." Plaintiff alleges that he had a reasonable expectation of privacy in using Trulieve's website to browse and purchase marijuana because of the stigma attached to marijuana consumption. *See* Compl. ¶¶ 14-18, 43. Further, Plaintiff alleges that the intrusion was highly offensive because it violated his reasonable privacy expectations and was done in a secret manner that ordinary consumers cannot detect. *Id.* ¶¶ 65-67.

Trulieve's only argument for dismissal is that Plaintiff could not have had an expectation of privacy in his private browsing and purchasing from Trulieve's website because of its confusing and internally contradictory disclosures. But as explained above, reasonable people would not infer from the disclosure that Trulieve gave information to a government health agency that it was also giving information to third party advertisers. And the California-specific disclosure is also inadequate to deprive Plaintiff of his expectation of privacy because it appears limited to California consumers, is internally contradictory, and does not identify the list of

third-party advertisers to whom Trulieve was handing over Plaintiff's private information. *See supra* Part IV.A. Further, the statement that Trulieve does not use consumers' information for "business purpose" does support a finding that Plaintiff and the proposed Class Members have a privacy interest in information about their use of the Trulieve website.

Trulieve cites no cases to support its position that its confusing Privacy Policy compels dismissal of this action. And in any case, its position is incorrect. Trulieve's challenge to the intrusion upon seclusion claim falls short.

### 2. The Complaint Sufficiently Alleges Public Disclosure Of Private Facts.

The Complaint also sufficiently alleges public disclosure of private facts. To state a claim for public disclosure of private facts, the plaintiff must show (1) publication (2) of private facts (3) that are offensive and (4) are not of public concern. *Cape Publications, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989) (citing Restatement (Second) of Torts § 652D)). Plaintiff alleges that facts relating to his and the potential Class Members' marijuana consumption are private and offensive (in that they are highly stigmatized and it is important to consumers to keep the information private). Compl. ¶¶ 14-18, 43. Plaintiff further alleges that Trulieve disclosed this private information to over twenty advertising companies via secretive and surreptitious means without his or the putative Class Members' consent. *Id.* ¶¶ 61-67.

Trulieve's only argument for dismissal of this aspect of the invasion of privacy claim is its incorrect statement that publication must be "to the public at large." Mot. at 17. That is not the law. Instead, the tort of invasion of privacy may be accomplished by publication to "a large number of persons." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989) (disclosure to a handful of coworkers insufficient). *Accord Williams v. City of Minneola*, 575 So.2d 683, 689 (Fla. Dist. Ct. App. 1991) (noting that "a defendant may become liable through revealing the matter to only one person, from whom the information predictably goes to many").

Trulieve cites no cases for its argument that publication to over twenty undisclosed AdTech companies represent a discrete or limited publication. Trulieve does not even cite to cases establishing a threshold for a "large number." Perhaps this is because there is no precise threshold and the facts and circumstances of each case must be taken into consideration; in other words, this is an issue for the jury. *See, e.g.*, 9 Am. L. of Torts § 30:34. In any event, multiple Florida courts have found no requirement to state a precise number of recipients in the complaint. *See, e.g.*, *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at *8 (S.D. Fla. Jan. 3, 2022) (disclosure of information about plaintiff's sexual history to unspecified number of "other individuals" sufficed to state a claim); *Conradis v. Buonocore*, 2021 WL 4243720, at *5 (M.D. Fla. Sept. 17, 2021) (publishing nude photos online sufficient

to state a claim, though number of persons who viewed them was not alleged); *Smith v. Volusia Cnty., Fla.*, 2011 WL 1598741, at *6 (M.D. Fla. Apr. 28, 2011) (allegation that defendant told "other members of the Beach Patrol" about plaintiff's sexual relationship with coworker was sufficient to state a claim).

