## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| ──────────────────── x | |
| : | |
| MARK ROBINSON, on behalf of : | |
| himself and all others similarly situated, : | Case No. 4:24-cv-391-AW-MAF |
| : | |
| *Plaintiff*, : | **CLASS ACTION** |
| : | |
| v. : | AMENDED CLASS ACTION |
| : | COMPLAINT |
| TRULIEVE INC., : | |
| : | **DEMAND FOR JURY TRIAL** |
| *Defendant*. : | |
| : | |
| ──────────────────── x | |

Plaintiff Mark Robinson, on behalf of himself and all others similarly situated, brings the following Amended Class Action Complaint (the "Action") against Defendant Trulieve Inc. ("Trulieve"), for actual damages, treble damages, declaratory and injunctive relief, costs of suit, pre- and post- judgment interest and reasonable costs and attorneys' fees, and other relief upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of his counsel, as follows:

I.     INTRODUCTION

*Your privacy is important to us.*

Trulieve Privacy Policy[1]

1.     The consumption of marijuana, especially in the medicinal context, is a highly sensitive and private act. Marijuana consumption is highly stigmatized, even in states where using marijuana is legal for medical and/or recreational purposes. Dispensaries carry significant responsibility to safeguard the privacy of their consumers, who often entrust extremely personal information to dispensaries' care in the course of purchasing marijuana products.

---

[1] https://www.trulieve.com/privacy, (last accessed Sept. 16, 2024).

2.      Trulieve is the largest medical marijuana dispensary conglomerate in the State of Florida and markets and sells marijuana to consumers across the United States. As one of the United States' largest purveyor of marijuana products, Trulieve knows, or should know, the importance of protecting its customers' privacy. Trulieve admits on its own website that customers' privacy "is important." However, on Trulieve's website (Trulieve.com) and mobile application, where medical marijuana patients seek to find relief for painful (and sometimes terminal) illnesses, Trulieve permits an astounding number of third-party companies[2] to deploy tracking or cookie technology that monitor visitors' every move. Thus, in addition to being a major seller of marijuana products, Trulieve is also a major seller of customer information. While Trulieve is very much a marijuana company, it is very much also a data processor.  The data and knowledge that Trulieve has – whether certain individuals are cannabis users – is highly valuable to other cannabis companies and ancillary cannabis businesses.  This is especially true with respect to

---

[2] These companies are:

Ad trackers (code on websites containing advertising technology to build advertising profiles or to identify visitors of websites) include but not limited to: eyeota Limited, IPONWEB Gmbh, PubMatic, Inc., Alphabet, Inc., Zeta Global, Twitter, Inc., Oracle Corporation, LiveIntent Inc., Telaria, Index Exchange, Inc., Adform A/S, Adobe, Inc., OpenX Technologies Inc., LiveRamp Holdings, Inc. Adelphic, Inc., Neustar, Inc., Media.net, Advertising FZ-LLC, The Trade Desk, Inc., Microsoft Corporation, Beeswax and Magnite, Inc.

Third-party cookies (code on websites used by advertising tracking companies to profile users based on internet usage) include but not limited to: Index Exchange, Inc., eyeota Limited, Collective Roll, Trade Desk, Inc., Twitter, Inc., Adelphic, Inc., Zeta Global, Alphabet, Inc., Adobe, Inc., Beeswax, LiveRamp Holdings, Inc., Microsoft Corporation, IPONWEB Gmbh and Magnite, Inc.

the provision of medical services through the sale of marijuana in states where marijuana is only legal for medicinal purposes.

3.     In the course of doing business to provide these medical services, Trulieve collects personally identifiable information ("PII") and sensitive protected health information ("PHI") through the Trulieve website and mobile application. The PII and PHI that Trulieve collects includes but is not limited to: internet protocol address (which can reveal users' location), information about medical marijuana purchases and activity on the Trulieve website and mobile application, and physical location using geolocation data.[3]   And while Trulieve states that it collects this information in its Privacy Policy, it does not disclose that it is selling medical information – including the fact that users are browsing and buying marijuana for medical purposes – to advertisers like Google, Oracle, and Microsoft.

4.     Marijuana consumers, and, especially, medical marijuana patients, like any other medical patients needing any other medication, have a fundamental right to privacy.  These patients would not assume that upon entering a brick-and-mortar dispensary, their movements were being monitored and records of their activities sold to third parties for advertising. And thus these patients *also* do not assume that when they *digitally* walk into Trulieve, by visiting Trulieve's website to browse and purchase marijuana products online, that Trulieve has invited 20+ other companies

---

[3] https://www.trulieve.com/privacy, (last accessed Sept. 16, 2024).

to monitor them and use their most personal information (their use of marijuana) for advertising purposes.  Moreover, for many marijuana users – they fear potential repercussions of their family, their employer, or the federal government finding out that they use cannabis: a product which is still federally illegal.

5.      When using the Trulieve website and/or mobile application, Plaintiff did not consent to the use of extensive tracking technology that would transmit PII and PHI to dozens of corporations scattered throughout the digital world.  Against this backdrop, Plaintiff, on behalf of himself and all others similarly situated, brings this Action, seeking actual damages, statutory damages, treble damages, declaratory and injunctive relief, costs of suit, pre- and post-judgment interest and reasonable costs and attorneys' fees under state law and the doctrine of unjust enrichment.

II.    JURISDICTION AND VENUE

6.      *Subject Matter Jurisdiction.*  This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interests and costs, there are well over 100 putative Class members, and minimal diversity exists because one or more putative Class members are citizens of a different state than at least one Defendant.

