**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**Case No.: 4:24-cv-00391**

MARK ROBINSON, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

TRULIEVE INC.,

*Defendant.*

_______________________________/

# DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Grace L. Mead
Andrea N. Nathan
Hannah E. Murphy
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130

January 9, 2025

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Trulieve and its Website Disclosures ..... 2

B. Plaintiff's Claims and the Proposed Classes He Seeks to Represent ..... 5

STANDARDS GOVERNING A MOTION TO DISMISS ..... 7

ARGUMENT ..... 8

I. The Cookies Acceptance Form and Privacy Policy Must Be Considered on this Motion ..... 8

II. The Complaint Does Not and Cannot Plead a Basis for Article III Standing ..... 9

A. No Injury-in-Fact ..... 10

B. No Causation or Redressability ..... 17

III. The Complaint Fails to State a Claim for Common Law Invasion of Privacy or Public Disclosure of Private Facts—First and Eighth Causes of Action ..... 18

IV. The Complaint Fails to State a Claim for Negligence—Second Cause of Action ..... 21

V. The Complaint Fails to State a Claim for Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")—Third Cause of Action ..... 23

VI. The Complaint Fails to State a Claim for Breach of Contract or Breach of an Implied Contract—Fourth and Fifth Causes of Action ..... 26

VII. The Complaint Fails to State a Claim for Unjust Enrichment—Sixth Cause of Action ....................27

VIII. The Complaint Fails to State a Claim for Violation of the Electronic Communications Privacy Act – Seventh Cause of Action....................28

CONCLUSION....................31

CERTIFICATE OF SERVICE....................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.R. Holland, Inc. v. Wendco Corp.*,
884 So. 2d 1006 (Fla. 1st DCA 2004) ....................23

*Agency for Health Care Administration v. Associated Industries of Florida, Inc.*,
678 So. 2d 1239 (Fla. 1996) ....................17

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003) ....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 20

*Atlantis Est. Acquisitions, Inc. v. DePierro*,
125 So. 3d 889 (Fla. 4th DCA 2013)....................26

*Baptist Hosp., Inc. v. Baker*,
84 So. 3d 1200 (Fla. 1st DCA 2012) ....................21

*Baron v. Osman*,
39 So. 3d 449 (Fla. 5th DCA 2010)....................23

*Bartsch v. Costello*,
170 So. 3d 83 (Fla. 4th DCA 2015)....................19

*Caro v. Wientraub*,
618 F. 3d 94 (2d Cir. 2010) ....................28

*Clay Elec. Co–Op., Inc. v. Johnson*,
873 So. 2d 1182 (Fla.2003) ....................19

*Cooper v. Atlantic Credit & Finance Inc.*,
822 Fed. Appx. 951 (11th Cir. 2020)....................12

*Daewoo Motor America v. General Motors*,
459 F.3d 1249 (11th Cir. 2006) ....................8

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ....................................................................8

*Florida Ass'n of Medical Equipment Dealers v. Apfel*,
194 F.3d 1227 (11th Cir. 1999) ..................................................................16

*Fraga v. UKG, Inc.*,
22-20105-CIV, 2022 WL 19486310
(S.D. Fla. May 10, 2022) ...................................................................13, 20

*Fulton v. Brancato*,
189 So. 3d 967 (Fla. 4th DCA 2016)........................................................25, 26

*Hamilton Group Funding, Inc. v. Basel*,
311 F. Supp. 3d 1307 (S.D. Fla. 2018)..........................................................26

*Hunstein v. Preferred Collection and Management Services, Inc.*,
48 F.4th 1236 (11th Cir. 2022) (en banc) ..........................................12, 14, 18

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019)..........................................13, 20, 24, 25

*In re Brinker Data Incident Litig.*,
3:18-CV-686-J-32MCR, 2020 WL 691848
(M.D. Fla. Jan. 27, 2020)...................................................................22, 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ...........................................................................27

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)...............................................................................26

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ........................................................................27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...........................................................................10, 15, 16

*Mamani v. Berzain*,
654 F.3d 1148 (11th Cir. 2011) ..................................................................7, 13, 20

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ..........................................................................21

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) (en banc) .......................................................11, 12

*Schauer v. Morse Operations, Inc.*,
5 So. 3d 2 (Fla. 4th DCA 2009).......................................................................21

*SFM Holdings v. Banc of America Securities*,
600 F.3d 1334 (11th Cir. 2010) .........................................................................8

*Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*,
641 Fed. Appx. 849 (11th Cir. 2016)..........................................................21, 22

*Simon v. Eastern Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976).............................................................................................16

*Smith v. Maryland*,
442 U.S. 735 (1979)...........................................................................................14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..............................................................................7, 10, 11

*Summers* v. *Earth Island Inst.*,
555 U.S. 488 (2009)...........................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................8

*Transunion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).....................................................................................7, 11

*United States v. Miller,*
425 U.S. 435 (1976)...........................................................................................14

*Welborn v. Internal Revenue Serv.*,
218 F.Supp.3d 64 (D.D.C. 2016)................................................................13, 20

**Statutes**

18 U.S.C. § 2510 ..................................................................................................26

18 U.S.C. § 2511 ..............................................................................................26, 27

18 U.S.C. § 2520 ..................................................................................................26

**Rules**

Fed. R. Civ. P. 12 ..... 1, 7

**Other Authorities**

1–1 Arthur L. Corbin, Corbin on Contracts § 1.19 (Joseph M. Perillo ed. 2010) ..... 24

Restatement (Second) of Torts § 652D cmt. a ..... 12, 18

1 Richard A. Lord, Williston on Contracts § 1:5 (4th ed. 2010) ..... 24

Defendant Trulieve, Inc. ("Trulieve") respectfully moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Amended Class Action Complaint ("Complaint") [DE 21] and submits the following memorandum of law in support:

## INTRODUCTION

Plaintiff's Complaint here tries and fails to thread an impossibly thin needle, admitting that he consented to the disclosure of personal information by using Trulieve's website to purchase but claiming that somehow Trulieve collected and disclosed marginally more data and that supports sweeping class claims. But Plaintiffs elephantine claims cannot pass through that needle's narrow eye.

