**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| MARK ROBINSON, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 4:24-cv-00391-AW-MJF |
| TRULIEVE INC., | |
| *Defendant*. | |

# PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel.: 929-709-1493
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*ed.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
David McGee*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

**Pro Hac Vice* forthcoming

March 10, 2025

# TABLE OF CONTENTS

I. INTRODUCTION....................1
II. BACKGROUND....................2
III. LEGAL STANDARDS....................6
A. 12(b)(1)....................6
B. 12(b)(6)....................7
IV. ARGUMENT....................7
A. Trulieve's Confusing and Contradictory Cookie Button and Privacy Policy Do Not Compel Dismissal of Any of Plaintiff's Claims....................7
B. Plaintiff Pleads Article III Standing....................11
1. Plaintiff Pleads Injury-In-Fact....................11
2. Plaintiff Pleads Traceability and Redressability....................16
C. Plaintiff States a Claim for Invasion of Privacy....................18
1. The Complaint Sufficiently Alleges Intrusion into Plaintiff's Private Marijuana Consumption Habits....................19
2. The Complaint Sufficiently Alleges Public Disclosure of Private Facts...20
D. Plaintiff States a Claim for Negligence....................22
E. Plaintiff States a FDUTPA Claim....................24
F. Plaintiff States a Claim for Breach of Contract or, in the Alternative, Breach of Implied Contract....................26
G. Plaintiff States a Claim for Unjust Enrichment in the Alternative to Breach of Contract....................30
H. Plaintiff States a Claim for Violations of the ECPA....................31
V. CONCLUSION....................34

# TABLE OF AUTHORITIES

## Cases

*Adams v. Lashify, Inc.*,
689 F. Supp. 3d 1146 (M.D. Fla. 2023) ..........10

*Agency for Health Care Admin. V. Assoc. Indus. of Fla.*,
678 So.2d 1239 (Fla. 1996). ..........18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........7

*Barron v. Snyder's-Lance, Inc.*,
2015 WL 11182066, (S.D. Fla. Mar. 20, 2015) ..........25

*Bartsch v. Costello*,
170 So.3d 83 (Fla. 4th DCA 2015) ..........22

*Brahm v. Hosp. Sisters Health Sys.*,
2024 WL 3226135 (W.D. Wisc. June 28, 2024)..........29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........7

*Bennett v. Spear*,
520 U.S. 154 (1997) ..........12

*Bohnak v. Marsh & McLennan Companies, Inc.*,
79 F.4th 276 (2d Cir. 2023)..........14

*Bray v. Gamestop Corp.*
No. 17-cv-1365, 2018 WL 11226516 (D. Del. Mar. 16, 2018) ..........29

*Cape Publications, Inc. v. Hitchner*,
549 So.2d 1374 (Fla. 1989)..........20

*Conradis v. Buonocore*,
2021 WL 4243720 (M.D. Fla. Sept. 17, 2021) ..........21

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024)..........34

*D.S. v. Tallahassee Mem'l HealthCare*,
2024 WL 2318621 (N.D. Fla. May 22, 2024) .......... 33

*Degutis v. Fin. Freedom, LLC*,
978 F. Supp. 3d 1243 (M.D. Fla. 2013) .......... 24

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) .......... 17

*Doe v. Cnty. of Santa Clara,*
2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 10

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 28

*Feldman v. Star Tribune Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) .......... 14

*Fraga v. UKG, Inc.*,
2022 WL 19486310 (S.D. Fla. May 10, 2022) .......... 23

*Fridman v. 1-800 Contacts, Inc.*,
554 F. Supp. 3d 1252 (S.D. Fla. 2021) .......... 11

*Garcia v. Copenhaver, Bell & Assocs.*,
104 F.3d 1256 (11th Cir. 1997) .......... 6

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......... 33

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) .......... 12

*Guilder v. State*,
899 So.2d 412 (Fla. 4th DCA 2005) .......... 32

*Hall v. Centerspace, LP*,
2023 WL 3435100 (D. Minn. May 12, 2023) .......... 29

*Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555 (M.D. Fla. Aug. 26, 2016) ........................................................................11

*In Hunstein v. Preferred Collection & Mgmt. Servs., Inc.* 48 F.4th 1236 (11th Cir. 2022) ........................................................................ 15, 22

*In re 21st Century Oncology Customer Data Sec. Breach Litig*, 380 F. Supp. 3d 1243 (M.D. Fla. 2019) ........................................................................24

*In re Brinker Data Incident Litig.*, 2020 WL 691848, (M.D. Fla. Jan. 27, 2020) ........................................ 23, 28, 30

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........................................................................14

*In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 4547212 (S.D. Fla. Sept. 18, 2024) ........................................ 13, 22

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................................29

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ........................................................................12

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) ........................................................ 23, 30

*In re In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019 ........................................................................14

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020) ........................................................................14

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) ........................................ 13, 15, 23

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........................................................................30

*Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........................................................................34

*Morgan v. Public Storage*,
2015 WL 11233111 (S.D. Fla. Aug. 17, 2015) .....26

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) .....6

Muransky v. Godiva Chocolatier, Inc.
979 F.3d 917 (11th Cir. 2020) .....15

*Orkin Exterminating Co. v. Petsch*,
872 So.2d 259 (Fla. 2d DCA 2004) .....25

*Parker v. Town of Palm Beach*,
2017 WL 2629490 (S.D. Fla. June 19, 2017) .....19

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ..... 13, 15

*Pileggi v. Wash. Newspaper Pub'g Co.*,
2024 WL 324121 (D.D.C. Jan. 29, 2024) .....14

*Purrelli v. State Farm Fire & Cas. Co.*,
698 So.2d 618 (Fla. 2d DCA 1997) .....19

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) .....34

*Rector v. Larson's Marine, Inc.*,
479 So.2d 783 (Fla. 2d DCA 1985) .....29

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .....18

*Rosado v. Barry Univ. Inc.*,
499 F. Supp. 3d 1152 (S.D. Fla. 2020) .....30

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .....13

*Selinger v. Kimera Labs, Inc.*,
2022 WL 34444 (S.D. Fla. Jan. 3, 2022) .....21

*Shevin v. Sunbeam Television Corp.*,
351 So. 2d 723 (Fla. 1977) .......................................................................32

*Smith v. Volusia Cnty., Fla.*,
2011 WL 1598741 (M.D. Fla. Apr. 28, 2011) ....................................................21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................................6

