**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MARK ROBINSON,**

     **Plaintiff,**

**v.**                               **Case No. 4:24-cv-391-AW-MJF**

**TRULIEVE INC.,**

     **Defendant.**

_____/

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Mark Robinson bought marijuana online from Defendant Trulieve Inc. He later filed this lawsuit, contending Trulieve unlawfully shared information about his drug purchases with others. ECF No. 21 (FAC). Trulieve moved to dismiss, arguing Robinson lacks standing and has not stated a claim. After a hearing and careful review of the papers (ECF Nos. 32, 34, 40), I now grant the motion.

**I.**

Because standing implicates the court's jurisdiction, I start there. To show standing, Robinson had to allege facts showing he suffered a particularized and concrete injury traceable to Trulieve's conduct and redressable here. And because "standing is not dispensed in gross," he must separately show standing for each claim and for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

1

Robinson asserts eight claims: two common-law invasion-of-privacy claims, a negligence claim, a contract claim, an implied-contract claim, an unjust-enrichment claim, and two statutory claims: one under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and one under the federal Electronic Communications Privacy Act (ECPA). He seeks damages as to all claims and injunctive relief as to one of his privacy claims.

Trulieve first argues Robinson alleged no concrete injury. ECF No. 32 (MTD) at 17. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms . . . ." *Ramirez*, 594 U.S. at 417. Here, Robinson's common-law privacy claims allege concrete intangible injuries. *See id.* at 425 (explaining that concrete intangible injuries include "reputational harms, disclosure of private information, and intrusion upon seclusion").[1]

In resisting this conclusion, Trulieve contends Robinson has no reasonable expectation of privacy in his marijuana usage. MTD at 22. But this goes to the merits, which is separate from standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975)

---

[1] Robinson's two privacy counts are related but different. Count One—labeled "common law invasion of privacy"—presents as an intrusion-upon-seclusion claim. Count Eight alleges "common law public disclosure of private facts." FAC at 25, 42.

(noting that standing "in no way depends on the merits"); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (explaining that "one must not confuse weakness on the merits with absence of Article III standing" (cleaned up)); *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) ("In reviewing the standing question, the court must . . . assume that on the merits the plaintiffs would be successful in their claims." (cleaned up)). Similarly, with respect to the publication-of-private-information claim, Trulieve argues Robinson has not alleged wide enough publication, MTD at 19, another merits issue.

The cases Trulieve cites do not support its conclusion. *See id.* at 18-21 (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022) (en banc); *Fraga v. UKG, Inc.*, 2022 WL 19486310 (S.D. Fla. May 10, 2022)). First, *Muransky* and *Hunstein* involved statutory, not common-law, claims. *Cf. Muransky*, 979 F.3d at 926 ("[Q]uestions of whether alleged intangible harms are concrete have an extra wrinkle when the plaintiff's claim stems from the violation of a statute."). As the Supreme Court recognized, some statutory causes of action could allow success based on a "bare procedural violation, divorced from any concrete harm," meaning some plaintiffs lack standing even when satisfying every element of the statutory claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). But to succeed on traditional common-law claims—like Robinson's privacy claims—a

plaintiff necessarily must have a concrete harm. *See Ramirez*, 594 U.S. at 424. Second, the plaintiffs in *Muransky* and *Fraga* relied on threats of future harm from potential identity theft. *Muransky*, 979 F.3d at 926 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)); *Fraga,* 2022 WL 19486310, at \*4, \*9. Robinson's claims do not depend on potential future harms.

In short, Robinson has alleged enough to show a concrete past injury as to his privacy claims. He has also alleged a concrete injury as to his other common-law claims: negligence, breach of contract, breach of implied contract, and unjust enrichment. The contract (and quasicontract) claims provide traditional bases for lawsuits in American courts. *See Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) (holding that "a party to a breached contract has a judicially cognizable injury for standing purposes" (quoting *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017))). And although the negligence claim alleges no intentional conduct, it is still based on the same kind of injury as the privacy claims. *Cf. Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1210 n.6 (11th Cir. 2025) (noting that different *mens rea* elements do not affect the concreteness of a plaintiff's injury: "if an election official denies a voter's ballot . . ., the voter suffers harm whether the election official acted intentionally, unintentionally, in good-faith, or in bad-faith"). Moreover, all these claims are traditionally remedied by monetary damages, and

4

among "[t]he most obvious" concrete injuries are "monetary harms." *Ramirez*, 594 U.S at 425.