Trulieve's only case, *Hunstein*, is again distinguishable because in *Hunstein* the plaintiff alleged only that information was transmitted to a mail vendor. 48 F.4th at 1244. That is a single company presumably acting as the defendant's agent. Here, in contrast, Plaintiff alleges that the information was disclosed to many actors for unspecified business purposes to which Plaintiff and the proposed Class Members never agreed. Since Trulieve has not shown the Complaint fails to state a claim, its motion must be denied.

### D. Plaintiff States A Claim For Negligence.

Count II pleads in the alternative to the intentional torts that Trulieve acted negligently in allowing unauthorized third parties to access Plaintiff's and the proposed Class Members' PHI and PII via embedded tracking technologies. A negligence claim has four elements: (1) a duty to conform to a particular standard of conduct; (2) breach of that duty by the defendant; (3) causation; and (4) loss or damage to the plaintiff. *Bartsch v. Costello*, 170 So.3d 83, 86 (Fla. Dist. Ct. App. 2015). Trulieve concedes that Plaintiff has "alleged sufficient facts to satisfy that Trulieve had a duty," and indeed, where, as here a business "collects sensitive private

data from consumers, it has a duty to protect that information." *In re Fortra*, 2024 WL 4547212, at *8 (cleaned up).

With respect to breach of its duty, Trulieve again relies on the confusing Cookie Button and Privacy Policy. But neither set of disclosures put reasonable consumers on notice of Trulieve's actual conduct. *See supra* Part IV.A. Thus, the injuries that Plaintiff and the proposed Class Members suffered are directly traceable to Trulieve's unauthorized conduct. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 at 717.

Trulieve's attacks on Plaintiff's damages allegations also fall short. "Florida defines damages in negligence cases as 'some actual harm.'" *In re Mednax*, 603 F. Supp. 3d at 1224 (quoting *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020)). And contrary to Trulieve's incorrect argument, diminution in value of PII and PHI, as well as access of PII and PHI by unauthorized third parties, satisfy the requirement to plead damages for purposes of a negligence claim. *See, e.g.*, *In re Mednax*, 603 F. Supp. 3d at 1224; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 717. The amount of these damages is an issue for summary judgment or trial. *In re Brinker*, 2020 WL 691848, at *8.

Again, Trulieve's cases are distinguishable. In contrast to the allegations in the Complaint, in Trulieve's cases, the plaintiffs failed to allege diminished value of PII because they "*[did] not* allege that there exists a market for consumer PII." *See*

*Fraga v. UKG, Inc.*, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) (emphasis in original); *see also In re 21st Century Oncology Customer Data Sec. Breach Litig*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (same problem). Here, the Complaint contains many allegations establishing the value of Plaintiff's and the Class Members' PII/PHI. *See* Compl. ¶¶ 40-44, 80-81. The Motion should be denied as to Count II.

### E. Plaintiff States A Claim For Violation Of The FDUTPA.

Count III states a claim for violation of the Florida Unfair and Deceptive Practices Act ("FDUTPA"), alleging that Trulieve made material misrepresentations to consumers by falsely promising not to share their PII and PHI with third parties. *E.g.*, Compl. ¶¶ 89-90. The Florida Legislature enacted FDUTPA to protect the public "from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A claim for damages requires showing (1) a deceptive or unfair act or practice; (2) causation; and (3) actual damages. *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 3d 1243, 1264 (M.D. Fla. 2013). A deceptive practice is one that is "likely to mislead" consumers, while an unfair practice "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Id.* (citations omitted).

Again, Trulieve asserts that the Cookie Button and Privacy Policy undermine Plaintiff's allegations; again, Trulieve is wrong. *See supra* Part IV.A. Contrary to Trulieve's arguments, its purported disclosures are likely to mislead consumers about Trulieve's practices. *See id.*

Plaintiff's damages allegations are also sufficient under FDUTPA. The Complaint alleges that Trulieve took money or property from Plaintiff and the proposed Class Members by misrepresenting that it would not disclose information to third parties, then doing so anyway. Compl. ¶¶ 89-90. In other words, Trulieve enticed Plaintiff and the proposed Class Members to make purchases they would not have made, had they known the truth about Trulieve's data sharing practices. *Id.* ¶ 39 ("Reasonable consumers, including Plaintiff, would not have used the Trulieve.com website had they known that their privacy rights would be violated as a result."). These allegations are sufficient to state a claim under FDUTPA. *See, e.g.*, *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *8 (S.D. Fla. Mar. 20, 2015) (allegations that consumers purchased products they would not have purchased had they known the truth stated a claim for violation of FDUTPA).