7.      *Personal Jurisdiction.*  This Court has personal jurisdiction over Defendant because its headquarters is located in the state of Florida – specifically,

in this District.  Additionally, this Court has personal jurisdiction over Defendant because Defendant intentionally availed itself of this jurisdiction by choosing to do business in Florida.  Defendant Trulieve has over 100 locations in Florida, serving over 100,000 patients, and Trulieve knew or should have known that their tracking technologies were being used to intercept the actions of Plaintiff and Class members on the Trulieve website.

8.    *Venue.*  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant Trulieve is located in this District, the Defendant conducts business in this District, and a substantial part of the events, acts and omissions giving rise to Plaintiff's claims occurred in this District.

III.    PARTIES

*Plaintiff Mark Robinson*

9.    Plaintiff Mark Robinson is a Florida resident domiciled in Brevard County.

*Defendant Trulieve, Inc.*

10.    Defendant is a Florida corporation with its U.S. headquarters located at 6749 Ben Bostic Road, Quincy, Florida 32351.

11.    Trulieve is the largest marijuana dispensary conglomerate in the State of Florida, with over 130 locations and six processing facilities.  Trulieve's 2023 revenue was $1.129 billion.

12.    Trulieve also operates dispensaries in eight other states (Arizona, Pennsylvania, West Virginia, Georgia, Maryland, Ohio, Connecticut and Colorado). Currently, Trulieve operates 192 dispensaries spread throughout the states in which it is licensed to sell marijuana products and has 16 U.S. processing facilities.

13.    According to Trulieve, "[Trulieve is] able to collect and analyze data to discern customer preferences, patterns and trends" which "inform… production[,] product allocation, promotional strategies and *targeted outreach*."[4]

### *Factual Allegations*

A. *Marijuana in the United States*

14.    In the United States, cannabis-derived products were commonly used as medicine for ailments and chronic pain during the 19th and into the 20th century. But in 1937, with the passage of the "Marihuana Tax Act," the federal government imposed stringent federal restrictions on the use and sale of cannabis in the U.S. And, from about 1937 through the mid-1990's, cannabis consumption of any kind was more-or-less forbidden throughout the U.S.

15.    Throughout this period of time, cannabis consumption developed a

---

[4] Trulieve Cannabis Corp., Form 10-K (2023), *available at* https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=318116443&type=HTML& symbol=TCNNF&cdn=39b20d549f73f87d2eb2a0126efc764a&companyName=Trulieve+Cannabis+Corp +%28Sub+Voting%29&formType=10-K&dateFiled=2024-02-29, (last accessed Sept. 18, 2024).

negative stigma and was (and is) used as a pretext to arrest predominantly men and women of color in many places throughout the country.[5]  These pretexts and divisions along racial lines still have not faded.

16.    In 1996, California became the very first state to allow the consumption of cannabis for medicinal purposes.  Since then, most states have legalized medical marijuana use. Additionally, several states have legalized cannabis consumption – though with differing rules on specific types of consumption – for recreational use, beginning with Washington and Colorado in 2012.

17.    The current patchwork of state-by-state cannabis consumption laws appears as follows:

---

[5] *See, e.g.*, Amanda Geller *et al.*, *Pot as Pretext: Marijuana, Race, and the New Disorder in New York City Street Policing*, 7 J. of Empirical Legal Studies 591 (2011); Maha N. Mian *et al.*, *Policing Pot: State-Level Cannabis Arrests Increase Perceived Risks and Costs but Not Use*, 5 Cannabis 40 (2022); Alex Kreit, *Marijuana Legalization and Pretextual Stops*, 50 Univ. of Cal. L. Rev. 741 (2017).



18.    In a very short amount of time, cannabis has been effectively legalized in state markets across the country.  This drastic and rapid change in policy left many previously barred entrants rushing to get a piece of this newly formed legal market for cannabis.

*B. Trulieve's Business and Invasions of Privacy*

19.    Trulieve is one of the largest owners and operators of cannabis dispensaries in the United States.  Trulieve currently operates in:

    a.  Arizona (recreationally legal),

    b.  Colorado (recreationally legal),

    c.  Connecticut (recreationally legal),

    d.  Florida (medicinally legal),

    e.  Georgia (limited products allowed for resale),

    f.  Maryland (recreationally legal),

    g.  Ohio (medicinally legal), Pennsylvania (medicinally legal) and

    h.  West Virginia (medicinally legal).

20.    In each of these states, as well as from any state in the United States, consumers can access Trulieve's range of products through its website as well as through its mobile application.

21.    In the course of doing business to provide medical marijuana to patients, Trulieve collects PII and PHI through the Trulieve website and mobile application.  This includes, but is not limited to: name, postal address, internet protocol ("IP") address, information regarding patients' visits to the Trulieve website and mobile application, as well as physical geolocation data. Trulieve also collects medical marijuana card number, physician name, and other information about medical marijuana use from patients with medical marijuana cards.

22.    According to Trulieve's Privacy Policy, "[y]our privacy is important to us" and "Trulieve does not share [] personal information with third parties for business purpose[s]."[6]  However, the reality is much darker.

---

[6] https://www.trulieve.com/privacy, (last accessed, Sept. 19, 2024).