And the latest iteration of Plaintiff's Complaint does nothing to remedy those fatal deficiencies. Trulieve's terms and privacy policy disclose, among other things, that it "use[s] cookies to analyze website traffic," that it confirms every purchaser's information and ID with the Florida Department of Health, and that it collects a wealth of information from website visitors that it discloses to third parties.

After acknowledging these policies but failing to grapple with their terms, the Complaint does not and cannot plead the facts needed to establish Article III standing or the elements of the seven different claims it tries to assert. Under binding Eleventh Circuit precedent, Plaintiff does not and cannot establish any sort of cognizable injury-in-fact, let alone one that is traceable to Trulieve. Not only does

Plaintiff's consent also undermine any liability for the legal claims identified, but he does not and cannot articulate how any marginal difference between the data he agreed to disclose and that disclosed caused him any measurable harms under the standards of any of the claims identified. For those reasons and many more, the Complaint must be dismissed.

## BACKGROUND

### A. Trulieve and its Website Disclosures

Trulieve is the largest medical marijuana company in the State of Florida with over 130 locations and six processing facilities. Compl. ¶¶ 2, 11. Consumers can access Trulieve's range of products through its mobile application and its website, Trulieve.com. Compl. ¶ 20. When a consumer first accesses the website, a notification is displayed explaining that by using the website, the consumer is agreeing to Trulieve's use of tracking technology called cookies and to click "Accept" to further acknowledge such use (the "Cookies Acceptance Form"):




Compl. ¶ 30; Ex. A.

The website contains a privacy policy that governs the use of the website (the "Privacy Policy"). Compl. ¶ 3, n. 3; Ex. B. At the outset, the Privacy Policy discloses that, to make a purchase, each patient's information and ID "must be confirmed" with a governmental entity in Florida:

> **Third Party Disclosure**
> *Do we disclose the information we collect to Third-Parties?*
>
> In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

Compl. ¶ 3, n. 3; Ex. B.

The Privacy Policy also explains the personal information that Trulieve collects and from whom: "we collect personal information from website visitors, app users, customers, potential investors, potential employees, and physicians we partner with." Compl. ¶ 3, n. 3; Ex. B. The Privacy Policy further explains that Trulieve uses "personal information to conduct our business and to provide you with high quality production and services." *Id.* This information includes collecting "your name, email address, mailing address, phone number or other details needed to create a profile." *Id.*

In a section entitled "Your California Privacy Rights," Trulieve provides a disclosure required for California residents. In the disclosure, Trulieve explains the information Trulieve collects and shares related to *all of its "consumers"* which

includes "information regarding a consumer's interaction with our website" with AdTech companies in order to provide "advertising or marketing services":

Information We Collect and Share:

We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device ("personal information"). Specifically, we have collected the following categories of personal information from consumers and collected them for the following purposes within the last twelve (12) months:

| Category | Example(s) | Source(s) | Purpose of Collection | Categories of third parties with whom the PI is shared |
|---|---|---|---|---|
| **Identifiers** | Name, postal address, IP address, personal email address, business email address, account name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Customer records** | Name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Commercial Information** | Purchase history | Directly from users | Processing orders/transactions, verifying identity upon receipt of privacy request | N/A |
| **Internet/ Network Activity** | IP address, Information regarding a consumer's interaction with our website, and mobile application. | Directly from users | Providing advertising or marketing services, providing analytic services | AdTech companies |
| **Geolocation Data** | Physical location | Directly from users | Website and app analytic purposes. | AdTech companies |
| **Audio, electronic, visual, etc. information** | Audio recordings | Directly from users | Providing customer service, quality and training purposes. | N/A |

Compl. ¶ 3, n. 3; Ex. B.

The Privacy Policy explains that consumers have a right to request the personal information Trulieve has "collected, used, disclosed or sold" in the prior twelve 12 months. Compl. ¶ 3, n. 3; Ex. B. The Privacy Policy further provides notice that consumers have the right to request that Trulieve "delete any of your personal information" that Trulieve collected and retained and explains the process for doing so. *Id.*

### B. Plaintiff's Claims and the Proposed Classes He Seeks to Represent

Plaintiff Mark Robinson is a Florida resident and medical marijuana patient. Compl. ¶ 45. Plaintiff alleges that he used Trulieve's website for several purchases of medicinal marijuana for personal use. Compl. ¶ 46. Plaintiff acknowledges the Cookies Acceptance Form and Privacy Policy on Trulieve's website, Compl. ¶¶ 22-24, 30, and that the Privacy Policy is a contract between Plaintiff and Trulieve, Compl. ¶ 96, but claims that he did not know his "unique identifiers would be paired with the fact that [Plaintiff] seeks marijuana for medical purposes in any way that could identify Plaintiff to third party advertisers," Compl. ¶ 47. Plaintiff also alleges that he did not know "that the data that Trulieve.com collects would then be sold to dozens of entities for advertising purposes." Compl. ¶ 47.

Plaintiff alleges that he and proposed class members "were harmed when Trulieve invaded their privacy rights by selling data about their marijuana consumption" to third parties. Compl. ¶ 39. Plaintiff further alleges that he and proposed class members "suffered pecuniary losses when Trulieve sold and resold their data to their parties because of the value of the data itself." Compl. ¶ 41.

Plaintiff further alleged that "[w]hen cybercriminals steal PII and PHI like the information Trulieve sold to its third party business partners, the criminals face huge

fines and lengthy prison sentences." Compl. ¶ 41.[1] Plaintiff explained that "consumer personal information is so valuable to identity thieves that once PII and PHI has been disclosed, criminals often trade it on the 'cyber black market or the dark web for many years.'" Compl. ¶ 42. Yet, the Complaint contains no allegations whatsoever that Plaintiff or any putative class member's information has been accessed by cybercriminals and is being traded on the cyber black-market or the dark web. Nor has Plaintiff explained any other theory of cognizable damages.