*Steele v. Offshore Shipbuilding, Inc.*,
867 F.2d 1311 (11th Cir. 1989).........................................................................21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................ 12, 14

*Trump v. Hawai'i*,
585 U.S. 667 (2018) .......................................................................................16

*Tubby's Customs, Inc. v. Euler*,
225 So.3d 405 (Fla. 2d DCA 2017).....................................................................29

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)...........................................................................7

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025).........................................................33

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019).............................................. 12, 16, 17, 18

*Williams v. City of Minneola*,
575 So.2d 683 (Fla. 5th DCA 1991) .................................................................21

**Statutes**

18 U.S.C. § 2511 ...........................................................................................31

18 U.S.C. § 2511(2)(d).......................................................................................31

21 U.S.C. § 812(c) .............................................................................................3

Fla. Stat. § 381.987 ..................................................................................... 3, 19

Fla. Stat. § 501.202(2).......................................................................................24

Fla. Stat. § 934.03(2)(d) ........................................................................... 31

**Other Authorities**

Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) ................. 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 7

Fed. R. Civ. P. 8(d) ........................................................................... 30

## I. INTRODUCTION

The consumption of marijuana, and especially medical marijuana, is a private act. Amended Complaint, Dkt. 21 ("Compl.") ¶ 1. Dispensaries therefore have a responsibility to their customers to maintain and protect their personal information. *Id.*; Fla. Stat. § 381.987 (exempting personal identifying information in Florida's medical marijuana registry from public disclosure under state's public records law). This case arises from Defendant Trulieve, Inc.'s ("Trulieve" or "Defendant") practice of intentionally embedding tracking code onto its website, allowing over 20 advertising companies to intercept and collect users' highly sensitive personal and health information. Compl. ¶¶ 2 & n.2, 22–30. Offensive as Trulieve's privacy violations are, consumers using Trulieve's site remain unaware. That is by design—even the most probing of site users will there find not an admission as to Trulieve's true practices, but only a limited statement regarding disclosure to a public entity, *id*. ¶ 22, and a promise to refrain from using user information for a "business purpose," *id*. ¶ 22 (quoting Trulieve Privacy Policy). Plaintiff brought this action on behalf of himself and a proposed class of consumers who used Trulieve's website to recover damages and prevent Trulieve from continuing its deceptive acts.

Trulieve asks the Court to dismiss this action, but its Corrected Motion to Dismiss Amended Class Action Complaint, Dkt. 32 ("Mot."), falls short. It relies on Trulieve's Privacy Policy, an internally contradictory and misleading document

whose specific terms only disclose data sharing with a public entity and disclaim for-business use of consumer data. But if indeed the Privacy Policy were to be interpreted as permitting for-business uses of Plaintiff's information, then Trulieve has not shown Plaintiff's assent to such a term[1]—and Trulieve's passing reference to a popup committing the user to "cookies to analyze website traffic and enhance [user] experience," Mot., Ex. A, hardly changes that conclusion.

The remainder of Trulieve's arguments turn on willful ignorance. They hold up only if one pretends that Plaintiff has failed to allege facts which he clearly and prominently alleges. Nothing in the Motion supplies a basis for dismissal, and it should be denied.[2]

## II. BACKGROUND

Defendant Trulieve is the largest medical marijuana dispensary in Florida, with hundreds of locations and multiple processing facilities. Compl. ¶¶ 2, 11, 19. Through its website and mobile application, Trulieve markets and sells marijuana products and services. *Id.* In the course of doing business and providing marijuana,

[1] It goes without saying that Plaintiff's breach of contract claim (Count IV) assumes contract formation as to the Privacy Policy. Compl. ¶ 94. Plaintiff, however, brings that claim in the alternative to his breach of implied contract claim (Count V). If Trulieve's desired interpretation of the Privacy Policy—one which allows third-party disclosure of Plaintiff's data for a business purpose—succeeds, Trulieve has the subsequent burden of showing that Plaintiff assented to the Policy. As discussed below, that Trulieve has not done. *See infra* Part IV.A.

[2] If dismissal is granted in any respect, Plaintiff respectfully requests that such a dismissal allow Plaintiff an opportunity to amend.

including medical marijuana, to consumers in Florida and across the country, Trulieve collects personally identifiable information ("PII") and protected health information ("PHI") from visitors, including IP address (which can reveal users' location), information about medical marijuana purchases and activity on the Trulieve website, and physical location. *Id.* ¶¶ 3, 21.

Trulieve knows or should know that privacy is of utmost importance to consumers who purchase marijuana, including medical marijuana. As a federally controlled substance, 21 U.S.C. § 812(c), its use remains inherently sensitive. Recognizing this, the Florida Legislature has exempted personal identifying and health information in the state's medical marijuana registry from public disclosure under its otherwise broad public records law. Fla. Stat. § 381.987. Marijuana consumption is by its nature, a personal and private act. Compl. ¶¶ 1, 4, 14-18.

Unbeknownst to the consumers who, like Plaintiff and the proposed Class, use its website, Trulieve shares that information with 20+ advertising technology companies—effectively allowing these interlopers to peer over the shoulders of its customers and monitor consumer marijuana consumption without consumer consent. *Id.* ¶¶ 2 & n.2, 22-30.

Consumers who access Trulieve's website are presented with a pop-up window (the "Cookie Button") requiring the user to "agree" to Trulieve's use of cookies to "analyze website traffic and enhance your experience on our website." *Id.*

¶ 30; Mot. Ex. A. The Cookie Button nowhere discloses that Trulieve will share user information with third parties. *Id.*

Trulieve's website also contains a Privacy Policy that contains misleading and untrue statements about how Trulieve handles consumers' PII and PHI collected through its website. *Id.* ¶¶ 22-25.[3] In response to the frequently asked question "Do we disclose the information we collect to Third Parties," the Privacy Policy discloses only that Trulieve makes disclosures to a government agency—omitting that Trulieve also discloses user information to numerous advertising technology companies:

> **Third Party Disclosure**
>
> *Do we disclose the information we collect to Third-Parties?*
>
> In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

*Id.* ¶ 23; Mot. Ex. B. The Privacy Policy also contains additional disclosures limited only to California residents:

[3] Trulieve's latest Privacy Policy claims to have been last updated on January 20, 2025. Trulieve, Privacy Policy: Safeguarding Your Online Data, https://www.trulieve.com/privacy. Plaintiff will, however, address the Privacy Policy as pled in the Amended Complaint and presented in Exhibit B to Trulieve's Motion.