Next is the FDUTPA claim. A FDUTPA claim requires actual damages, which comprise "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (internal quotation omitted). Actual damages are not "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Id.* at 873. Assuming Robinson succeeds on the merits, as I must in evaluating standing, he will have alleged a concrete financial injury.

Last is the ECPA claim. The question for this claim is whether Trulieve's alleged ECPA violation caused harm analogous to a traditional common-law injury. *Ramirez*, 594 U.S. at 424. The parties agree Trulieve was "a party to the communication," meaning there was an ECPA violation only if "such communication [was] intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Here, Robinson alleges Trulieve intercepted his communications to later disclose them without authority, which he alleges constitutes intrusion upon seclusion, trespass, and wire fraud. FAC ¶ 125. In other

words, Robinson bases his ECPA claim on the same alleged injury underlying his privacy claims, so he has standing for the same reasons.

Having decided Robinson has alleged a concrete injury for each claim, I turn to Trulieve's other standing arguments: that Robinson's injuries are not traceable to Trulieve or redressable by this court. MTD at 24. These are not difficult issues. Robinson alleges Trulieve disclosed his illegal drug purchases without permission, and he alleges he "would not have used the Trulieve.com website" had he received a full disclosure. FAC ¶ 39. This is enough for traceability. And the monetary damages he seeks would redress his injuries.

Robinson has standing to seek damages for each claim. He has not alleged enough, though, to show standing to pursue injunctive relief. *See* FAC ¶ 144 (seeking "injunctive relief to prevent Defendant from continuing to disclose [] private facts"). To allege standing for injunctive relief, a plaintiff must allege facts showing a substantial risk of future injury. *See Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015). Because Robinson has not done so, he does not have standing to seek injunctive relief. I now turn to the merits.

## II.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Courts accept well-pleaded facts as true but ignore "[t]hreadbare recitals of

6

the elements" of a claim and "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, I draw all reasonable inferences in Robinson's favor. *See MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1228 (11th Cir. 2023).

I begin with the privacy claims. Under Florida law, intrusion upon seclusion requires intrusion into a place in which there is a reasonable expectation of privacy. *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1206 (Fla. 3d DCA 2023). Public disclosure of private facts requires publication of private facts that are offensive and not of public concern. *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). Trulieve argues both claims fail because Robinson had no reasonable expectation of privacy. MTD at 26. I agree.

Federal law "designates marijuana as contraband for any purpose," *Gonzales v. Raich*, 545 U.S. 1, 27 (2005), and there is no federal privacy right in criminal activity, *see Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) ("The possession of contraband drugs does not implicate any aspect of personal identity which . . . is entitled to constitutional protection. Validly enacted drug laws put citizens on notice that this realm is not a private one." (citation omitted)); *Laird v. State*, 342 So. 2d 962, 963 (Fla. 1977) ("We reject the notion that smoking marijuana at home is the type of conduct protected by the constitutional right to privacy . . . ."). Florida law does not help Robinson, either. Florida law provides greater privacy protections than federal law. *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regul.*, 477 So.

2d 544, 548 (Fla. 1985); Fla. Const. Art. 1, § 23. But Florida law makes clear there is no reasonable expectation of privacy in marijuana use. *See* Fla. Stat. § 381.986(5)(a) (requiring state agency to maintain database readily accessible to law enforcement and identifying all marijuana users); *cf. City of N. Miami v. Kurtz,* 653 So. 2d 1025, 1028 (Fla. 1995) (finding no legitimate expectation of privacy as to whether one smokes tobacco). Without a reasonable expectation of privacy in his marijuana purchases, Robinson's privacy claims fail.

Robinson's intrusion claim fails for another reason, too: Robinson alleged no intrusion. Although he says illegal marijuana usage is a private matter, ECF No. 34 (Resp.) at 27, Florida law requires "a plaintiff to show an intrusion into a private place and not merely a private activity," *Eldridge*, 360 So. 3d at 1207 (quoting in parenthetical *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (citing *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 n.3, 162 (Fla. 2003))). And although intrusion can be electronic, *id.* at 1206, Robinson has not shown Trulieve intruded at all, because he voluntarily gave Trulieve his information.