Further, FDUTPA allows a consumer to recover the diminished value of the services received. *See, e.g.*, *Orkin Exterminating Co. v. Petsch*, 872 So.2d 259, 263 (Fla. Dist. Ct. App. 2004). Plaintiff alleges that he and the proposed Class Members reasonably expected that as part of their business dealings with Trulieve, Trulieve

would protect their personal and sensitive information and would not disclose it to third parties. Compl. ¶¶ 33-38. Accordingly, at a minimum, they are entitled to receive the difference between the value of the marijuana products they paid for, which included the expectation that the purchase information would be kept private, versus what they received—a public purchase transaction made known to over twenty different undisclosed and unauthorized advertising companies for unspecified business purposes.

Trulieve's argument (and the two cases it cites) seeks to limit the measure of damages to the quality of the marijuana products that Plaintiff purchased. Mot. at pp. 21-22. But while the measure of quality of a particular product "is helpful where there is an actual product or service being provided, and the defendant's deceptive act alters the product's or services value," "FDUTPA damages are not . . . limited to this measure of damages." *Morgan v. Public Storage*, 2015 WL 11233111, at *1-2 (S.D. Fla. Aug. 17, 2015). FDUTPA claims exist where a defendant misrepresents the nature of fees it charges, *id.*, and thus, can also exist where, as here, a defendant misrepresents the benefits of the services it purports to offer. Trulieve misrepresented to Plaintiff and the proposed class that it took their privacy seriously and would protect their information from third parties, and then, once it had enticed them to shop for marijuana products on its website, disclosed their information to ad trackers. Plaintiff and the proposed Class Members are entitled to recover the

difference between the service they thought they were getting—a private transaction—and what they actually got—a public one.

### F. Plaintiff States A Claim For Breach Of Contract Or, In The Alternative, Breach Of Implied Contract.

Counts IV and V plead claims for breach of contract or, in the alternative, breach of implied contract, respectively. Count IV alleges (and Trulieve does not dispute) that the Privacy Policy is a contract between Plaintiff and the proposed Class Members, on the one hand, and Trulieve, on the other. Compl. ¶ 96. Trulieve promises to share information only with the Florida Department of Health's Compassionate Use Registry (and for California consumers, a limited quantity of information with "AdTech companies"). Compl. ¶¶ 22-24, 97. The Privacy Policy also states that Trulieve "does not share your personal information with third parties for business purpose." Compl. ¶ 22. But Trulieve violates these promises, resulting in loss of the benefit of the bargain and overcharge for Trulieve's services, which consumers understand to include the Privacy Policy. *Id.* ¶¶ 97-98. Count V, pleaded in the alternative, alleges that even if the Court finds that the Privacy Policy is not an express contract, Plaintiff and the proposed Class Members entered into an implied contract with Trulieve to safeguard their private information. *Id.* ¶¶ 101-103. By in fact sharing their information with unauthorized third parties, Trulieve breached that agreement. *Id.* ¶ 104.

Once again Trulieve relies on its Privacy Policy; but again the Privacy Policy does not foreclose either claim. *See supra* Part IV.A.