23.     Trulieve falsely represents that the only third party it shares information with is the Florida Department of Health's Compassionate Use Registry. Specifically, Trulieve's Privacy Policy states:

**Third Party Disclosure**

*Do we disclose the information we collect to Third Parties?*

In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

24.     For California residents, Trulieve discloses that it shares "Internet/Network Activity" and geolocation data with unspecified "AdTech companies" for the purpose of "Providing advertising or marketing services, providing analytic services," and "website and app analytic purposes." This disclosure is provided under the heading, "**Your California Privacy Rights**" alongside a disclaimer that the disclosure "applies solely to California consumers." Trulieve's deficient disclosure implies that (1) only California residents' information is being provided to unnamed "AdTech companies" and (2) the information is being provided so that *Trulieve* can advertise products and services to those California residents, not for third-party advertising purposes.

25.     Trulieve's representations are false.

26.     Rather than protect the sensitivity of customers' highly valuable PII and PHI, Trulieve instead opts to monetize it and sell it to third party advertisers for

*their* business purposes. Those advertisers intercept Plaintiff and Class members' information when they use the Trulieve website and mobile application.

27.    This is how the third-party advertisers intercept users' information: Trulieve places or allows to be placed onto its website different types of code that are intended to and do collect the data that users input into the website and/or data evidencing consumers' use of the website, in combination with users' identifying information (such as IP address and, for certain trackers, other unique identifiers). This practice runs contrary to state and federal law, to commonly accepted practices with respect to the sanctity of PHI, and to Defendant's privacy policy which expressly disclaims that such conduct takes place.

28.    The trackers that Trulieve has placed or allowed to be placed on its website belong to the following entities:

      a.  Ad trackers (code on websites containing advertising technology to build advertising profiles or to identify visitors of websites) include but not limited to: eyeota Limited, IPONWEB Gmbh, PubMatic, Inc., Alphabet, Inc., Zeta Global, Twitter, Inc., Oracle Corporation, LiveIntent Inc., Telaria, Index Exchange, Inc., Adform A/S, Adobe, Inc., OpenX Technologies Inc., LiveRamp Holdings, Inc. Adelphic, Inc., Neustar, Inc., Media.net, Advertising FZ-LLC, The Trade Desk, Inc. Microsoft Corporation, Beeswax and Magnite, Inc.

b. <u>Third-party cookies</u> (code on websites used by advertising tracking companies to profile users based on internet usage) include but not limited to: Index Exchange, Inc., eyeota Limited, Collective Roll, Trade Desk, Inc., Twitter, Inc., Adelphic, Inc., Zeta Global, Alphabet, Inc., Adobe, Inc., Beeswax, LiveRamp Holdings, Inc., Microsoft Corporation, IPONWEB Gmbh and Magnite, Inc.

29.    Other than the aforementioned trackers and third-party cookies placed on Trulieve's homepage, a concerning number of trackers can be found on Trulieve's website in other locations that obtain PII and PHI:

a. On Trulieve's informational page about acquiring a medical marijuana card, there are eight different ad trackers and at least 20 different third-party cookies.

b. On Trulieve's page called "Find a Doctor", there are 29 different ad trackers and at least 59 different third-party cookies.

c. On Trulieve's "Frequently Asked Questions" page that lists the various conditions that qualify for medical marijuana usage, there are 29 different ad trackers and at least 52 different third-party cookies.

d. Trulieve accountholders' account pages, where consumers with medical marijuana cards can enter information including Medical ID number, issuing state, issuing date, and physician names, also include

12

numerous trackers and cookies. The same is true for Trulieve accountholders' wishlists and order histories.

30.    The widespread use of ad trackers and third-party cookies on Trulieve's website, especially the informational pages that contain health information, would shock any reasonable consumer.  When consumers visit the Trulieve website and they do not accept the take-it-or-leave-it "cookie" disclosure, that disclosure critically: (1) does not disclose the number of cookies or where user PII and PHI is being sent, (2) does not disable the use of cookies on the Trulieve website and (3) does not disclose the retention and deletion schedule attached to the user's data acquired from the ad trackers and third-party cookies.

31.    While the Privacy Policy acknowledges the collection of some information on its website, it: (1) does not explain or describe exactly what PII and PHI is intercepted by the advertisers, (2) fails to disclose to which advertisers the PII and PHI is sold or how that information is to be used, the nature of the recipients' retention and deletion schedules, and how the PII and PHI will be protected and (3) forces consumers to opt-out through a cumbersome process as opposed to an opt-in process.  At no point does the Privacy Policy make clear that Trulieve is selling extensive quantities of consumer data to dozens of third-party companies for their own unspecified uses.

32.    Logically, Trulieve knew or should have known that by embedding

code, it was disclosing and permitting advertisers to intercept and collect information shared by its website users, including the PII and PHI of Plaintiff and Class members. This is because the code used in this scenario needed to be affirmatively and intentionally placed on the website in order to be used in the way as described herein. The code's entire purpose is to monetize data about Trulieve's customers, and there can be no doubt that the code on the website collects PII and PHI and transmits it to third-party advertisers.

33. By repackaging and selling information about consumer medical marijuana usage and purchase, Trulieve's violates reasonable consumer expectations for how Trulieve will treat sensitive medical information. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which was passed in 1996, sets a floor for the care that healthcare providers in Florida and across the country are expected to provide in handling patient information. Consumers reasonably expect that healthcare providers will handle their private health information in accordance with HIPAA requirements, including by refraining from sharing that information with ad tech companies. Additionally, by receiving ill-gotten private data, especially valuable PII in combination with PHI, the advertisers each served as a conduit for Trulieve to monetize this precious and private information.