Nonetheless, Plaintiff seeks to assert eight different causes of action on behalf of himself and a nationwide class of individuals who used Trulieve's website or mobile application and "whose communications and/or data were shared with third parties." Compl. ¶ 50.[2] These claims include common law invasion of privacy, negligence, violation of Florida Deceptive and Unfair Trade Practices Act, breach of contract, breach of implied contract, unjust enrichment, violation of the Electronic Communications Privacy Act, and common law public disclosure of private facts.

---

[1] The Complaint defines personally identifiable information as "PII" and sensitive protected health information as "PHI." Compl. ¶ 3.

[2] Plaintiff also pleads a "Medical Marijuana Sub-Class" of persons "in states where medical marijuana (not recreational use) is legal" in addition to or in the alternative of the "Nationwide Class." Compl. ¶ 51.

## STANDARDS GOVERNING A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides that a court must dismiss matters over which it lacks subject matter jurisdiction. One element of subject matter jurisdiction is Article III or constitutional standing. "[P]laintiff, as the party invoking federal jurisdiction, bears the burden" of establishing the "irreducible constitutional minimum" of standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Under Article III, "an injury in law is not an injury in fact." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Only those plaintiffs who have been "concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

Additionally, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I. The Cookies Acceptance Form and Privacy Policy Must Be Considered on this Motion

Trulieve's Cookies Acceptance Form and Privacy Policy, which the Complaint incorporates by reference, must be considered on this Motion.

On a motion to dismiss "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[T]he district court may consider an extrinsic document if it is (1) central to plaintiff's claim; and (2) its authenticity is not challenged." *SFM Holdings v. Banc of America Securities*, 600 F.3d 1334, 1337 (11th Cir. 2010).[3]

The Cookies Acceptance Form and Privacy Policy are central to Plaintiff's claims. They contain the disclosures that are alleged to be deficient and upon which all of Plaintiff's claims are based. Indeed, Counts IV and V specifically allege a breach of the Privacy Policy. While Plaintiff references the Cookies Acceptance

[3] *See also, e.g., Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (considering an insurance policy, even though the complaint did not discuss its specific provisions, when analyzing a motion to dismiss a federal securities claim); *Daewoo Motor America v. General Motors*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) (ruling master transaction agreement and distribution agreement were integral to antitrust allegations and therefore district court properly considered them on a motion to dismiss); *SFM Holdings*, 600 F.3d at 1337 (district court properly considered a contract on defendant's motion to dismiss claims for breach of fiduciary duty and constructive fraud).

Form and cites to some of the sections of the Privacy Policy, the entirety of both documents should be considered as they reflect what was actually agreed upon and disclosed to Plaintiff and other putative class members. Since the authenticity of the documents cannot legitimately be disputed, the Court must consider the Cookies Acceptance Form and Privacy Policy in evaluating this Motion to Dismiss.[4]

## II. The Complaint Does Not and Cannot Plead a Basis for Article III Standing

Plaintiff lacks standing to bring his claims because he does not and cannot adequately allege facts establishing that he has suffered a concrete injury necessary to have standing under Article III of the United States Constitution.

In Count I for common law invasion of privacy, Plaintiff makes the conclusory allegation that "Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights." Compl. ¶ 67. In Count VIII for violation of the Electronic Communications Privacy Act, Plaintiff alleges a wide range of theories as to how Plaintiff and the Class members have purportedly "suffered damages," including that Trulieve "eroded the essential, confidential nature of the relationship," failed to provide "the full value of services

[4] The Cookies Acceptance Form is referenced in paragraph 30 of the Complaint and attached here as Exhibit A. The Privacy Policy, which is specifically cited in footnote 3 and generally referenced throughout the Complaint, is attached here as Exhibit B. Trulieve does not anticipate a dispute regarding the authenticity of the Cookies Acceptance Form or Privacy Policy, but in the event a dispute arises, Trulieve will provide a declaration attesting to their authenticity in reply.

for which they paid, which included a duty to maintain confidentiality and protect privacy," derived valuable benefits from using and sharing their communications "without providing compensation," deprived Plaintiff and the Class members "the value of their PII and PHI," and violated their privacy rights. Compl. ¶ 131.

These allegations do not and cannot support Article III standing because they are legal conclusions, they do not constitute a concrete injury let alone one traceable to any challenged conduct by Trulieve, and are not redressable.

### A. No Injury-in-Fact

The Supreme Court has held that the "irreducible constitutional minimum" to establish Article III standing requires "[t]he plaintiff []have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 497 (2009).

In *Spokeo v. Robins*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," and that "Article III standing requires a *concrete* injury even in the context of a statutory violation," which injury "must be '*de facto*'; that is, it must actually

exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016). These principles were reaffirmed in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (June 25, 2021), where the Supreme Court reasoned that "if the law of Article III did not require plaintiffs to demonstrate a 'concrete harm,' Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law. Such an expansive understanding of Article III would flout constitutional text, history, and precedent." *Transunion*, 141 S. Ct. at 2206.

Consistent with *Spokeo*, the Eleventh Circuit Court of Appeals has dismissed cases for lack of Article III standing where a plaintiff has alleged nothing beyond bare procedural or technical injuries under certain consumer protection statutes. For instance, in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc), a customer brought claims under the FACTA, alleging that the defendant's statutory violation of printing too many credit card numbers on receipts subjected the class to "elevated risk of identity theft." *Id.* at 922. The parties agreed on a class settlement shortly after the lawsuit was filed, but the Eleventh Circuit vacated the approval order, finding the named plaintiff lacked standing because he alleged "nothing more than a bare procedural violation, divorced from any concrete

harm," *id.* at 936, and reiterating that a "conclusory statement that a statutory violation caused an injury is not enough." *Id.* at 928.[5]

Similarly, in *Hunstein v. Preferred Collection and Management Services, Inc.*, the plaintiff alleged that a creditor shared his personal information with a mail vendor that sent him a letter on behalf of the creditor. 48 F.4th 1236, 1240 (11th Cir. 2022) (en banc). The plaintiff analogized the statutory violation to the common law tort invasion of privacy through public disclosure of private facts. *Id.* The Eleventh Circuit ruled that the plaintiffs had not suffered any injury-in-fact because he had not alleged the fundamental element of publicity. "And without publicity, there is no invasion of privacy—which means no harm." *Id.* at 1245. The court went on to explain that publicity requires more than what the plaintiff had offered, that it required the matter be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 1246 (quoting Restatement (Second) of Torts § 652D cmt. a).