**Your California Privacy Rights**

The following applies solely to California "consumers" as defined in Section 17014 of Title 18 of the California Code of Regulations. We adopt this notice to comply with the California Consumer Privacy Act of 2018 ("CCPA"). This policy describes our collection, use, disclosure, and "sale" of "personal information" of California consumers as these terms are defined under the CCPA.

Please note that job applicants, current and former employees, and individuals subject to business-to-business communications are not considered "consumers" for the purpose of this policy.

Please note: Trulieve does not knowingly sell personal information of California consumers under the age of sixteen (16) years.

Information We Collect and Share:

We collect information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or device ("personal information"). Specifically, we have collected the following categories of personal information from consumers and collected them for the following purposes within the last twelve (12) months:

| Category | Example(s) | Source(s) | Purpose of Collection | Categories of third parties with whom the PI is shared |
|---|---|---|---|---|
| **Identifiers** | Name, postal address, IP address, personal email address, business email address, account name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Customer records** | Name | Directly from users | Maintaining and servicing your account, providing customer service, processing orders/transactions | N/A |
| **Commercial Information** | Purchase history | Directly from users | Processing orders/transactions, verifying identity upon receipt of privacy request | N/A |
| **Internet/ Network Activity** | IP address, Information regarding a consumer's interaction with our website, and mobile application. | Directly from users | Providing advertising or marketing services, providing analytic services | AdTech companies |
| **Geolocation Data** | Physical location | Directly from users | Website and app analytic purposes. | AdTech companies |
| **Audio, electronic, visual, etc. information** | Audio recordings | Directly from users | Providing customer service, quality and training purposes. | N/A |

Disclosure of Personal Information for a Business Purpose

Trulieve does not share your personal information with third parties for business purpose.

Compl. ¶ 24; Mot., Ex. B. These deficient disclosures, which "appl[y] solely to California 'consumers,'" *id.*, only reveal that California consumer information is shared with unnamed "AdTech companies"—and in any case only for *Trulieve* to advertise products and services to those California consumers, not for third-party advertising. Compl. ¶ 24. Regardless, in another, more pertinent section, the Privacy Policy states that "Trulieve does not share your personal information with third parties for business purpose." *Id.* ¶ 22.

Plaintiff is a Florida resident and medical marijuana patient. *Id.* ¶ 45. He used Trulieve's website for several purchases of medical marijuana for personal

consumption. *Id.* ¶ 47. He had no idea that Trulieve would allow his unique identifiers to be paired with information about his private marijuana purchasing behavior in a manner that could identify him to third party advertisers or that Trulieve would share information about his use of the Trulieve site with unnamed third parties. *Id.* Plaintiff and the proposed Class Members were harmed when Trulieve sold data about their marijuana consumption, including medical marijuana consumption, to third parties. *Id.* ¶ 39. They were deprived of the value of their information and suffered injury from their loss of privacy rights. *Id.*

## III. LEGAL STANDARDS

### A. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for lack of subject matter jurisdiction, including standing. *See Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). Standing under Article III consists of three elements: (1) injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) which is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A facial attack on Article III standing requires the court merely to look and see whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; the Court may take the allegations in the complaint as true for purposes of the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

### B. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether to dismiss under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

## IV. ARGUMENT

### A. Trulieve's Confusing and Contradictory Cookie Button and Privacy Policy Do Not Compel Dismissal of Any of Plaintiff's Claims.

Trulieve's Motion repeatedly relies on the incorrect assertion that the faulty and confusing disclosures in its Cookie Button and Privacy Policy compel dismissal of the Complaint and insulate it from liability. This argument fails as to each count: Trulieve's inadequate disclosures did not give Plaintiff notice that Trulieve shares his PII and PHI—his browsing and purchasing of medical marijuana, among other things—with any private third party, much less with over 20 AdTech companies in furtherance of their own business purposes. Even if such disclosures were adequate,

Trulieve in any case has the burden of showing that Plaintiff assented to its Privacy Policy. Trulieve has not done so at this juncture.

First, the Cookie Button did not disclose that Trulieve would share Plaintiff's PII or PHI with *third parties*. It disclosed only that Trulieve would use cookies to "analyze website traffic and enhance your experience on our website." Mot., Ex. A. Reasonable consumers would interpret this to mean that Trulieve was collecting information for its own use on its own website—not to hand such data over to an assortment of AdTech companies. Further, the Cookie Button does not actually disable the use of cookies on the Trulieve website or contain any information about the retention or deletion of information collected about users. Compl. ¶ 30. Thus, consumers who disable cookies are not afforded any benefits and the Cookie Button does not disclose to consumers how Trulieve is using and sharing their information.

Trulieve's reliance on the Privacy Policy is even less tenable. Under the heading, "Third Party Disclosure" Trulieve responds to the question, "Do we disclose the information we collect to Third-Parties?" by only disclosing that Trulieve gives personal information to a state health agency. Compl. ¶ 23; Mot. Ex. B. No consumer could infer that Trulieve therefore also shares information with third party advertisers. To the contrary, by restricting its response to the specific question of third-party disclosure to a single public entity, Trulieve leaves no room for doubt: private entities do not receive consumer information.

Neither can the Privacy Policy's California disclosures save Trulieve. Trulieve claims that its California disclosures "explain[] the information Trulieve collects and shares related to *all of its* '*consumers*.'" Mot. at 4. But by its terms, the California disclosures, which fall under the "Your California Privacy Rights" heading, "appl[y] solely to California 'consumers,'" Mot., Ex. B, and "describe[] [Trulieve's] collection, use, disclosure, and 'sale' of 'personal information' of California consumers," *id*. Thus, non-California residents like Plaintiff have no reason to think that such disclosures apply to them or that the California disclosures would override the promise that Trulieve *only* shares personal information with the Florida Department of Health's Compassionate Use Registry.