Next is the negligence claim. Under Florida law "there is no such thing as the 'negligent' commission of an 'intentional' tort." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). At the hearing, counsel clarified that Robinson pleaded negligence in the alternative to claims alleging intentional acts. Robinson can plead in the alternative, Fed. R. Civ. P. 8(d)(2), but he has not alleged facts

consistent with any negligent act. Indeed, counsel could not identify any way the complaint's factual allegations could support a negligence claim. Robinson thus has not plausibly alleged negligence. *Cf. Quilling v. Price*, 894 So. 2d 1061, 1064 (Fla. 5th DCA 2005) (concluding there was no negligence claim when the alleged facts supported only an intentional tort).

For the breach-of-contract claim, Robinson needed to allege a contract, a breach, and resulting damages. *Rollins*, 951 So. 2d at 876. Robinson alleged the Privacy Policy is the contract. FAC ¶ 94. At the hearing, Robinson's counsel agreed the complaint incorporated the Privacy Policy and Cookies Acceptance Form. *See* ECF Nos. 32-1, 32-2.[2] So I can consider those documents here. But based on the Privacy Policy's text, I conclude Robinson has not sufficiently alleged a breach.

A court must analyze a contract's plain language to determine its meaning. *Aleman v. Gervas*, 314 So. 3d 350, 352 (Fla. 3d DCA 2020). The Privacy Policy comes in two parts. One is labeled "Your California Privacy Rights" and, by its

---

[2] The parties dispute the relevance of the Cookies Acceptance Form. All it says is, "[b]y using this website, you agree to our use of cookies to analyze website traffic and enhance your experience on our website." The form has a large green button labeled "accept" at the bottom and an X in the corner.

Trulieve seems to argue the "accept" button gives website users notice of its tracking software. But it is not clear that users would understand the form to permit Trulieve to sell their information about marijuana use to third parties. It is thus doubtful the form would help Trulieve overcome an otherwise valid breach-of-contract claim. Regardless, Robinson has not stated a valid breach-of-contract claim.

terms, "applies solely to California 'consumers' as defined [by the California Code]." ECF No. 32-2 at 1-2. This part is inapplicable to Robinson, a Florida resident. FAC ¶ 9.

Robinson contends the Privacy Policy says Trulieve will disclose user information only to a Florida agency. FAC ¶ 97. He relies on a section labeled, "do we disclose the information we collect to third-parties," which answers its own question by saying, "to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry." ECF No. 32-2 at 1. Robinson argues that "by restricting its response to the specific question of third-party disclosure to a single public entity, Trulieve leaves no room for doubt: private entities do not receive consumer information." Resp. at 16. But the Privacy Policy leaves Trulieve more room than Robinson supposes. There is no term restricting Trulieve's data sharing. To Robinson's point, the policy names only one entity with which Trulieve shares information. But it never promises Trulieve will not share information with others.

Robinson argues alternatively that the Privacy Policy is internally contradictory, such that extrinsic evidence is necessary to determine the agreement's terms. Resp. at 17-18; *see E-Commerce Coffee Club v. Miga Holdings, Inc.*, 222 So. 3d 9, 12 (Fla. 4th DCA 2017) (holding internal contradictions in a contract create ambiguity requiring consideration of extrinsic evidence). But Robinson's arguments

10

for internal contradictions are based on provisions of the California disclosure, which, as discussed above, do not apply to Robinson.

As an alternative to his contract claim, Robinson alleges breach of an implied contract. But he has not stated a claim for that, either. The difference between an express and implied-in-fact contract is the nature of the parties' assent.[3] Parties assent to express contracts by promissory language, but they assent to implied-in-fact contracts by their actions. *Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So. 3d 12, 15 (Fla. 4th DCA 2023). Courts must give to implied-in-fact contracts the effect the parties "presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto." *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1950) (quoting 12 Am. Jur. 766). The question is whether Trulieve's provision of a website to purchase marijuana, which requires users to disclose their identities, implied a promise to not share the identities with commercial partners.

Robinson asserts there was "a reasonable expectation" Trulieve would keep his marijuana use confidential and that "part of the monies paid to Trulieve" was for this purpose. FAC ¶ 102. But the complaint includes no facts to support these

---

[3] I construe the implied-contract claim as based on an implied-in-fact contract, not an implied-in-law contract. The latter would duplicate the unjust enrichment claim. *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (noting terms are interchangeable).

conclusions. *See Iqbal*, 556 U.S. at 678. As to the reasonableness of his expectation, Robinson relies on "[p]rivacy polls and studies" suggesting Americans would like their data kept private. FAC ¶ 65. But what reasonable people would like and what reasonable people believe they are contracting for are different things.