Trulieve also challenges Plaintiff's damages theory, arguing that Plaintiff has not alleged sufficient facts to establish that he or the proposed Class Members lost the benefit of their bargain and overpaid for services they believed to include the Privacy Policy. Again, Trulieve ignores the well-pleaded facts. The Complaint includes numerous details about how consumers understood privacy protection to be part of their bargain with Trulieve. *E.g.*, Compl. ¶¶ 33 ("Trulieve[] violates reasonable consumer expectations for how Trulieve will treat sensitive medical information."); 37 ("[C]onsumers rightly presume that this PII and PHI is going to be protected from unauthorized third parties."); 39 ("Reasonable consumers, including Plaintiff, would not have used the Trulieve.com website had they known that their privacy rights would be violated as a result."). By violating its promises to protect consumer privacy, Trulieve diminished the benefit of this bargain consumers believed they were receiving. Many federal courts have held that an implied contract to safeguard customers' sensitive data could reasonably be found to exist in transactions where consumers hand over personal information as part of a transaction. *See, e.g.*, *In re Brinker*, 2020 WL 691848, at *4-5. *See also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (in privacy case, complaint's references to identified portions of Meta's terms of service and privacy

policy were sufficiently definite to "provide a rational basis for assessment of damages")

It is well-established that reduced benefit of the bargain is an appropriate measure of contract damages, including in the privacy contract. *See, e.g.*, *Tubby's Customs, Inc. v. Euler*, 225 So.3d 405, 407 (Fla. Dist. Ct. App. 2017) (benefit of the bargain an appropriate measure of damages under FL law); *Rector v. Larson's Marine, Inc.*, 479 So.2d 783, 785 (Fla. Dist. Ct. App. 1985) (recognizing that an injured party may "insist upon the benefit of his bargain, and seek the damages that would place him in the position he would have been had the contract been completely performed"). *Accord Brahm v. Hosp. Sisters Health Sys.*, 2024 WL 3226135, at *4 (W.D. Wisc. June 28, 2024) (citing numerous cases); *Hall v. Centerspace, LP*, 2023 WL 3435100, at 7-8 (D. Minn. May 12, 2023) (plaintiff alleged damages sufficient to support a claim for breach of implied contract where plaintiff asserted the value of his PII was diminished); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) ("Courts have approved damages based on benefit of the bargain in several technology cases involving privacy."); *Bray v. Gamestop Corp.*, No. 17-cv-1365, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) ("[P]laintiffs have plausibly alleged that data security was part of what they paid for but did not receive.").

The Complaint also does not limit damages to benefit of the bargain; rather, Plaintiff seeks all damages available under law, Compl. ¶¶ 99, 104, which in Florida also includes compensatory damages flowing from the breach, *In re Brinker*, 2020 WL 691848, at *6. *See also, e.g.*, *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1297 (S.D. Cal. 2020) ("The dissemination of one's personal information can satisfy the damages element of a breach of contract claim."). At a minimum, "debates over the value of Plaintiffs' loss are fact disputes better left for summary judgment or trial." *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023).

### G. Plaintiff States A Claim For Unjust Enrichment In The Alternative To Breach Of Contract.

In Count VI, Plaintiff states a claim for unjust enrichment in the alternative to breach of contract. Trulieve does not argue that Plaintiff has not properly pleaded the elements of unjust enrichment; instead, Trulieve complains only that Count VI is pleaded in the alternative. Mot. at pp. 24-25. Under Federal Rule 8(d), Plaintiff may plead in the alternative and the pleading is sufficient if any one of them is sufficient. Fed. R. Civ. P. 8(d)(2). *See also, e.g.*, *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) ("Although it is well established that an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy, it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim." (citations omitted)). At this point, to the extent

there is any dispute over whether the Privacy Policy expressly governs Trulieve's obligations to consumers who use its website—and as stated previously the internal contradictions and misleading nature in Trulieve's disclosures may raise a reasonable question as to whether it does, *see supra* Part IV.A.—the unjust enrichment claim should survive dismissal.