34. In fact, in December 2022, the United States Department of Health and

Human Services ("HHS") issued a revised bulletin "to highlight the obligations" of healthcare providers under the HIPAA Privacy Rule "when using online tracking technologies" such as those used by Trulieve, which "collect and analyze information about how internet users are interacting with a regulated entity's website or mobile application." The bulletin was updated in 2024.[7]

35.    In the bulletin, HHS confirmed that HIPAA applies to healthcare providers' use of tracking technologies like those developed and used by Trulieve on trulieve.com.  Among other things, HHS explained that healthcare providers violate HIPAA when they use tracking technologies that disclose an individual's identifying information, even if no treatment information is included and even if the individual does not have a relationship with the healthcare provider:

> How do the HIPAA Rules apply to regulated entities' use of tracking technologies?
>
> Some regulated entities may be disclosing a variety of information to tracking technology vendors through tracking technologies placed on the regulated entity's website or mobile app, such as information that the individual types or selects when they use the regulated entities' website or mobile apps. The information disclosed might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, device IDs, or any unique identifying code. In some cases, the information disclosed may meet the definition of individually identifiable health information (IIHI), which is a necessary pre-condition for information to meet the definition of PHI when it is

---

[7] U.S. Dep't of Health and Human Servs., *Use of Online Tracking Techs. By HIPAA Covered Entities and Bus. Assocs.* (2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

transmitted or maintained by a regulated entity.

IIHI collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as in some circumstances IP address or geographic location, does not include specific treatment or billing information like dates or types of healthcare services.

36.    Additionally, HHS further clarified that HIPAA applies to healthcare providers with tracking technologies even on webpages and on mobile applications that do not require patients to login. This HHS bulletin did not create any new obligations, but instead highlights obligations that have been in place for decades. Reasonable consumers would expect that Trulieve would comply with these obligations with regard to information about the purchase of medical marijuana.

37.    A reasonable consumer has an expectation of privacy each time they visit the Trulieve website and/or mobile application. Trulieve collects PII and PHI from its consumers and consumers rightly presume that this PII and PHI is going to be protected from unauthorized third parties. Specifically, Trulieve collects the following PII each time a consumer shops online using the Trulieve website and/or mobile application: (1) username (if they login and make purchases) and the information associated with that username, (2) internet protocol address, and (3) the activities that occur on the website and/or mobile application that are unique to that specific visitor. Additionally, Trulieve collects PHI every time someone shops in its online dispensary: (1) the fact that the respective website and/or mobile application

user is medical marijuana user (which means they use a specific type of medication – marijuana), and (2) the fact that the respective user has a medical condition which is recognized as the type of illness or chronic pain that medical marijuana is used to remediate. Trulieve also often collects information about users' medical marijuana cards, including physician information and card number.

38.    When a Trulieve customer interacts with the Trulieve website or mobile application, they are seeking care for their present or future healthcare ailments as well as working to pay for healthcare products – here, cannabis.

C. *The Value of Data and Consumer Harm*

39.    Plaintiff and Class members were harmed when Trulieve invaded their privacy rights by selling data about their marijuana consumption, including medical marijuana consumption, to third parties.  Reasonable consumers, including Plaintiff, would not have used the Trulieve.com website had they known that their privacy rights would be violated as a result.

40.    PII and PHI, including PII and PHI tied to medical marijuana-related information, is extremely valuable.

41.    There is a huge market for health data like the data disclosed to Trulieve on its website.  Plaintiff and Class members suffered pecuniary losses when Trulieve sold and resold their data to third parties because of the value of the data itself.  Without the freedom to control what becomes of their data,

17

Trulieve.com users are unable to maintain the value of their personal data and use it for whatever purposes they please (or for no purpose other than for health treatment, if they so choose).

42.    The value of consumers' PII and PHI is axiomatic. When cybercriminals steal PII and PHI like the information Trulieve sold to its third-party business partners, the criminals face huge fines and lengthy prison sentences. Organizations across every sector use and monetize consumer data to increase profits.[8] And the value of PII and PHI as a commodity is measurable.  As stated in "Exploring the Economics of Personal Data," "[f]irms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."  Consumer personal information is so valuable to identity thieves that once PII and PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

43.    Consumers "have good reason to worry about data security" according to law firm Foley Hoag.[9]  Cybercriminals have successfully targeted medical marijuana databases on multiple occasions, including major breaches in 2016

---

[8] *See, e.g.*, Sunil Yadav, *The True Value of Big Data: What It Does For Your Business*, Baseline (May 31, 2023), https://www.baselinemag.com/uncategorized/the-true-value-of-big-data-what-it-does-for-your-business/.

[9] https://foleyhoag.com/news-and-insights/blogs/cannabis-and-the-law/2017/march/marijuana-and-privacy-a-primer/, (last accessed Sept. 19, 2024).

(Washington State Liquor and Cannabis Board and the Nevada Division of Public and Behavioral Health) and 2017 (a compliance system called MJ Freeway, which is used by medical dispensaries across the country in over 1000 different dispensaries).[10]  According to Foley:

> When it comes to privacy, marijuana is different both as a product and as a medical treatment.  While patient information of any kind must be safeguarded, there is a special sensitivity about marijuana use.  Stigma about cannabis, as well as fears about federal oversi[ght], make marijuana-related data especially vulnerable to breaches.  This sensitivity extends to the recreational marijuana industry.  Few people look over their shoulder walking into a liquor store, but many customers think twice before walking into a dispensary. People are worried about data falling into the hands of the federal government, but also of their employers.
> …
> Right now, the needs of consumers and companies seem to be at odds – consumers want less data collection, while tech companies and investors want more.[11]

44.    As the cannabis industry continues to grow in the United States, so too are the desires of the advertising industry to profit off of the data that accompanies demographic and personal information, as well as consumer interest and consumer purchases.