These opinions apply with even greater force to require dismissal here because Plaintiff admits that the Cookies Acceptance Form and Privacy Policy

[5] *See also*, *Cooper v. Atlantic Credit & Finance Inc.*, 822 Fed. Appx. 951, 954-55 (11th Cir. 2020) (finding similar alleged FDCPA violations "just as inchoate, if not more so" than in *Trichell* as the plaintiff did not "allege that she suffered any harm beyond the alleged statutory violations")

disclose that consumers' personal information is shared with third parties. Compl. ¶¶ 23, 24. Other than unsupported legal conclusions, Plaintiff simply alleges that his data was shared with more entities than he was purportedly told yet he does not allege how any additional, incremental disclosure caused him any injury. Indeed, Plaintiff fails to allege that his own data has an independent value in the context of the Complaint, or that the value of the services he received from Trulieve was actually impacted by the value of his personal data.

Nor can he do so plausibly. While Plaintiff may wax poetic about the value of personal information to businesses and thieves, he has not alleged that he has lost any money as a result of Trulieve's collection and disclosure of his personal information. "[T]he allegation that Plaintiffs have a property interest in their PII is a legal conclusion, and an unsupported one at that. It is therefore entitled to no assumption of truth." *Fraga v. UKG, Inc.*, 22-20105-CIV, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) (citing *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). And courts have rejected the theory that an individual's personal identifying information has an independent monetary value.[6]

[6] *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (citing *Welborn v. Internal Revenue Serv.*, 218 F.Supp.3d 64, 78 (D.D.C. 2016) (collecting cases) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value.").

In *Fraga*, the plaintiff did not adequately allege a devaluation of Plaintiffs' PII —"even assuming a legitimate market for their PII exists"—because he did not allege with particularity any facts explaining how his personal identity information is less valuable than it was before. *Fraga*, 2022 WL 19486310, at *12. Here, Plaintiff similarly did not allege how his Trulieve browsing history has independent monetary value that diminished through disclosure to third-party advertisers. He did not allege that he had any actual intention to sell his personal data to these third-party advertisers, nor that any of these third-party advertisers is in the business of soliciting data personally from people like Plaintiff. Accordingly, his claim that his browsing history of Trulieve has monetary value that he has been deprived of is entirely unsupported by the facts alleged.

Moreover, Plaintiff alleges an invasion of privacy claim similar to what was alleged in *Hunstein* based on disclosure of private information. In doing so, Plaintiff fails to allege that there has been any sort of disclosure amounting to public disclosure that could constitute a concrete privacy injury. Indeed, Florida law makes clear that disclosure must be made to the "public at large or to so many persons that the matter must be regarded as *substantially certain* to become public knowledge." *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991) (emphasis added).

Plaintiff fails to meet this standard. He has not alleged that Trulieve shared his information to the public at large by posting it openly on the internet or through news publication. Nor has Plaintiff alleged that his browsing information was shared to so many people that the public is substantially certain to gain access to it. At most, he makes the conclusory allegation that disclosure to advertisers "made the information accessible in a manner that created a substantial likelihood of further dissemination." Compl. ¶ 141. But that naked speculation is undercut, in part, by his allegation that the data is valuable; a more plausible inference is that valuable data would be guarded more closely by third parties too. In any event, Plaintiff certainly falls short of alleging facts showing that he has been injured by public disclosure of private facts.

And, like in *Hunstein*, Plaintiff fails to allege an essential element of intrusion—a reasonable expectation of privacy. The U.S. Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 744 (1979). In *United States v. Miller*, for example, the Supreme Court held that a bank depositor has no "legitimate 'expectation of privacy'" in financial information "voluntarily conveyed to . . . banks and exposed to their employees in the ordinary course of business." 425 U.S. 435 at 442–444 (1976). This is because

a depositor takes the risk, by sharing information with a third party, that the information will be disclosed to another. *Id.*

Here, Plaintiff fails to sufficiently allege that he had a reasonable expectation of privacy in the information he shared with Trulieve. Not only is Trulieve a third party and not only did Plaintiff use a third party web browser and other intermediaries to access its site, but, most fundamentally, Trulieve disclosed it would be sharing Plaintiff's personal information with others. Compl. ¶¶ 23-24. In the Cookies Acceptance Form, Plaintiff "agreed to [Trulieve's] use of cookies" by using Trulieve's website. Compl. ¶ 30; Ex. A. And the Privacy Policy made clear that personal information would be shared with the Florida Department of Health's Compassionate Use Registry and with AdTech companies in order to provide "advertising or marketing services." Compl. ¶¶ 23-24; Ex. B.

Plaintiff claims that the disclosure "implies that (1) only California residents' information is being provided to unnamed 'AdTech companies' and (2) the information is being provided so that Trulieve can advertise products and services to those California residents, not for third-party advertising purposes." Compl. ¶ 24. Yet, the disclosure itself does not state that information sharing is limited to California residents (*see* p. 3-4 above) and even if it did, the fact that some customer information would be shared with third parties put Plaintiff on notice that Trulieve does share consumer information with third parties. As such, Plaintiff had no

plausible expectation that information he shared with Trulieve would remain private. He has not suffered an invasion of privacy and has not been concretely injured.