The California disclosures considered as a whole, in any case, are so confusing and internally contradictory that they do not exonerate Trulieve. In a section titled, "Disclosure of Personal Information for a Business Purpose," Trulieve promises that it "does not share your personal information with third parties for business purpose [*sic*]." Compl. ¶ 22; Mot., Ex. B. And the California disclosures only permit Trulieve to share information so that *Trulieve* can advertise, not for third-party advertising. These misleading and internally contradictory California disclosures, therefore, do not "explain" Trulieve's practices, as Trulieve incorrectly asserts; they are insufficient to put Plaintiff or the proposed Class Members on notice of Trulieve's actual conduct, which is inconsistent with the promises that Trulieve made to

Plaintiff and the proposed Class Members. *See, e.g.*, *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) (internally contradictory disclosures that "disclosed some use of some tracking features" but also "indicate that [defendant] would not disclose (or sell or use for marketing) users' personal information" were not a basis for dismissal); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (disclosures that "some personally identifiable information might be disclosed" for defendant's use were insufficient to put plaintiff on notice of disclosure of PII and PHI to "third parties for those third parties' own use" and foreclose liability).

Finally, if the Court considers the California disclosures to be clear and applicable over the "Third Party Disclosure," then, in the alternative,[4] whether Plaintiff assented to the California disclosures is a disputed issue of fact not appropriate for resolution on a motion to dismiss. "[A] party plainly cannot be bound by a[] . . . clause of a proffered contract to which it does not assent." *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1154 (M.D. Fla. 2023). In Florida, assent requires something more than merely burying a link to the terms in small print at the bottom of the page. *See Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-

[4] For the reasons described in footnote 1, *supra*, Plaintiff brings this argument in support of his breach of implied contract claim (Count V), if the Court elects to dismiss his breach of contract claim (Count IV). If Plaintiff's Count V claim is dismissed, then his breach of implied contract claim remains viable.

T-35JSS, 2016 WL 7447555, at *6 (M.D. Fla. Aug. 26, 2016) (rejecting under Virginia and Florida law that plaintiff had constructive notice of terms and conditions found in a "hyperlink . . . in small-print type at the very bottom of the website" which users "must, unprompted, undertake to affirmatively scroll to the bottom of the page to see"); *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1261–62 (S.D. Fla. 2021) (hyperlink to terms "not prominent or particularly remarkable at the bottom of the pages where it is featured" insufficient for constructive notice). Trulieve has not shown that Plaintiff had actual or constructive notice of the Privacy Policy or affirmatively agreed to its terms. Without clear evidence of assent, Trulieve cannot enforce the California disclosures against Plaintiff, and its reliance on those terms is misplaced.

### B. Plaintiff Pleads Article III Standing.

Contrary to Trulieve's arguments, Plaintiff pleads facts sufficient to show Article III standing. Plaintiff pleads numerous injuries that courts, including in this Circuit, have recognized as cognizable under Article III; causation, because his and the proposed Class Members' injuries are directly traceable to Trulieve's conduct; and redressability in that Plaintiff has alleged that monetary redress will compensate him and the proposed Class Members for their injuries.

#### 1. Plaintiff Pleads Injury-In-Fact.

"In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). Yet Trulieve asks the Court to agree that Plaintiff's multiple allegations of injury are insufficient to establish the right to proceed in federal court. Trulieve's argument misstates the law and the contents of the Complaint, which alleges numerous injuries sufficient to plead injury-in-fact.

Courts recognize three types of harm under Article III: (1) tangible harms, like physical and monetary harm; (2) intangible harms, like injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts; and (3) material risk of future harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing. *Bennett v. Spear*, 520 U.S. 154, 168 (1997); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019).

Here, the Complaint pleads that Plaintiff and the proposed Class Members suffered multiple injuries and types of harm: (1) invasion of their privacy rights and loss of their privacy and confidentiality, Compl. ¶¶ 39, 67, 131; (2) pecuniary loss

from the sale of their private data to third parties and the resulting loss of value of their private information, *id.* ¶¶ 41, 80, 131; (3) the theft and unauthorized use of their personal property, *id.* ¶¶ 91, 110-112, 131; (4) the loss of the benefit of their bargain with Trulieve, *id.* ¶¶ 98, 104, 131; and (5) the diminishment of their property rights in their PII and PHI, *id.* ¶ 131. *see also infra* at H.

In the data privacy context, these injuries give rise to Article III standing. Invasion of privacy is well-established as analogous to the longstanding tort, while the remaining injuries are concrete and quantifiable. *See, e.g.*, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) (allegation that defendant violated plaintiff's privacy by sharing video rental history with third parties sufficient to confer standing because it was analogous to well-established torts of invasion of privacy and intrusion upon seclusion); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 4547212, at *5 (S.D. Fla. Sept. 18, 2024) (recognizing that "loss of privacy and confidentiality of . . . private information" and "loss of value of private information" are concrete harms); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) (finding allegations that defendant breached contract to provide data security and plaintiffs lost benefit of their bargain are sufficient to confer Article III standing).[5]

[5] *See also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024) (allegation that "personally identifiable information" was disclosed to third party via advertising tracker was sufficiently related to "public disclosure of private facts" to

That conclusion can hardly be disputed; "[i]n *TransUnion* . . . the Supreme Court specifically recognized that 'disclosure of private information' was an intangible harm 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) (quoting *TransUnion*, 594 U.S. at 425).

And the Complaint describes in considerable detail the value and importance that marijuana consumers place on maintaining their privacy. Compl. ¶¶ 14-18, 43. In light of these facts, consumers who use Trulieve to browse and purchase marijuana products have a reasonable expectation that Trulieve will handle their information with care and not allow unnamed third parties to look over their shoulders to inspect their purchasing data. The facts in the complaint support the concrete injuries and harm that Plaintiff has alleged, and Plaintiff has satisfied the requirements of Article III.

---

show concrete injury); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (finding that violations of a substantive right to privacy encompassed in the Wiretap Act and other statutes are sufficiently concrete to confer standing); *In re In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019 (allegations that a party tracked browser activity in violation of promises not to do so were sufficiently concrete to confer standing); *Pileggi v. Wash. Newspaper Pub'g Co.*, 2024 WL 324121, at *5 (D.D.C. Jan. 29, 2024) (invasion of privacy was concrete harm sufficient to confer standing); *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1014-15 (D. Minn. 2023) (disclosure of private video-viewing history to third party was sufficiently concrete harm to confer standing); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-61 (D. Md. 2020) (finding that loss of value of PII was sufficient to confer standing).