Next is the unjust-enrichment claim, for which Robinson had to allege (1) he conferred a benefit on Trulieve; (2) Trulieve knowingly and voluntarily accepted the benefit; and (3) it would be inequitable for Trulieve to retain the benefit without paying Robinson. *See Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

Trulieve argues that because the Privacy Policy is an express contract, Robinson cannot claim unjust enrichment. MTD at 34-35 (citing *Atlantis Est. Acquisitions, Inc. v. DePierro*, 125 So. 3d 889, 894 (Fla. 4th DCA 2013)). It is true that an express contract would preclude an unjust-enrichment claim. *DePierro*, 125 So. 3d at 894. But Robinson can plead claims in the alternative. *See* Fed. R. Civ. P. 8(d)(2). So his allegations of an express contract do not defeat his unjust-enrichment claim—at least not at this stage.

Still, Robinson did not plausibly allege unjust enrichment. His allegation that sharing his identity with Trulieve conferred a benefit that would Trulieve inequitably retained is an unsupported legal conclusion. FAC ¶¶ 109-113. He needed to allege

specific facts to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 544.

As to the FDUTPA claim, Robinson had to plead facts showing (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins*, 951 So. 2d at 869. Trulieve questions whether Robinson alleged a deceptive act or unfair practice, but it primarily argues Robinson alleged no actual damages. MTD at 30.

Robinson argues he would not have purchased marijuana had he known Trulieve would share his information. Resp. at 33; *accord* FAC ¶ 39. At the hearing, Robinson's counsel explained that Robinson thought he was purchasing marijuana and data privacy but received only marijuana. But as discussed above, Robinson did not allege any facts showing data privacy was part of the bargain.

Robinson advances an alternative theory of damages: that he suffered "pecuniary losses" from Trulieve's selling the information that he was a marijuana user "because of the value of the data itself." FAC ¶ 41. This, too, is conclusory. Robinson alleged no facts showing his personal information was financially valuable to him or that its value decreased once shared. By his logic, any website user devalues his own information's value every time he makes an online purchase. Regardless, even if the effect of the purchase was to cause Robinson some sort of financial harm, that is not enough. A FDUTPA claim requires a difference in market

value between the agreed-upon product or service and what was received. *Rollins*, 951 So. 2d at 869. Not just any economic injury will do.

Last is the ECPA claim. As a party to the communication, Trulieve violated the ECPA only if its interception was "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(d). Robinson alleges that Trulieve intended to intrude upon seclusion, trespass, publicly disclose private facts, and commit wire fraud. FAC ¶ 125. But none of these tortious or criminal purposes are plausible.

Robinson fairly alleges Trulieve intercepted his data with the purpose of sharing it. But he has not alleged facts showing the purpose was tortious. As noted above, the two privacy claims fail as currently pleaded. And although it is questionable whether a trespass claim can even apply to electronic property under Florida law, any trespass claim would also fail because Trulieve had consent to access the information it did. Additionally, all three torts are insufficient because the tortious purpose cannot simply be the purpose to intercept, even if the interception separately constitutes a tort or crime. *See Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010).

Robinson also did not plausibly allege Trulieve intended to commit wire fraud. Robinson needed to plead allegations of fraud with particularity. *See* Fed. R. Civ. P. 9(b). This means Robinson needed to plead the "who, what, when, where,

14

and how" of the fraud. *Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022).[4]

* * *

The motion to dismiss (ECF No. 32) is GRANTED. Robinson's claim for injunctive relief is dismissed for lack of standing. The remainder of the First Amended Complaint (ECF No. 21) is dismissed for failure to state a claim. Although it is not clear Robinson could allege sufficient facts to cure the deficiencies identified above, he may try. Within fourteen days, Robinson may file a Second Amended Complaint. Trulieve will then have fourteen days to respond. If Robinson does not timely file an amended complaint, final judgment will issue.

SO ORDERED on June 2, 2025.

s/ *Allen Winsor*
United States District Judge

---

[4] How the misleading statements constitute a scheme to defraud is particularly important. Robinson's complaint never explains whether Trulieve fraudulently induced him to part with the money he used to buy marijuana, or if he was defrauded of the information that he used marijuana. FAC ¶¶ 128, 129. To the extent Robinson alleges his information was the object of the wire fraud, that presents other issues. *See Ciminelli v. United States*, 598 U.S. 306, 309 (2023) (noting wire fraud must target "traditional property interests").