**H. Plaintiff States A Claim For Violations Of ECPA.**

Finally, Plaintiff states a claim for violations of ECPA, and Trulieve has not shown otherwise. ECPA makes it illegal intentionally to intercept, or attempt to intercept, certain communications and disclose or use their contents. 18 U.S.C. § 2511. A person whose electronic communications were intercepted may bring a civil action under ECPA. *Id.* § 2520(a). The Complaint alleges that Trulieve violated ECPA when it disclosed the contents of Plaintiff's and the proposed Class Members' communications relating to the purchase and use of marijuana, including medical marijuana, with a tortious and/or criminal purpose. *See* Compl. ¶¶ 121-125; *see also* 18 U.S.C. § 2511(2)(d). Trulieve intentionally committed tortious acts by collecting and disclosing Plaintiff's and the proposed Class Members' PII and PHI, thereby intruding upon their privacy, trespassing upon their property, and violating the federal wire fraud statute by way of the false and misleading statements in its Privacy

Policy. Compl. ¶¶ 125-130.[4] Trulieve's actions, as described in the Complaint, Compl. ¶¶ 125-130, are in any case a violation of section 934.03(2)(d), Florida Statutes. Unlike its federal counterpart, section 934.03(2)(d), Florida's wiretapping statute, "require[s] all parties to a defined wire or oral communication to give prior consent." *Guilder v. State*, 899 So. 2d 412, 417–18 (Fla. Dist. Ct. App. 2005) (emphasis omitted) (quoting *Shevin v. Sunbeam Television Corp.*, 351 So. 2d 723, 726–27 (Fla. 1977)). Lacking a one-party consent exception to wiretapping, the statute embodies "a policy decision by the Florida legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to the conversation." *Id*.

Trulieve's incorrect contention that Plaintiff has not alleged the communication was intercepted for purposes of committing a criminal or tortious act therefore ignores the allegations in paragraphs 125 through 130. *See* Compl. ¶¶ 125-130 ("In disclosing the content of Plaintiff's and the Class members' communications relating to the purchase and use of medical marijuana, Trulieve had a purpose that was tortious, criminal, and designed to violate statutory and constitutional provisions . . . ."). Trulieve does not mount any challenge to the

---

[4] Plaintiff does not dispute that Trulieve was the intended recipient of the communications. However, Plaintiff contends that the collection and disclosure of his information was made with tortious and/or criminal intent, putting it outside the exception in 18 U.S.C. § 2511(2)(d).

sufficiency of these allegations; it simply asserts that the allegations are not there, which they are.

As described above, *see supra* Part IV.C, numerous allegations in the complaint plausibly allege that Trulieve invaded Plaintiff's and the proposed Class Members' privacy. Further, the Complaint alleges that Trulieve made false statements about its intentions and conduct with respect to Plaintiff's and the proposed Class Members' PHI and PII in its Privacy Policy. *See supra* Part IV.A. Plaintiff also alleges that these acts were committed intentionally. Compl. ¶¶ 7, 32, 60-61, 70, 118, 125-26, 128-30.

Many courts have held that nearly identical allegations are sufficient to state a claim under ECPA. *See, e.g.*, *Gay v. Garnet Health*, 2024 WL 4203263, at *3 (S.D.N.Y. Sept. 16, 2024) (allegation that healthcare provider embedded add trackers and transmitted their PII and PHI to third parties were sufficient to plead ECPA violation); *Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 WL 3586357, at *6-8 (S.D.N.Y. July 30, 2024) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *4-5 (W.D.N.Y. Mar. 19, 2024) (same); *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *16 (C.D. Cal. May 9, 2024) (same). In contrast, Trulieve does not cite a single case supporting its argument that these allegations are insufficient. The Motion should be denied.

## V. CONCLUSION

Trulieve plainly fails to show that the privacy violations described in the Complaint fall short of Rules 12(b)(1) or 12(b)(6). Accordingly, the Motion should be denied. However, if the Court is inclined to grant the Motion in any respect, Plaintiff requests that any dismissal be without prejudice.

Dated: December 6, 2024

Respectfully submitted,

*/s/ Arturo Peña Miranda*
Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel.: 929-709-1493
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*ed.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

**Pro Hac Vice* forthcoming

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum, including body, headings, quotations, and footnotes, and excluding those portions exempt from the Rule, contains 7,467 words as measured by Microsoft Office.

*/s/ Arturo Peña Miranda*