## D. Plaintiff's Experiences

45.    Plaintiff is a medical marijuana patient that suffers from an ailment

---

[10] *Id.*

[11] *Id.*

that the State of Florida legally recognizes as giving eligibility to medical marijuana consumption in Florida.

46.     On numerous occasions, Plaintiff has visited the Trulieve website, Trulieve.com, to purchase medicinal marijuana for personal medical use.

47.     Plaintiff did not know that their unique identifiers would be paired with the fact that they seek marijuana for medical purposes in a way that could identify Plaintiff to third party advertisers.    Plaintiff did not know that the data that Trulieve.com collects would then be sold to dozens of entities for advertising purposes.

48.     Plaintiff's unique identifiers are PII and Plaintiff's online shopping for medicinal marijuana is no different than the PHI collected by a pharmacy when a patient seeks pain relief medication – only this time, the pain relief medication in question are cannabis products.  Because of this and because of the stigma attached with medicinal marijuana usage in the United States, Plaintiff's purchase of medical marijuana is more sensitive than purchase information from non-medical, non-marijuana websites.

49.     Plaintiff's data with respect to medicinal marijuana is highly valuable. Indeed, this is the core reason why so many different corporations extract data from Trulieve's website.

IV.     CLASS ALLEGATIONS

50.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

**Nationwide Class:** All natural persons in the United States who used the Trulieve.com website and/or mobile application and whose communications and/or data were shared with third parties.

51.    In addition, or in the alternative, Plaintiff pleads the following Sub-Class:

**Medical Marijuana Sub-Class.** All natural persons in states where medical marijuana (not recreational use) is legal who used the Trulieve.com website and/or mobile application and whose communications and/or data were shared with third parties.

52.    Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendants, Defendants' subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendants' counsel.

53.    *Numerosity*.  The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Defendant's records.

54.    *Predominant Common Questions*.  The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

   a.  Whether Defendant violated Plaintiff's and Class members' privacy rights;

   b.  Whether Defendant was unjustly enriched;

   c.  Whether Defendant's acts and practices violated state consumer protection laws;

   d.  Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief, restitution, and disgorgement; and,

   e.  Whether Plaintiff and the Class are entitled to actual, statutory, punitive and/or other forms of damages, and other monetary relief.

55.    *Typicality*.  Plaintiff's claims are typical of the claims of the other members of the claims of Plaintiff and the members of the Class arise from the same conduct by Defendant and are based on the same legal theories.

56.    *Adequate Representation*.  Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations.  Plaintiff has no interest that is

antagonistic to the interests of the Class, and Defendant has no defenses unique to any Plaintiff.  Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor their counsel have any interest adverse to the interests of the other members of the Class.

57.    This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

58.    Plaintiff may revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

///

///

///

///

23

V.    CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>

COMMON LAW INVASION OF PRIVACY

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

59.    Plaintiff re-alleges and incorporates paragraphs 1 through 58 with the same force and effect as if fully restated herein.

60.    In Florida, a plaintiff asserting claims for invasion of privacy must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

61.    Trulieve's disclosure of Plaintiff's and Class members' sensitive data, including PII, marijuana purchasing information and other interactions on the website and mobile application to third parties violated Plaintiff's and the Class members' privacy. Browsing for and purchasing marijuana on Trulieve's website, including medical marijuana, is a "matter." Trulieve intruded on that "matter" when it allowed that "matter" to be accessed by unauthorized third parties without Plaintiff's and the Class members' consent. Trulieve's conduct described herein constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion.

62.    Plaintiff and Class members had a reasonable expectation of privacy in the health information and other personal data that Trulieve disclosed to third parties. Plaintiff's marijuana purchases and shopping habits are inherently sensitive in nature. Plaintiff and Class members reasonably expected this information would remain private and confidential and would not be disclosed to third parties without their consent.

63.    This expectation is especially heightened given Trulieve's consistent representations to users that this information would be safeguarded and not disclosed to third parties.

64.    Plaintiff and Class members did not consent to, authorize, or know about Trulieve's intrusion at the time it occurred. Accordingly, Plaintiff and Class members never agreed that Trulieve could disclose their data to third parties.

65.    The surreptitious disclosure of sensitive data, including PII and sensitive information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms. Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

66.    The offensiveness of this conduct is all the more apparent because Trulieve's disclosure of this information was conducted in secret in a manner that

Plaintiff and Class members would be unable to detect, contrary to the actual representations made by Trulieve.

67.    As a result of Trulieve's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

68.    Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

69.    Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by Trulieve as a result of its intrusions upon Plaintiff's and Class members' privacy.

70.    Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Trulieve's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights.  Such damages are needed to deter Defendant from engaging in such conduct in the future.

71.    Plaintiff also seeks such other relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

NEGLIGENCE

(On behalf of Plaintiff and Both Classes)

(Against Defendant)

72.    Plaintiff re-alleges and incorporates paragraphs 1 through 58with the same force and effect as if fully restated herein.

73.    Plaintiff and Class members gave Defendant sensitive, nonpublic personal information.  This information included both PII and PHI, as discussed above.

74.    While Trulieve's conduct was intentional as alleged, it was at a minimum (and in the alternative) negligent.

75.    By collecting, storing, using and profiting from this data, Defendant owed a duty of care to Plaintiff and Class members to exercise reasonable care in keeping this information confidential.