**B. No Causation or Redressability**

Under Article III, Plaintiff also has to meet the traceability requirement and redressability requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Under Article III, there must be "a causal connection between the injury and the conduct complained of" or one that is "fairly traceable to the challenged action of the defendant." *Id.* at 560. "[P]laintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). "While demonstration of an injury is necessary to prove standing, it alone is not sufficient," because a plaintiff must also show "a causal connection between the alleged injury and the allegedly improper conduct." *Florida Ass'n of Medical Equipment Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999).

As explained above, Plaintiff has alleged no facts about how the difference between what he knew would be disclosed and what he alleges was in fact disclosed had any meaningful impact on him or caused him any injury. In other words, Plaintiff here has alleged no facts connecting any illegal action by Trulieve to any injury he suffered, and has therefore failed to allege traceability. Nor has Plaintiff

connected any of the remedies sought to the harms he has actually suffered, and thus he has failed to allege facts showing redressability too.

## III. The Complaint Fails to State a Claim for Common Law Invasion of Privacy or Public Disclosure of Private Facts—First and Eighth Causes of Action

In Florida, a common law tort of invasion of privacy can include four different categories of behavior "(1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (quoting *Agency for Health Care Administration v. Associated Industries of Florida, Inc*., 678 So. 2d 1239, 1252 n. 20 (Fla. 1996)).

In Count One, Plaintiff alleges that Trulieve's disclosure of data to third-party advertisers violated his privacy. Compl. ¶ 61. In doing so, Plaintiff conflates the second category (intrusion) with the third category (public disclosure of private facts). In Count Eight, Plaintiff alleges a separate and additional count for public disclosure of private facts. He fails to state a claim under either count.

Intrusion upon seclusion consists of "intrusion—physically or electronically intruding into one's private quarters." *Ginsberg*, 863 So. 2d at 162. "The intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy." *Id.* As explained above on p. 14-15, Plaintiff did not have a reasonable expectation of privacy in his browsing history when using Trulieve's website. In the Cookies Acceptance Form, Plaintiff was told that his use of the website constituted his agreement to Trulieve's use of cookies. *See* p. 2; Ex. A. And the Privacy Policy made clear that various personal information would be disclosed to state and third party ad services. *See* p. 3-4; Ex. B., above. These disclosures foreclose any reasonable expectation of privacy. Indeed, by using Trulieve's website, Plaintiff consented to his personal information being disclosed to others. *See* p. 3-4; Ex. B.

A claim based on public disclosure of private facts equally fails, whether that be under Count One or Count Eight. "The elements can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). This type of claim "requires that a matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022)

(citing Restatement (Second) of Torts section 652D cmt. a). "[W]ithout publicity, there is no invasion of privacy." *Id.*

The allegations in the Complaint fail to meet this standard. Plaintiff does not allege that his personal information was communicated "to the public at large." Instead, he acknowledges that it was provided to the Florida Department of Health's Compassionate Use Registry, Compl. ¶ 23, and further alleges it was sold to "dozens of third party companies for their own unspecified uses," Compl. ¶ 28. Plaintiff then makes the conclusory allegations that "[t]he publication of Plaintiff's and Class members' private facts to advertisers and other entities made the information accessible in a manner that created a substantial likelihood of further dissemination . . . " Compl. ¶141. Plaintiff does not elaborate on how the information, allegedly sold for monetary value, is now likely to be disseminated further. This claim is contradicted by Plaintiff's very own assertions that this information is highly valuable to advertisers, who would therefore have no good reason to make this information widely available.[7]

[7] Plaintiff also makes conclusory allegations that "the publication of this information is offensive to a reasonable person," because his medical marijuana browsing information "is protected under social norms and privacy expectations, and is particularly stigmatized given the nature of medical marijuana use." Compl. ¶ 138. As the Court addressed in the Order Denying Leave to File Anonymously, "Plaintiff has not shown that marijuana use is 'highly stigmatized.'" ECF No. 20. Rather, he makes conclusory allegations not entitled to an assumption of truth.

Accepting Plaintiffs' allegations as true, without relying on his unsupported legal conclusions not entitled to an assumption of truth, would at most constitute a discrete and limited publication that forecloses his ability to state a claim under either invasion of privacy theory. Plaintiff's invasion of privacy and publication of private facts counts fail to state a claim and must be dismissed.

## IV. The Complaint Fails to State a Claim for Negligence—Second Cause of Action

A negligence claim has four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (citing *Clay Elec. Co–Op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla.2003)).

Even if Plaintiff has alleged sufficient facts to satisfy that Trulieve had a duty to conform to a certain standard of conduct, Plaintiff fails to satisfy every other element. There was no breach of that duty by "integrating the tracking technologies on Trulieve's website," Compl. ¶ 78, because in doing so Trulieve conformed to the standard of conduct articulated in the Cookies Acceptance Form and Privacy Policy. *See* p. 2-4, above. Further, as explained above, Plaintiff has not and cannot allege any causal connection between the disclosure of his personal information and any injury. *See* p. 15-16. There is none.

Lastly, Plaintiff fails to allege facts showing that he was damaged by the disclosure of his personal information. Plaintiff alleges his damages amount to the "the reasonable use value of [his] most valuable intellectual property: [his] PII and PHI," and that "Plaintiff and Class members have a protectable property interest in their PII and PHI." Compl. at ¶ 28-29.

Yet, as mentioned above, "the allegation that Plaintiffs have a property interest in their PII is a legal conclusion, and an unsupported one at that. It is therefore entitled to no assumption of truth." *Fraga v. UKG, Inc.*, 22-20105-CIV, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) (citing *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Further, the allegation that Plaintiffs' PII is entitled to the rental value of his PII "is little more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts have rejected the theory that an individual's personal identifying information has an independent monetary value. *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (citing *Welborn v. Internal Revenue Serv.*, 218 F.Supp.3d 64, 78 (D.D.C. 2016) (collecting cases).

As such, Plaintiff's allegation that a plaintiff may generally recover the reasonable use value of their PII and PHI is entirely unsupported by actual facts. It

is a legal conclusion entitled to no assumption of truth foreclosing any negligence claim.