Trulieve's cases are distinguishable. In *Muransky v. Godiva Chocolatier, Inc.*, the plaintiff's purported injuries relied solely on a statutory violation rather than harm to his property or interests and were not analogous to a long-established tort. 979 F.3d 917, 922-932 (11th Cir. 2020). In *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, the only alleged harm was that a debt collector sent information to a mail vendor that populated the data into a form letter. *See* 48 F.4th 1236, 1245 (11th Cir. 2022). Here, in contrast to *Muransky* and *Hunstein*, Plaintiff has alleged concrete pecuniary harms, such as loss of the benefit of his bargain and loss of the value of his information, as well as intangible harm in that Trulieve shared his private information with third parties—a harm that the Eleventh Circuit has recognized is analogous to the common law invasion of privacy torts, and thus sufficient to establish standing. *See Perry*, 854 F.3d at 1340-41. There is no requirement that Plaintiff "reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace" to establish standing. *In re Mednax*, 603 F. Supp. 3d at 1204. Rather, the plaintiff need only plead some monetary harm or some injury with a close relationship to a traditional tort, like invasion of privacy.

Trulieve also cites *Williams* to argue that the loss of confidentiality of Plaintiff's private information is insufficient to establish standing, but *Williams* is a case about the merits of an invasion of privacy claim—not Article III standing. Trulieve's challenge to the merits of Plaintiff's invasion of privacy claim is also

wrong, *see infra*, but *Williams* provides no basis to depart from other recent Eleventh Circuit cases and conclude that the disclosure of private information is an injury-in-fact for Article III purposes.

Trulieve also asserts that its confusing and misleading Cookie Button and Privacy Policy should insulate it from a finding of Article III standing. These arguments fail for the reasons stated above. *See supra* Part IV.A.

**2. Plaintiff Pleads Traceability and Redressability.**

The Complaint alleges that the harms suffered by Plaintiff and the proposed Class Members are directly traceable to Trulieve's act of placing advertising trackers on its website to capture users' personal information and transmit it to over 20 third-party advertisers. Plaintiff also alleges that monetary redress would compensate him and the proposed Class Members for their injuries. At the pleading stage, these facts are all that is required to show both causation and redressability under Article III.

"To satisfy Article III's causation requirement, the named plaintiffs must allege that their injuries are connected with the conduct of which they complain." *Wilding*, 941 F.3d at 1125 (quoting *Trump v. Hawai'i*, 585 U.S. 667, 697 (2018)). There is no requirement to show proximate causation; the plaintiff merely need show that the injury alleged is fairly traceable to the defendant's conduct, and even harms that flow indirectly from the action in question can suffice. *Wilding*, 941 F.3d at 1125-26. Here, the Complaint alleges that Trulieve permits over 20 third parties to

deploy tracking and/or cookie technology to monitor Plaintiff's and the proposed Class Members' activities on Trulieve's site, leading to invasion of privacy by the third parties, pecuniary loss and loss of value from the sale of their information, unauthorized use of personal property, and the loss of the benefit of their bargain.

Because "Article III requires no more than de facto causality," these allegations are sufficient to show traceability. *See Wilding*, 941 F.3d at 1126 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)). Plaintiff's standing does not rely on speculation about the effects of Trulieve's actions in installing or permitting the installation of ad trackers on its site; the effects are pleaded directly in the Complaint. *Dep't of Commerce*, 588 U.S. at 768 (where "theory of standing does not rest on mere speculation" but instead upon a "predictable effect" of the defendant's acts, traceability is satisfied); *In re Fortra*, 2024 WL 4547212, at *6 (finding traceability satisfied by alleging that defendants failed to secure their data and put them at risk). Trulieve's argument that Plaintiff has not connected his injuries to Defendant's conduct ignores the allegations in the complaint.

As for redressability, Trulieve challenges this element in a single sentence (unsupported by authority) asserting that Plaintiff has not connected the remedies sought to the harms suffered. Again, Trulieve ignores the complaint which alleges the harms suffered and further alleges that his injuries are redressable via damages

and injunctive relief. *See* Compl. ¶¶ 69, 80-82, 91-92, 98-99, 103-105, 113-114, 131-133. To have Article III standing, a plaintiff need not demonstrate anything more than "a substantial likelihood of redressability." *Wilding*, 941 F.3d at 1126-27. Where the plaintiff alleges that if he prevails he is entitled to damages, redressability is satisfied. *Id.*; *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (finding standing where plaintiffs "allege a monetary injury and an award of compensatory damages would redress that injury"). As Plaintiff has pleaded that damages and the other relief pleaded in the complaint would redress his and the proposed Class Members' injuries, redressability is satisfied.

### C. Plaintiff States a Claim for Invasion of Privacy.

The right to privacy is essentially "the right to be let alone, the right to live in a community without being held up to public gaze if you don't want to be held up to public gaze." Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890). The Complaint alleges two ways in which Trulieve invaded Plaintiff's privacy: (1) intrusion into a private matter, and (2) public disclosure of private facts.[6] Since the Privacy Policy does not dispose of Plaintiff's privacy interest in his marijuana purchasing activities, Trulieve's arguments fail.

[6] Florida law recognizes four types of wrongful conduct that can be remedied through an invasion of privacy action: (1) appropriation, i.e., unauthorized use of a name or likeness for a benefit; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye. *See Agency for Health Care Admin. V. Assoc. Indus. of Fla.*, 678 So.2d 1239, 1252 n.20 (Fla. 1996).

### 1. The Complaint Sufficiently Alleges Intrusion into Plaintiff's Private Marijuana Consumption Habits.

To establish an invasion of privacy based on intrusion, the plaintiff must show (1) an intentional intrusion by the defendant into a matter (2) into which the plaintiff has a right to keep private (3) by use of a method that is objectionable to a reasonable person. *See Parker v. Town of Palm Beach*, 2017 WL 2629490, at *3 (S.D. Fla. June 19, 2017) (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618 (Fla. 2d DCA 1997)). Here, Plaintiff alleges that his browsing and purchasing of marijuana, including medical marijuana, is a "matter," and that Trulieve intruded on that "matter" when it allowed unauthorized third parties to access that "matter." Plaintiff alleges that he had a reasonable expectation of privacy in using Trulieve's website to browse and purchase marijuana because of the stigma attached to marijuana consumption. *See* Compl. ¶¶ 14-18, 43. Further, Plaintiff alleges that the intrusion was highly offensive because it violated his reasonable privacy expectations and was done in a secret manner that ordinary consumers cannot detect. *Id.* ¶¶ 65-67. Florida, after all, exempts medical marijuana records from the broad reach of its public records law. *See* Fla. Stat. § 381.987.