76.    Defendant had common law duties to prevent foreseeable harm to Plaintiff and Class members.  These duties existed because Plaintiff and Class members were foreseeable and probably victims of any disclosure of this PII and PHI sans consent.

77.    Defendant's duties to protected the confidentiality of Plaintiff's and Class members nonpublic information, including PII and PHI, also arose as a result

27

of the special relationship that existed between Plaintiff and Defendant – here, between patient and medical product provider. Defendant alone could have ensured that it did not disclose the nonpublic personal information, including PII and PHI without consumers' consent.

78.    Defendant knew or should have known that by integrating the tracking technologies on Trulieve's website and in Trulieve's mobile application that it was systemically disclosing PII and PHI to third parties.

79.    But for Defendant's conduct, Plaintiff's and Class members' PII and PHI would not have been disclosed without consent. And, as a direct and proximate cause of this conduct, Plaintiff and Class members have been injured and are entitled to damages in an amount to be proven at trial.

80.    Plaintiff and Class members seek to recover the value of the unauthorized access to their PII and PHI resulting from Defendant's wrongful conduct. The measure of damages in this instance is analogous to the unauthorized use of intellectual property. Like a technology covered by a patent or protected by a trade secret, use or access to a person's PII and PHI is non-rivalrous – the unauthorized use by another does not diminish the rights-holders's ability to practice the patented invention or use the protected trade secret technology. Nevertheless, a plaintiff may generally recover the reasonable use value of their most valuable intellectual property: their PII and PHI. Especially here, where that PII and PHI's

release can result in terrible consequences for Plaintiff and Class members.

81.     This measure is appropriate because (a) Plaintiff and Class members have a protectable property interest in their PII and PHI; (b) the minimum damages value for the unauthorized use of personal property is its rental value; and (c) rental value is established with respect to market value (*i.e.,* evidence regarding the value of similar transactions).   Put differently, the value of the data is equivalent to whatever the unauthorized third parties pay for that respective data.

82.     As such, Plaintiff seeks damages in an amount to be proven at trial.

83.     Plaintiff also seeks such other relief as the Court may deem just and proper.

<u>THIRD  CAUSE OF ACTION</u>

VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

84.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58with the same force and effect as if fully stated herein.

85.     Defendants are considered "businesses" under state law.

86.     Defendant's business acts and practices are unfair and deceptive under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

87. FDUTPA makes illegal unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204(1).

88. Florida (as well as other states through their respective unfair and deceptive trade practices statutes) has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Defendants violated FDUTPA by, among other things, disclosing and intercepting Plaintiff's and Class members' sensitive data without consent.

89. Trulieve further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties, which deceived and misled users of the Trulieve website and mobile application. Trulieve misrepresented and concealed from consumers the nature of the data it was collecting, the transmission of that data to third parties, the identities of the third parties, and the purpose of the disclosure.

90. Trulieve also misrepresented and concealed the attributes of its take-it-or-leave-it "cookie" disclosure, because that disclosure critically: (1) does not disclose the number of cookies or where user PII and PHI is being sent, (2) does not disable the use of cookies on the Trulieve website and (3) does not disclose the retention and deletion schedule attached to the user's data acquired from the ad

trackers and third-party cookies.  Defendant's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The gravity of the harm of Defendants secretly disclosing, intercepting, and misusing Plaintiff's and Class members' sensitive and highly valuable personal data is significant, and there is no corresponding benefit resulting from such conduct.  Finally, because Plaintiff and Class members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

91.    By unlawfully disclosing and intercepting this data, Trulieve took money or property from Plaintiff and Class members. Plaintiff and the Class members suffered damages as a result of Trulieve's FDUTPA violations.

92.    Plaintiff and Class members seek all available damages including statutory and treble damages as well as reasonable costs and attorneys' fees.

<u>FOURTH CAUSE OF ACTION</u>

BREACH OF CONTRACT

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

93.    Plaintiff re-alleges and incorporates paragraphs 1 through 58with the same force and effect as if fully restated herein.

94.    Trulieve's Privacy Policy is an agreement or an addendum to an

agreement between Trulieve and each person who goes onto Trulieve's website or utilizes the Trulieve mobile application and provides Trulieve with PII and PHI.

95.    The Privacy Policy provides information about what types of consumer information will be shared and with what entities. Further, Trulieve makes representations about how it protects about consumer privacy.

96.    The Privacy Policy is a contract between Plaintiff and the Class members, on the one hand, and Trulieve, on the other.

97.    Trulieve breached its agreement with Plaintiff and Class members by disclosing PII and PHI to unaffiliated third parties for marketing purposes, contrary to the terms of the Privacy Policy, which states only that Trulieve provides information to the Florida Department of Health's Compassionate Use Registry (and for California consumers only, states only a limited quantity of information is shared with "AdTech companies").

98.    As a direct and proximate cause of these breaches of contract, Plaintiff and Class members sustained actual losses and damages as described above, including but not limited to that they did not get the benefit of their bargain for which they paid, and that they were overcharged by Trulieve for its services, which they understood to include the terms of the Privacy Policy.

99.    Plaintiff and Class members request all forms of damages with respect to these breaches of contract, including nominal damages.

<u>FIFTH CAUSE OF ACTION</u>

BREACH OF IMPLIED CONTRACT

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

100.   Plaintiff re-alleges and incorporates paragraphs 1 through 58with the same force and effect as if fully restated herein.