## V. The Complaint Fails to State a Claim for Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")—Third Cause of Action

A plaintiff must satisfy three elements to assert a consumer claim under FDUTPA: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (citations omitted).

Here, there can be no deceptive act or unfair practice since Trulieve specifically informed Plaintiff that his information would be shared with third parties. *See* p. 3-4. Where there is no improper conduct, Plaintiff cannot show a causal connection to an injury and the allegedly improper conduct.

Yet, even if Plaintiff could satisfy the first two elements, he wholly fails to allege actual damages necessary to state a FDUTPA claim. Under FDUTPA, "[a]ctual damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012).

FDUTPA does "not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." *Schauer v.*

*Morse Operations, Inc*., 5 So. 3d 2, 7 (Fla. 4th DCA 2009). The distinction between actual and consequential damages is demonstrated by *Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc*., 641 Fed. Appx. 849, 854 (11th Cir. 2016). In *Silverpop,* the plaintiff entered into a contract to provide digital marketing services to defendant, who would upload a list of email recipients to plaintiff's e-mail marketing tool. *Id.* at 850. The contract provided that in the event of a breach of contract, the parties could not recover consequential damages. *Id.* Following a data breach, in which the defendant's master email list was compromised, the parties sued and countersued for breach of contract. *Id.* Defendant argued it was entitled to damages for the diminution in value of the breached email list. *Id.* at 855. The court held defendant was not entitled to those damages, explaining that any damage to the email list was consequential, recovery of which was barred by the contract. *Id.* The court distinguished between direct damages, which it defined as "damages that compensate for the value of the very performance promised," versus consequential damages, which "seek to compensate a plaintiff for additional losses (other than the value of the promised performance)." *Id.* at 855-56. There, "the parties' agreement was not one for the safeguarding of the [email list]. Rather, the parties contracted for the providing of e-mail marketing services." *Id.* at 856. **[Note: Did this case involve a FDUTPA claim? Or are we just relying on it for the limited scope of actual damages? Either way, I think this discussion can be sharpened.]**

The Middle District came to a similar conclusion in *In re Brinker Data Incident Litig.*, 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020). In that case, plaintiffs had dined at Chili's, used their credit card, and then their credit card information was stolen in data breach, resulting in the unauthorized use of their credit cards. *Id.* at 2. They brought a FDUTPA claim, alleging that Chili's lack of data security amounted to an unfair practice. *Id.* at 12. But the court held that plaintiffs failed to allege they were entitled to actual damages under FDUTPA. The court explained that the property that was subject of the consumer transaction was the food and drinks purchased at Chili's, not their credit card information. *Id.* at 13. "Ultimately, the food or drink purchased has no diminished value because of [plaintiff's] alleged inadequate data security; Plaintiffs' personal information is merely 'other property' that was damaged as a result of purchasing food or drinks from Brinker." *Id.*

Here, Plaintiff makes the conclusory allegation that "[b]y unlawfully disclosing and intercepting this data, Trulieve took money or property from Plaintiff and Class members." Compl. ¶ 91. But the performance promised was the sale of marijuana, not the privacy of data collected. The consumer transaction that took place was a purchase of marijuana, not the purchase of personal information. Plaintiff does not allege that the marijuana he purchased diminished in value

because of the disclosure of PII. That PII is merely other property, and any damages resulting from its disclosure is consequential, and so not covered under FDUTPA.

## VI. The Complaint Fails to State a Claim for Breach of Contract or Breach of an Implied Contract—Fourth and Fifth Causes of Action

To establish a breach of contract claim, plaintiff must show "that (1) a contract existed, (2) the contract was breached, and (3) damages flowed from that breach." *A.R. Holland, Inc. v. Wendco Corp.*, 884 So. 2d 1006, 1008 (Fla. 1st DCA 2004). A breach of implied contract has the same elements. *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010) (citing Corbin on Contracts and Williston on Contracts).

Plaintiff fails to state a claim under either theory because the breach of contract claim is foreclosed by the language of the Privacy Policy itself. Although Plaintiff claims that Trulieve breached the agreement "by disclosing PII and PHI to unaffiliated third parties for marketing purposes," the Privacy Policy includes an entire chart reflecting various information that is shared with third parties, including AdTech companies in order to provide "advertising or marketing services." *See* p. 4; Ex. B. There can be no breach under these facts.

Plaintiffs' contract claims also fail based on the novel damages theory he asserts. He claims "Plaintiff and Class members sustained actual losses and damages . . . [because] they did not get the benefit of their bargain for which they paid, and that they were *overcharged* by Trulieve for its services, which they understood to

include the terms of the Privacy Policy." Compl. at ¶ 32. (emphasis added). Plaintiff supplies no facts to support this conclusory statement and it should be given no weight. *See* p. 12-13; 18-19.

Indeed, in *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019), the court flatly rejected the same type of "overpayment" theory of damages. In that case, plaintiffs alleged they would not have obtained certain services if they had been aware of defendant's data security problems. The court rejected this contention because there were "no factual allegations demonstrating that the Parties mutually agreed that any portion of the sums paid from Plaintiffs to Defendants would be allocated to data security. Put another way, Plaintiffs have not alleged facts that show that the market value of their [purchase] was somehow less than what they paid." *Id.* at 1257.

The same reasoning applies with even greater force here. Plaintiff has not alleged sufficient facts to state a plausible claim that they paid above market value for their marijuana because of the alleged disclosure of personal information. So the Amended Complaint's attempt to state claims for breaches of contract and implied contract fail as a matter of law.

## VII. The Complaint Fails to State a Claim for Unjust Enrichment—Sixth Cause of Action

Plaintiffs' unjust enrichment claim must be dismissed because "[a] contract implied in law, or 'quasi contract,' operates *when there is no contract* to provide a

remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016). It is well-settled that "a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists." *Id*. Where a written agreement exists, a plaintiff "cannot recover under the equitable theory of unjust enrichment." *Id*.