Trulieve's only argument for dismissal is that Plaintiff could not have had an expectation of privacy in his private browsing and purchasing from Trulieve's website because of its confusing and internally contradictory disclosures. But as

explained above, Trulieve's disclosures will not absolve Trulieve from liability. *See supra* Part IV.A.

Trulieve cites no cases to support its position that its confusing Privacy Policy compels dismissal of this action. And in any case, its position is incorrect. Trulieve's challenge to the intrusion upon seclusion claim falls short.

**2. The Complaint Sufficiently Alleges Public Disclosure of Private Facts.**

The Complaint also sufficiently alleges public disclosure of private facts. To state a claim for public disclosure of private facts, the plaintiff must show (1) publication (2) of private facts (3) that are offensive and (4) are not of public concern. *Cape Publications, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989) (citing Restatement (Second) of Torts § 652D)). Plaintiff alleges that facts relating to his and the potential Class Members' marijuana consumption are private and offensive (in that they are highly stigmatized and it is important to consumers to keep the information private). Compl. ¶¶ 14-18, 43. Plaintiff further alleges that Trulieve disclosed this private information to over 20 advertising companies via secretive and surreptitious means without his or the putative Class Members' consent. *Id.* ¶¶ 61-67.

Trulieve's only argument for dismissal of this aspect of the invasion of privacy claim is its incorrect statement that publication must be "to the public at large." Mot. at 17. That is not the law. Instead, the tort of invasion of privacy may be

accomplished by publication to "a large number of persons." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989) (disclosure to a handful of coworkers insufficient). *Williams v. City of Minneola*, 575 So.2d 683, 689 (Fla. 5th DCA 1991) (noting that "a defendant may become liable through revealing the matter to only one person, from whom the information predictably goes to many").

Trulieve cites no cases for its argument that publication to over 20 undisclosed AdTech companies represent a discrete or limited publication. Trulieve does not even cite to cases establishing a threshold for a "large number." Perhaps this is because there is no precise threshold and the facts and circumstances of each case must be taken into consideration; in other words, this is an issue for the jury. *See, e.g.*, 9 Am. L. of Torts § 30:34. In any event, multiple Florida courts have found no requirement to state a precise number of recipients in the complaint. *See, e.g.*, *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at *8 (S.D. Fla. Jan. 3, 2022) (disclosure of information about plaintiff's sexual history to unspecified number of "other individuals" sufficed to state a claim); *Conradis v. Buonocore*, 2021 WL 4243720, at *5 (M.D. Fla. Sept. 17, 2021) (publishing nude photos online sufficient to state a claim, though number of persons who viewed them was not alleged); *Smith v. Volusia Cnty., Fla.*, 2011 WL 1598741, at *6 (M.D. Fla. Apr. 28, 2011) (allegation that defendant told "other members of the Beach Patrol" about plaintiff's sexual relationship with coworker was sufficient to state a claim).

Trulieve's only case, *Hunstein*, is again distinguishable because in *Hunstein* the plaintiff alleged only that information was transmitted to a mail vendor. 48 F.4th at 1244. That is a single company presumably acting as the defendant's agent. Here, in contrast, Plaintiff alleges that the information was disclosed to many actors for unspecified business purposes to which Plaintiff and the proposed Class Members never agreed. Since Trulieve has not shown the Complaint fails to state a claim, its motion must be denied.

**D. Plaintiff States a Claim for Negligence.**

Count II pleads in the alternative to the intentional torts that Trulieve acted negligently in allowing unauthorized third parties to access Plaintiff's and the proposed Class Members' PHI and PII via embedded tracking technologies. A negligence claim has four elements: (1) a duty to conform to a particular standard of conduct; (2) breach of that duty by the defendant; (3) causation; and (4) loss or damage to the plaintiff. *Bartsch v. Costello*, 170 So.3d 83, 86 (Fla. 4th DCA 2015). Trulieve concedes that Plaintiff has "alleged sufficient facts to satisfy that Trulieve had a duty," and indeed, where, as here a business "collects sensitive private data from consumers, it has a duty to protect that information." *In re Fortra*, 2024 WL 4547212, at *8 (cleaned up).

With respect to breach of its duty, Trulieve again relies on the confusing Cookie Button and Privacy Policy. But neither set of disclosures put reasonable

consumers on notice of Trulieve's actual conduct. *See supra* Part IV.A. Thus, the injuries that Plaintiff and the proposed Class Members suffered are directly traceable to Trulieve's unauthorized conduct. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 717.

Trulieve's attacks on Plaintiff's damages allegations also fall short. "Florida defines damages in negligence cases as 'some actual harm.'" *In re Mednax*, 603 F. Supp. 3d at 1224 (quoting *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020)). And contrary to Trulieve's incorrect argument, diminution in value of PII and PHI, as well as access of PII and PHI by unauthorized third parties, satisfy the requirement to plead damages for purposes of a negligence claim. *See, e.g.*, *In re Mednax*, 603 F. Supp. 3d at 1224; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 717. The amount of these damages is an issue for summary judgment or trial. *In re Brinker*, 2020 WL 691848, at *8.

Again, Trulieve's cases are distinguishable. In contrast to the allegations in the Complaint, in Trulieve's cases, the plaintiffs failed to allege diminished value of PII because they "*[did] not* allege that there exists a market for consumer PII." *See Fraga v. UKG, Inc.*, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) (emphasis in original); *see also In re 21st Century Oncology Customer Data Sec. Breach Litig*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (same problem). Here, the Complaint contains many allegations establishing the value of Plaintiff's and the Class

Members' PII/PHI. *See* Compl. ¶¶ 40-44, 80-81. The Motion should be denied as to Count II.

### E. Plaintiff States a FDUTPA Claim.

Count III states a claim for violation of the Florida Unfair and Deceptive Practices Act ("FDUTPA"), alleging that Trulieve made material misrepresentations to consumers by falsely promising not to share their PII and PHI with third parties. *E.g.*, Compl. ¶¶ 89-90. The Florida Legislature enacted FDUTPA to protect the public "from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A claim for damages requires showing (1) a deceptive or unfair act or practice; (2) causation; and (3) actual damages. *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 3d 1243, 1264 (M.D. Fla. 2013). A deceptive practice is one that is "likely to mislead" consumers, while an unfair practice "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Id.* (citations omitted).