101.   Plaintiff and Class members each respectively entered into an implied contract with Trulieve when they accessed Trulieve's website and/or mobile application.  Specifically, this implied contract is an agreement by Trulieve to safeguard information given to them by Plaintiff and Class members: especially PII and PHI.  The existence of the Privacy Policy is evidence of the implied contract between Plaintiff and the Class members, on the one hand, and Trulieve, on the other.

102.   Plaintiff and Class members had a reasonable expectation that Trulieve would keep their PII and PHI confidential.  Additionally, Plaintiff and Class members believed that Trulieve would use part of the monies paid to Trulieve in order to keep their PII and PHI confidential.

103.   Plaintiff and Class members would not have provided nor entrusted Trulieve with their PII or PHI, or would have paid less for its goods and services, had they known that Trulieve had no intention of keeping this implied contract.

104.    As a direct and proximate cause of Trulieve's breach of implied contract, Plaintiff and Class members sustained actual losses and damages as described in detail above, including that they did not get the benefit of their bargain for which they paid and were overcharged by Trulieve for its services.

105.    Plaintiff and Class members request all forms of damages with respect to these breaches of implied contract, including nominal damages.

SIXTH CAUSE OF ACTION

UNJUST ENRICHMENT

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

106.    Plaintiff re-alleges and incorporates paragraphs 1 through 58with the same force and effect as if fully restated herein.

107.    This cause of action is pled in the alternative to the breach of contract causes of action.

108.    Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

109.    Defendant received benefits from Plaintiff and Class members in the form of the Plaintiff's highly valuable data, including health information and PII, that Defendant wrongfully disclosed and intercepted from Plaintiff and Class members without authorization and proper compensation.

110.   Defendant disclosed, intercepted, stored, and used this data for their own gain, providing Defendant with economic, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services.

111.   Had Plaintiff known of Defendant's misconduct, they would not have provided any of their valuable data to Defendants or have used or paid to use the Trulieve website or mobile application.

112.   Defendant unjustly retained these benefits at the expense of Plaintiff and Class members because Defendant's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

113.   The benefits that Trulieve derived from Plaintiff and Class members rightly belong to Plaintiff and Class members.  It would be inequitable under unjust enrichment principles in every state for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

114.   Defendant should be compelled to disgorge profits into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

<u>SEVENTH CAUSE OF ACTION</u>

ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. § 2510 *et seq.*

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

115.   Plaintiff re-alleges and incorporates paragraphs 1 through 58 with the same force and effect as if fully restated herein.

116.   The Electronic Communications Privacy Act ("ECPA") makes it illegal intentionally to intercept, or attempt to intercept, any wire, oral, or electronic communication and to disclose or use the contents of an unlawfully intercepted communication. 18 U.S.C. § 2511.

117.   ECPA provides a private right of action to any person whose electronic communications are intercepted. 18 U.S.C. § 2520(a).

118.   Trulieve intentionally intercepted electronic communications that Plaintiff and the Class members exchanged with Trulieve through the tracking tools installed on its website.

119.   The transmission of data between Plaintiff and the Class members and Trulieve qualify as communications under ECPA. 18 U.S.C. § 2510(12).

120.   Trulieve contemporaneously intercepted and transmitted Plaintiff's and the Class members' communications of that data to the dozens of advertising technology company whose trackers Trulieve installed or allowed to be installed on

its website.

121.   The cookies that Trulieve uses to track Plaintiff's and the Class members' communications, Plaintiff's and the Class members' browsers, Plaintiff's and the Class members' computing devices, and the code that Trulieve placed or allowed to be placed on its website are all "devices" within the meaning of 18 U.S.C. § 2510(5).

122.   The ad tech companies that are the recipients of communications between Plaintiff and the Class members, on the one hand, and Trulieve, on the other, are not party to those communications.

123.   Trulieve transmits the contents of those communications through the surreptitious redirection of the communications from Plaintiff's and the Class members' computing devices.

124.   Plaintiff and the Class members did not consent to the ad tech companies' acquisition of their communications with Trulieve. Nor did the ad tech companies receive legal authorization to receive such communications.

125.   In disclosing the content of Plaintiff's and the Class members' communications relating to the purchase and use of medical marijuana, Trulieve had a purpose that was tortious, criminal, and designed to violate statutory and constitutional privacy provisions including:

a. The unauthorized disclosure of individually identifiable health

information is tortious in and of itself, regardless whether the means deployed to disclose the information violates the ECPA or any subsequent purpose or use. Trulieve intentionally committed a tortious act by disclosing individually identifiable health information without authorization to do so;

b. Intrusion upon Plaintiff's and the Class members' seclusion;

c. Trespass upon Plaintiff's and the Class members' personal and private property; and

d. Violation of 18 U.S.C. §§ 1343 (fraud by wire, radio, or television) and 1349 (attempt and conspiracy) which prohibit a person from "devising or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate … commerce, any writing, signs, signals, pictures, or sounds for purpose of executing such scheme or artifice."

126. The federal wire fraud statute, 18 U.S.C. § 1343, has four elements: (1) that the defendant voluntarily and intentionally devised a scheme to defraud another out of money or property; (2) that the defendant did so with intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications

would be used; and (4) that interstate wire communications were used. The attempt version of the statute provides that penalties apply to attempts as well as offenses. 18 U.S.C. § 1349.

127. Trulieve's scheme or artifice to defraud consists of the false and misleading statements in its privacy policy described herein.

128. Trulieve acted with intent to defraud in that it willfully invaded and took Plaintiff's and the Class members' property, including the property rights to their individually identifiable health information and their right to determine whether such information remains confidential; the right to determine who may collect and use such information for marketing; and the right to determine who has access to their devices and communications.