Plaintiff claims that the benefits he conferred upon Trulieve, consisting of "Plaintiff's highly valuable data" unjustly enriched Trulieve. DE 1 ¶ 76. But in prior counts, Plaintiff admits and alleges that the terms upon which such information was shared are governed by an express contract—the Privacy Policy. *See* p. 5. And that Privacy Policy, in combination with his binding judicial admissions in the Amended Complaint, establish that a contract exists about Plaintiff's privacy. Because "an express contract exists concerning the same subject matter" as any alleged implied contract, Plaintiffs' unjust enrichment claim must be dismissed. *Atlantis Est. Acquisitions, Inc. v. DePierro*, 125 So. 3d 889, 894 (Fla. 4th DCA 2013).

## VIII. The Complaint Fails to State a Claim for Violation of the Electronic Communications Privacy Act – Seventh Cause of Action

A plaintiff must show five elements to make a claim under Title I of the Electronic Communications Privacy Act (the "Wiretap Act"): 'that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person

to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Hamilton Group Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018) (quoting *In re Pharmatrak, Inc*., 329 F.3d 9, 18 (1st Cir. 2003) (citing 18 U.S.C. §§ 2510, 2511, 2520)). Plaintiff fails to allege facts sufficient to meet this standard.

At the outset, it is not unlawful to "intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S. Code § 2511(2)(d). Where a defendant is a party to the communication being intercepted or consent was obtained, the statute can only be violated if the interception was "for the purpose of committing any criminal or tortious act." *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125, 142–43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the [cookie] transmissions at issue…we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act.").

In this case, not only was Trulieve the intended recipient of the communication as the provider of the services of the website, but by using the website Plaintiff consented to the interception of his information. *See* p. 2-4. Although Plaintiff claims the consent was obtained through some sort of deceit or

insufficient disclosure, even if it was it still would not be sufficient for him to state a claim. In *In re Google*, the Third Circuit made clear that "a deceit upon the sender" does not affect the presumptive non-liability of parties under 2511(2)(d) as "t]here is no statutory language indicating this excludes intended recipients who procured their entrance to a conversation through fraud in the inducement." 806 F.3d at 143.

Additionally, Plaintiff has not alleged that the communication was intercepted for the purpose of committing any criminal or tortious act. To fall within this category "the defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself . . . . [as a] simultaneous tort arising from the act of recording itself is insufficient." *Caro v. Wientraub*, 618 F. 3d 94, 98 (2d Cir. 2010). While Plaintiff has pleaded, "Trulieve had a purpose that was tortious, criminal, and designed to violate statutory and constitutional privacy provisions," (Compl. ¶ 125), this is merely a conclusory legal allegation not entitled to an assumption of truth. Plaintiff goes on to allege that Trulieve had the intent of committing torts of (1) disclosure of personal health information, (2) intrusion upon seclusion, (3) trespass, and (4) fraud. Each of these is unsupported by the facts alleged.

First, disclosure of personal health information is a violation of HIPAA if disclosed by a covered entity. Where, as here, Trulieve is not a covered entity under HIPAA, these unadorned allegations are not entitled to a presumption of truth.

Second, for the reasons stated above, Plaintiff has failed to state a claim for intrusion upon seclusion, and subsequently cannot rely on that as a basis for overcoming the tort crime exception of the ECPA. Third, the allegation that Trulieve had the intent to trespass and commit fraud under the facts as alleged require Plaintiff to have a property interest in his personal information, which, as addressed above and in the Motion to dismiss, is an unsupported legal conclusion. *Fraga,* 2022 WL 19486310, at *11 ("[T]he allegation that Plaintiffs have a property interest in their PII is a legal conclusion, and an unsupported one at that. It is therefore entitled to no assumption of truth."). Thus, it was not unlawful for Trulieve to intercept Plaintiff's communications and his Wiretap Claim fails.

**CONCLUSION**

The Complaint must be dismissed because Plaintiff lacks standing and otherwise fails to state a claim for each count he attempts to assert.

Date: January 9, 2025

Respectfully submitted,

By: /s/ *Grace L. Mead*
GRACE L. MEAD
Florida Bar No. 49896
gmead@stearnsweaver.com
ANDREA N. NATHAN
Florida Bar No. 16816
anathan@stearnsweaver.com
HANNAH E. MURPHY
Florida Bar No. 1032759
hmurphy@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: 305-789-3200
(305) 789-3200
Facsimile: 305-789-3395
(305) 789-3395

*Attorneys for Defendant, Trulieve, Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), I HEREBY CERTIFY that the foregoing Response, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 7,567 words as measured by Microsoft Office for Word.

s/ Grace L. Mead
GRACE L. MEAD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Grace L. Mead
GRACE L. MEAD

SERVICE LIST

**KATHERINE M AIZPURU**
TYCKO & ZAVAREEI LLP -
WASHINGTON DC
2000 PENNSYLVANIA AVENUE NW
SUITE 1010
WASHINGTON, DC 20006
202-973-0900
Email: kaizpuru@tzlegal.com
*PRO HAC VICE*

**ARTURO JOSE PENA MIRANDA**
STERLINGTON PLLC - NEW YORK
NY
ONE WORLD TRADE CENTER
285 FULTON STREET
85TH FLOOR
NEW YORK, NY 10007
407-839-4200
Email: arturo.pena@sterlingtonlaw.com

*Counsel for Plaintiff Mark Robinson and the Proposed Classes*

**EXHIBIT A**


×
By using this website, you agree to our use of cookies to analyze website traffic and enhance your experience on our website.
Accept

EXHIBIT B

# Privacy Policy: Safeguarding Your Online Data

**Effective: 11/12/2020**

Trulieve ("we," "us," or "our,") respects the privacy of our users ("you" or "your"). This privacy policy ("Privacy Policy") governs the websites we and our affiliates, subsidiaries and related entities operate.