Again, Trulieve asserts that the Cookie Button and Privacy Policy undermine Plaintiff's allegations; again, Trulieve is wrong. *See supra* Part IV.A. Contrary to Trulieve's arguments, its purported disclosures are likely to mislead consumers about Trulieve's practices. *See id.*

Plaintiff's damages allegations are also sufficient under FDUTPA. The Complaint alleges that Trulieve took money or property from Plaintiff and the proposed Class Members by misrepresenting that it would not disclose information to third parties, then doing so anyway. Compl. ¶¶ 89-90. In other words, Trulieve enticed Plaintiff and the proposed Class Members to make purchases they would not have made, had they known the truth about Trulieve's data sharing practices. *Id.* ¶ 39 ("Reasonable consumers, including Plaintiff, would not have used the Trulieve.com website had they known that their privacy rights would be violated as a result."). These allegations are sufficient to state a claim under FDUTPA. *See, e.g.*, *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *8 (S.D. Fla. Mar. 20, 2015) (allegations that consumers purchased products they would not have purchased had they known the truth stated a claim for violation of FDUTPA).

Further, FDUTPA allows a consumer to recover the diminished value of the services received. *See, e.g.*, *Orkin Exterminating Co. v. Petsch*, 872 So.2d 259, 263 (Fla. 2d DCA 2004). Plaintiff alleges that he and the proposed Class Members reasonably expected that as part of their business dealings with Trulieve, Trulieve would protect their personal and sensitive information and would not disclose it to third parties. Compl. ¶¶ 33-38. Accordingly, at a minimum, they are entitled to receive the difference between the value of the marijuana products they paid for, which included the expectation that the purchase information would be kept private,

versus what they received—a public purchase transaction made known to over 20 different undisclosed and unauthorized advertising companies for unspecified business purposes.

Trulieve's argument (and the two cases it cites) seeks to limit the measure of damages to the quality of the marijuana products that Plaintiff purchased. Mot. at pp. 21-22. But while the measure of quality of a particular product "is helpful where there is an actual product or service being provided, and the defendant's deceptive act alters the product's or services value," "FDUTPA damages are not . . . limited to this measure of damages." *Morgan v. Public Storage*, 2015 WL 11233111, at *1-2 (S.D. Fla. Aug. 17, 2015). FDUTPA claims exist where a defendant misrepresents the nature of fees it charges, *id.*, and thus, can also exist where, as here, a defendant misrepresents the benefits of the services it purports to offer. Trulieve misrepresented to Plaintiff and the proposed class that it took their privacy seriously and would protect their information from third parties, and then, once it had enticed them to shop for marijuana products on its website, disclosed their information to ad trackers. Plaintiff and the proposed Class Members are entitled to recover the difference between the service they thought they were getting—a private transaction—and what they actually got—a public one.

### F. Plaintiff States a Claim for Breach of Contract or, in the Alternative, Breach of Implied Contract.

Counts IV and V plead claims for breach of contract or, in the alternative, breach of implied contract, respectively. Count IV alleges (and Trulieve does not dispute) that the Privacy Policy is a contract between Plaintiff and the proposed Class Members, on the one hand, and Trulieve, on the other. Compl. ¶ 96. Trulieve promises to share information only with the Florida Department of Health's Compassionate Use Registry (and for California consumers, a limited quantity of information with "AdTech companies"). Compl. ¶¶ 22-24, 97. The Privacy Policy also states that Trulieve "does not share your personal information with third parties for business purpose." Compl. ¶ 22. But Trulieve violates these promises, resulting in loss of the benefit of the bargain and overcharge for Trulieve's services, which consumers understand to include the Privacy Policy. *Id.* ¶¶ 97-98. Count V, pleaded in the alternative, alleges that even if the Court finds that the Privacy Policy is not an express contract, Plaintiff and the proposed Class Members entered into an implied contract with Trulieve to safeguard their private information. *Id.* ¶¶ 101-103. By in fact sharing their information with unauthorized third parties, Trulieve breached that agreement. *Id.* ¶ 104.

Once again Trulieve relies on its Privacy Policy; but again the Privacy Policy does not foreclose either claim. *See supra* Part IV.A.

Trulieve also challenges Plaintiff's damages theory, arguing that Plaintiff has not alleged sufficient facts to establish that he or the proposed Class Members lost

the benefit of their bargain and overpaid for services they believed to include the Privacy Policy. Again, Trulieve ignores the well-pleaded facts. The Complaint includes numerous details about how consumers understood privacy protection to be part of their bargain with Trulieve. *E.g.*, Compl. ¶¶ 33 ("Trulieve[] violates reasonable consumer expectations for how Trulieve will treat sensitive medical information."); 37 ("[C]onsumers rightly presume that this PII and PHI is going to be protected from unauthorized third parties."); 39 ("Reasonable consumers, including Plaintiff, would not have used the Trulieve.com website had they known that their privacy rights would be violated as a result."). By violating its promises to protect consumer privacy, Trulieve diminished the benefit of this bargain consumers believed they were receiving. Many federal courts have held that an implied contract to safeguard customers' sensitive data could reasonably be found to exist in transactions where consumers hand over personal information as part of a transaction. *See, e.g.*, *In re Brinker*, 2020 WL 691848, at *4-5. *See also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (in privacy case, complaint's references to identified portions of Meta's terms of service and privacy policy were sufficiently definite to "provide a rational basis for assessment of damages")

It is well-established that reduced benefit of the bargain is an appropriate measure of contract damages, including in the privacy contract. *See, e.g.*, *Tubby's*

*Customs, Inc. v. Euler*, 225 So.3d 405, 407 (Fla. 2d DCA 2017) (benefit of the bargain an appropriate measure of damages under Florida law); *Rector v. Larson's Marine, Inc.*, 479 So.2d 783, 785 (Fla. 2d DCA 1985) (recognizing that an injured party may "insist upon the benefit of his bargain, and seek the damages that would place him in the position he would have been had the contract been completely performed"). *Brahm v. Hosp. Sisters Health Sys.*, 2024 WL 3226135, at *4 (W.D. Wisc. June 28, 2024) (citing numerous cases); *Hall v. Centerspace, LP*, 2023 WL 3435100, at 7-8 (D. Minn. May 12, 2023) (plaintiff alleged damages sufficient to support a claim for breach of implied contract where plaintiff asserted the value of his PII was diminished); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) ("Courts have approved damages based on benefit of the bargain in several technology cases involving privacy."); *Bray v. Gamestop Corp.*, No. 17-cv-1365, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) ("[P]laintiffs have plausibly alleged that data security was part of what they paid for but did not receive.").