129. Trulieve also acted with intent to defraud in that it willfully invaded and took Plaintiff's and the Class members' property (their PHI and PII) with knowledge that it lacked consent or authorization to do so; a reasonable consumer would not understand that Trulieve was collecting and transmitting their data to third parties; a reasonable consumer would be shocked to realize the extent of Trulieve's disclosure of data to third parties; and the subsequent use of health information for marketing was a further invasion in that the use was not related to any healthcare.

130. Trulieve acted with the intent to acquire, use, and disclose Plaintiff's

and the Class members' PII and PHI without their authorization or consent.

131.   Plaintiff and the Class members have suffered damages because of Trulieve's violations of ECPA, including that (1) Trulieve eroded the essential, confidential nature of the relationship between Trulieve and its customers, (2) Trulieve failed to provide Plaintiff and the Class members with the full value of the services for which they paid, which included a duty to maintain confidentiality and protect privacy, (3) Trulieve derived valuable benefits from using and sharing Plaintiff's and the Class members' communications without their knowledge or informed consent and without providing compensation, (4) Trulieve's actions deprived Plaintiff and the Class members of the value of their PII and PHI, (5) Trulieve's actions diminished the value of Plaintiff's and the Class members' property rights in their PII and PHI; and (6) Trulieve violated Plaintiff's and the Class members' privacy rights by sharing their PII and PHI for commercial use.

132.   Plaintiff and the Class members seek appropriate declaratory or equitable relief including injunctive relief, actual damages and profits enjoyed by Trulieve as a result of violations or the appropriate statutory measure of damages, punitive damages, and reasonable attorneys' fees and costs. 18 U.S.C. § 2520. Pursuant to 18 U.S.C. § 2520, Plaintiff and the Class members seek monetary damages for the greater of (i) the sum of the actual damages suffered by the plaintiff and any profits made by UCMC as a result of the violation or (ii) statutory damages

of whichever is greater of $100 a day for each violation or $10,000.

133.    Unless enjoined, Trulieve will continue to commit the violations of law described herein.

## EIGHTH CAUSE OF ACTION

### COMMON LAW PUBLIC DISCLOSURE OF PRIVATE FACTS

(On behalf of Plaintiff and the Nationwide Class)

(Against Defendant)

134.    Plaintiff re-alleges and incorporates paragraphs 1 through 58 with the same force and effect as if fully restated herein.

135.    In Florida, a claim for public disclosure of private facts requires the following elements: (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern.

136.    Defendant disclosed Plaintiff's and Class members' sensitive and private information, including their PII and PHI, to numerous third-party entities without their consent, constituting a "publication" under Florida law.

137.    The disclosed information includes highly private facts such as medical marijuana cardholder status, purchasing history, and geolocation data, all of which pertain to personal health and medical treatment and are inherently private.

138.    The publication of this information is offensive to a reasonable person because it involves the unauthorized dissemination of sensitive medical and

personal data, which is protected under social norms and privacy expectations, and is particularly stigmatized given the nature of medical marijuana use.

139.   The private information disclosed by Defendant is not of legitimate public concern. Plaintiff's and Class members' use of medical marijuana and related transactions hold no relevance to public interest and should remain confidential.

140.   Defendant's publication of Plaintiff's and Class members' private facts to third-party entities was done knowingly, intentionally, or recklessly, and without proper safeguards to protect this sensitive information.

141.   The publication of Plaintiff's and Class members' private facts to advertisers and other entities made the information accessible in a manner that created a substantial likelihood of further dissemination, satisfying Florida's requirement for liability, even if the information may have initially been shared with a limited audience.

142.   As a result of Defendant's conduct, Plaintiff and Class members suffered harm, including emotional distress, reputational harm, invasion of privacy, and the diminution in value of their personal information.

143.   Plaintiff and Class members are entitled to recover damages to compensate them for the harm caused by Defendant's conduct, including but not limited to actual, nominal, and punitive damages, as well as the disgorgement of profits obtained by Defendant from the use or sale of their private facts.

144.   Plaintiff and Class members also seek injunctive relief to prevent Defendant from continuing to disclose their private facts and to require Defendant to implement appropriate data privacy safeguards.

145.   Plaintiff further seeks all other relief that the Court deems just and proper.

VI.   DEMAND FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the proposed Class respectfully requests that the Court enter an order:

A. Certifying the Class and appointing Plaintiff as the Class's representatives;

B. Finding that Defendants' conduct was unlawful, as alleged herein;

C. Awarding declaratory relief against Defendants;

D. Awarding such injunctive and other equitable relief as the Court deems just and proper, including injunctive relief;

E. Awarding Plaintiff and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

F. Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

G. Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H. Granting such other relief as the Court deems just and proper.

VII.    JURY TRIAL DEMANDED

1.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

*[The Remainder of this Page is Intentionally Blank]*

DATED: December 26, 2024                Respectfully submitted,

/s/ Arturo Peña Miranda
Arturo Peña Miranda
Bar No. 1025613
Edward Ciolko*
Jennifer Czeisler*
**STERLINGTON, PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel.:  929-709-1493
*arturo.pena@sterlingtonlaw.com*
*blake.yagman@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*

Katherine M. Aizpuru (*Pro Hac Vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.:  202-973-0900
*kaizpuru@tzlegal.com*

**\*Pro Hac Vice** forthcoming

Attorneys for Plaintiff Mark Robinson
and the Proposed Classes