Your privacy is important to us. We have developed this Privacy Policy to demonstrate our commitment to respecting your privacy and to provide you insight into the collection, use, disclosure, transfer, and storage of the personal information we process through our website and mobile application.

**ATTENTION CALIFORNIA RESIDENTS:** To view more information regarding your rights under the California Consumer Privacy Act ("CCPA"), see the *"Your California Privacy Rights"* section below.

## Third Party Disclosure

*Do we disclose the information we collect to Third-Parties?*

In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

## Third Party Links

Occasionally, at our discretion, we may include or offer third-party products or services on our website. These third-party sites have separate and independent privacy policies. We therefore have no responsibility or liability for the content and activities of these linked sites. Nonetheless, we seek to protect the integrity of our site and welcome any feedback about these sites.

What personal information do we collect?

Either whole or in part, we collect personal information from website visitors, app users, customers, potential investors, potential employees, and physicians we partner with.

We use personal information to conduct our business and to provide you with high quality products and services. For example, when ordering or registering on our site, we collect your name, email address, mailing address, phone number or other details needed to create a profile. Also, if you order from us, we may send you emails and notices about your order and about other merchandise and services that we think may be of interest to you.

## Your California Privacy Rights

The following applies solely to California "consumers" as defined in Section 17014 of Title 18 of the California Code of Regulations. We adopt this notice to comply with the California Consumer Privacy Act of 2018 ("CCPA"). This policy describes our collection, use, disclosure, and "sale" of "personal information" of California consumers as these terms are defined under the CCPA.

Please note that job applicants, current and former employees, and individuals subject to business-to-business communications are not considered "consumers" for the purpose of this policy.

Please note: Trulieve does not knowingly sell personal information of California consumers under the age of sixteen (16) years.

Information We Collect and Share:

We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device ("personal information"). Specifically, we have collected the following categories of personal information from consumers and collected them for the following purposes within the last twelve (12) months:

| Category | Example(s) | Source(s) | Purpose of Collection | Categories of third parties with whom the PI is shared |
|---|---|---|---|---|
| **Identifiers** | Name, postal address, IP address, personal email address, business email address, account name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Customer records** | Name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Commercial Information** | Purchase history | Directly from users | Processing orders/transactions, verifying identity upon receipt of privacy request | N/A |
| **Internet/ Network Activity** | IP address, Information regarding a consumer's interaction with our website, and mobile application. | Directly from users | Providing advertising or marketing services, providing analytic services | AdTech companies |
| **Geolocation Data** | Physical location | Directly from users | Website and app analytic purposes. | AdTech companies |
| **Audio, electronic, visual, etc. information** | Audio recordings | Directly from users | Providing customer service, quality and training purposes. | N/A |

Disclosure of Personal Information for a Business Purpose

Trulieve does not share your personal information with third parties for business purpose.

Your California Privacy Rights

Under the CCPA, California consumers are provided with certain privacy rights which they may exercise themselves or through an authorized agent.

**The Right to Know:** You have the right to request that we disclose to you the personal information we have collected, used, disclosed or sold about you in the previous twelve (12) months. You may also request a copy of the personal information we have collected on you over the past twelve (12) months. See the "Exercising Your California Privacy Rights" section for instructions on submitting a right to know request.

**The Right to Deletion:** You have the right to request that we delete any of your personal information that we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable request, we will delete and direct our service providers to delete your personal information from our records, unless an exception applies. See the "Exercising Your California Privacy Rights" section for instructions on submitting a right to deletion request.

Exercising Your California Privacy Rights

To exercise the rights described above, please submit a verifiable consumer request to us by either calling the toll-free number below or submitting a request online through the link below. We may require you to provide certain personal information to allow us to verify your identity, such as your email address, most recent order numbers, etc. or by requesting you submit your request via your customer account if one exists. If we cannot comply with a request, we will explain the reasons in our response.

Calling us at 844-878-5438

Emailing **legal@trulieve.com**

**Use of an Authorized Agent**

You may designate, in writing or through a power of attorney, an authorized agent to make these privacy requests on your behalf to exercise these rights. An authorized agent may submit a request on your behalf if you have provided the authorized agent with power of attorney in accordance with California law. If this has not occurred, we will require the agent to provide proof that you have authorized it to act on your behalf and may require you to verify your own identity with us directly before we accept a request. We will do this by requiring the authorized agent to present verifiable written authorization from you that you have provided the agent with permission to submit the request and independently verify the agent's own identity with Trulieve.

## Non-Discrimination

We will not discriminate against you for exercising any of your CCPA rights. Unless permitted by the CCPA, we will not:

- Deny you goods or services;
- Charge you different prices or rates for goods or services, including granting discounts or other benefits, or imposing penalties;
- Provide you a different level or quality of goods and services; or
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

## Shine the Light

California residents may request the categories of personal information that we shared with third parties for the third parties' direct marketing purposes during the previous calendar year, if any. Written requests may be sent to the following address:

legal@trulieve.com

You must write "Your California Privacy Rights" at the top of your inquiry. We will respond within 30 days to requests regarding the categories of personal information that we shared with third parties for their own direct marketing purposes within the previous calendar year. Requests for this information that come to Trulieve by other means may result in a delayed response.

## Personal Information from Children

Because of the nature of our business, our services are not provided to minors. We will not ask minors, specifically children under the age of 13, to provide personal information if we have knowledge of their age.

**How We Respond to Do Not Track Signals**

Trulieve does not support "Do Not Track" browser settings and therefore does not change its practices in response to a "Do Not Track" signal in the HTTP header from a browser or mobile application.

**Changes to Our Privacy Notice**

We reserve the right to amend the Privacy Policy at any time and for any reason, without notice to you, other than the posting of the amended Privacy Policy. Users should check site to see the current Privacy Policy that is in effect and any changes that may have been made to it. The provisions contained herein supersede all previous notices or statements regarding our privacy practices and the terms and conditions that govern them.

**Questions**

If you have questions regarding our Privacy Policy or your privacy rights as described above, please contact us at:

legal@trulieve.com
844-878-5438