The Complaint also does not limit damages to benefit of the bargain; rather, Plaintiff seeks all damages available under law, Compl. ¶¶ 99, 104, which in Florida also includes compensatory damages flowing from the breach, *In re Brinker*, 2020 WL 691848, at *6. *See also, e.g.*, *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1297 (S.D. Cal. 2020) ("The dissemination

of one's personal information can satisfy the damages element of a breach of contract claim."). At a minimum, "debates over the value of Plaintiffs' loss are fact disputes better left for summary judgment or trial." *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023).

### G. Plaintiff States a Claim for Unjust Enrichment in the Alternative to Breach of Contract.

In Count VI, Plaintiff states a claim for unjust enrichment in the alternative to breach of contract. Trulieve does not argue that Plaintiff has not properly pleaded the elements of unjust enrichment; instead, Trulieve complains only that Count VI is pleaded in the alternative. Mot. at pp. 24-25. Under Federal Rule 8(d), Plaintiff may plead in the alternative and the pleading is sufficient if any one of them is sufficient. Fed. R. Civ. P. 8(d)(2). *See also, e.g.*, *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) ("Although it is well established that an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy, it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim." (citations omitted)). At this point, to the extent there is any dispute over whether the Privacy Policy expressly governs Trulieve's obligations to consumers who use its website—and as stated previously the internal contradictions and misleading nature in Trulieve's disclosures may raise a reasonable question as to whether it does, *see supra* Part IV.A.—the unjust enrichment claim should survive dismissal.

### H. Plaintiff States a Claim for Violations of the ECPA.

Finally, Plaintiff states a claim for violations of ECPA, and Trulieve has not shown otherwise. ECPA makes it illegal intentionally to intercept, or attempt to intercept, certain communications and disclose or use their contents. 18 U.S.C. § 2511. A person whose electronic communications were intercepted may bring a civil action under ECPA. *Id.* § 2520(a). The Complaint alleges that Trulieve violated ECPA when it disclosed the contents of Plaintiff's and the proposed Class Members' communications relating to the purchase and use of marijuana, including medical marijuana, with a tortious and/or criminal purpose. *See* Compl. ¶¶ 121-125; *see also* 18 U.S.C. § 2511(2)(d). Trulieve intentionally committed tortious acts by collecting and disclosing Plaintiff's and the proposed Class Members' PII and PHI, thereby intruding upon their privacy, trespassing upon their property, and violating the federal wire fraud statute by way of the false and misleading statements in its Privacy Policy. Compl. ¶¶ 125-130.[7] Trulieve's actions, as described in the Complaint, Compl. ¶¶ 125-130, are in any case a violation of section 934.03(2)(d), Florida Statutes. Unlike its federal counterpart, section 934.03(2)(d), Florida's wiretapping statute, "require[s] all parties to a defined wire or oral communication to give prior

---

[7] Plaintiff does not dispute that Trulieve was the intended recipient of the communications. However, Plaintiff contends that the collection and disclosure of his information was made with tortious and/or criminal intent, putting it outside the exception in 18 U.S.C. § 2511(2)(d).

consent." *Guilder v. State*, 899 So.2d 412, 417–18 (Fla. 4th DCA 2005) (emphasis omitted) (quoting *Shevin v. Sunbeam Television Corp.*, 351 So. 2d 723, 726–27 (Fla. 1977)). Lacking a one-party consent exception to wiretapping, the statute embodies "a policy decision by the Florida legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to the conversation." *Id*.

Trulieve's incorrect contention that Plaintiff has not alleged the communication was intercepted for purposes of committing a criminal or tortious act therefore ignores the allegations in paragraphs 125 through 130. *See* Compl. ¶¶ 125-130 ("In disclosing the content of Plaintiff's and the Class members' communications relating to the purchase and use of medical marijuana, Trulieve had a purpose that was tortious, criminal, and designed to violate statutory and constitutional provisions . . . ."). Trulieve mounts no challenge to the sufficiency of these allegations; it simply asserts inaccurately that the allegations are not there.

As described above, *see supra* Part IV.C, numerous allegations in the complaint plausibly allege that Trulieve invaded Plaintiff's and the proposed Class Members' privacy. Further, the Complaint alleges that Trulieve made false statements about its intentions and conduct with respect to Plaintiff's and the proposed Class Members' PHI and PII in its Privacy Policy. *See supra* Part IV.A. Plaintiff also alleges that these acts were committed intentionally. Compl. ¶¶ 7, 32,

60-61, 70, 118, 125-26, 128-30. And Plaintiff plausibly argues that disclosure of his PII and PHI violated HIPAA to the extent that Trulieve is a HIPAA-covered entity—an issue more appropriately resolved after discovery given its complexities, and since Trulieve has not raised any substantial argument about it in the Motion. *See D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) ("declin[ing] to resolve" on motion to dismiss "highly technical questions" involved in pixel privacy case); *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) (declining to dismiss ECPA claim because "[a]pplication of the crime-tort exception appears more fit for resolution at summary judgment or trial" and "courts in the Northern and Middle Districts of Florida have . . . declined to dismiss Wiretap Act claims . . . at the motion to dismiss stage"). Since Plaintiff has stated claims for these torts, the facts alleged in support of them also support his ECPA claim.

Many courts have held that nearly identical allegations are sufficient to state a claim under ECPA. *See, e.g.*, *Gay v. Garnet Health*, 2024 WL 4203263, at *3 (S.D.N.Y. Sept. 16, 2024) (allegation that healthcare provider embedded add trackers and transmitted their PII and PHI to third parties were sufficient to plead ECPA violation); *Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 WL 3586357, at *6-8 (S.D.N.Y. July 30, 2024) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *4-5 (W.D.N.Y. Mar. 19, 2024) (same); *R.C. v. Walgreen Co.*, 2024 WL 2263395,

at *16 (C.D. Cal. May 9, 2024) (same). In contrast, Trulieve does not cite a single case supporting its argument that these allegations are insufficient. The Motion should be denied.

## V. CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied.

Dated: March 10, 2025

Respectfully submitted,

*/s/ Arturo Peña Miranda*
Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
One World Trade Center, 85th Floor
New York, New York 10007
Tel.: 929-709-1493
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*ed.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

**Pro Hac Vice* forthcoming

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum, including body, headings, quotations, and footnotes, and excluding those portions exempt from the Rule, contains 7,984 words as measured by Microsoft Office.

*/s/ Arturo Peña Miranda*