**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**Case No.: 4:24-cv-00391**

MARK ROBINSON, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

TRULIEVE INC.,

*Defendant*.
_______________________________/

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Grace L. Mead
Andrea N. Nathan
Hannah E. Murphy
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130

July 30, 2025

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Trulieve and its Website Disclosures ..... 2

B. Plaintiff's Claims and the Proposed Classes He Seeks to Represent ..... 3

MOTION TO DISMISS STANDARD ..... 6

ARGUMENT ..... 6

I. The Privacy Policy Must Be Considered on this Motion ..... 6

II. Plaintiff Does Not and Cannot Plead a Basis for Article III Standing ..... 8

A. No Injury-in-Fact ..... 8

B. No Causation ..... 12

III. Plaintiff Had No Reasonable Expectation of Privacy ..... 13

A. Florida Courts have Determined there is no Reasonable Expectation of Privacy in Website Browsing Data. ..... 13

B. HIPAA Does Not Create a Reasonable Expectation of Privacy. ..... 14

C. Florida Law Does Not Create a Reasonable Expectation of Privacy ..... 17

IV. The Complaint Fails to State a Claim for Breach of Confidence—First Cause of Action ..... 20

V. The Complaint Fails to State a Claim for Breach of Implied Contract—Second Cause of Action ..... 22

VI. The Complaint Fails to State a Claim for Unjust Enrichment—Third Cause of Action ..... 23

VII. The Complaint Fails to State a Claim for Public Disclosure of Private Facts—Fourth Cause of Action ..... 25

VIII. The Complaint Fails to State a Claim for Violation of Florida's Security of Communications Act—Fifth Cause of Action ..... 27

A. Plaintiff Fails to State a Claim because he had no Reasonable Expectation of Privacy. ..... 27

B. Plaintiff Fails to State a Claim because he does not Allege that Trulieve Captured the Content of a Communication Protected by SCA. ..... 28

CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Hospital Assoc. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Avrich v. State*,
936 So. 2d 739 (3d DCA 2006) ....................13

*Baker v. Akumin Corp.*,
No. 0:23-CV-62396, 2024 WL 1931480
(S.D. Fla. Apr. 16, 2024) ....................24

*Brush v. Miami Beach Healthcare Group Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017)....................17

*Calderon v. Sixt Rent a Car*,
114 F.4th 1190 (11th Cir. 2024) ....................7

*Cape Publications, Inc. v. Hitchner*,
549 So. 2d 1374 (Fla. 1989) ....................25

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD, 2021 WL 2820822
(S.D. Fla. July 6, 2021)....................29

*Castillo-Plaza v. Green*,
655 So. 2d 197 (Fla. 3d DCA 1995)....................21

*Cohen Bros., LLC v. ME Corp., S.A.*,
872 So. 2d 321 (Fla. 3d DCA 2004)....................14

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*,
695 So. 2d 383 (Fla. 4th DCA 1997)....................22

*Conradis v. Buonocore*,
2020 WL 4243720 (M.D. Fla. 2021)....................26

*Daewoo Motor America v. General Motors*,
459 F.3d 1249 (11th Cir. 2006) ....................7

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ....................7

*Florida Ass'n of Medical Equipment Dealers v. Apfel*,
194 F.3d 1227 (11th Cir. 1999) ....................12

*Florida Dept. of Corr. v. Abril*,
969 So. 2d 201 (Fla. 2007) ....................19

*Fraga v. UKG*,
2022 WL 19486310 (S.D. Fla. May, 10, 2022)....................11

*Fulton v. Brancato*,
189 So. 3d 967 (Fla. 4th DCA 2016)....................23

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)....................29

*Goldstein v. Luxottica of Am., Inc.,*
No. 21-80546-CIV, 2021 WL 4093295
(S.D. Fla. Aug. 23, 2021)....................13, 27, 29

*Green-Cooper v. Brinker International*,
73 F.4th 883 (11th Cir. 2023) ....................12

*Gubala v. Time Warner Cable*,
846 F.3d 909 (7th Cir. 2017) ....................11

*Hunstein v. Preferred Collection and Management Services, Inc.*,
48 F.4th 1236 (11th Cir. 2022) (en banc) ....................9, 10, 25, 26

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)....................21

*Insurance Marketing Coaltion v. FCC*,
127 F.4th 303 (11th Cir. 2025)....................16

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. 2021) ....................13, 28, 29, 30

*Lowery v. Alabama Power Co.*,
483 F.3d 1184 (11th Cir. 2007) ....................................................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................8, 12

*Mamani v. Berzain*,
654 F.3d 1148 (11th Cir. 2011) ......................................................................6

*Muransky v. Godiva Chocaltier*,
979 F.3d 917 (11th Cir. 2020) (en banc) ....................................................10, 20

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097
(W.D. Wash. Mar. 4, 2025) .......................................................................16, 17

*Perry v. CNN*,
854 F.3d 1336 (11th Cir. 2017) ....................................................................10

*Rand v. Eyemart Express, LLC,* No.
3:24-CV-000621-N, 2024 WL 4376162
(N.D. Tex. Oct. 1, 2024)..............................................................................16

*Selinger v. Kimera Labs*,
2022 WL 3444 (S.D. Fla. Jan. 3, 2022)..........................................................26

*SFM Holdings v. Banc of America Securities*,
600 F.3d 1334 (11th Cir. 2010) ......................................................................7

*Simon v. Eastern Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976)......................................................................................12

*Smith v. Volusia County*,
2011 WL 1598741 (M.D. Fla. April 21, 2011) ................................................26

*Sneed v. Pan American Hosp.*,
370 Fed.Appx. 47 (11th Cir. 2010)................................................................17

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)...................................................................................8

*Stall v. State*,
570 So. 2d 257 (Fla. 1990) .......................................................................25, 27

*State v. Johnson*,
814 So. 2d 390 (Fla. 2002) ....................................................................18

*Steele v. Offshore Shipbuilding, Inc.*,
867 F.2d 1311 (11th Cir. 1989) ..............................................................25

*Summers* v. *Earth Island Inst.*,
555 U.S. 488 (2009)................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................7

*Transunion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)........................................................................8, 9

*Trichell v. Midland Credit Mgmt.*,
964 F.3d 990 (11th Cir. 2020) ................................................................10

*Tsao v. Captiva MVP Restaurant*,
986 F.3d 1332 (11th Cir. 2021) ..............................................................10

*Tsao v. Captiva MVP Restaurant Partners*,
386 F.3d 1332 (11th Cir. 2021) ................................................................9

*United States v. Grayden*,
977 F.3d 1146 (11th Cir. 2020) ..............................................................19

*W.W. v. Orlando Health, Inc.*,
No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892
(M.D. Fla. Mar. 6, 2025)........................................................................29

*Weinberg v. Advanced Data Processing, Inc.*,
147 F.Supp.3d 1359 (S.D. Fla. 2015)......................................................17

**Statutes**

Fla. Stat. § 381.986 .................................................................................19

Fla. Stat. § 381.987 ...........................................................................19, 20

Fla. Stat. § 395.3025 ...............................................................................19

Fla. Stat. § 934.02 ...................................................................................28

Fla. Stat. § 934.03 .....27

HIPAA Pub. L. No. 104-191 § 261 .....14, 15

**Rules and Regulations**

45 CFR Part 160.....15, 16

45 CFR § 160.102 .....15

45 CFR § 160.103 .....15

Fed. R. Civ. P. 12 .....1, 6

**Other Authorities**

Fla. Admin. Code Ch. 64-4.....19

Fla. Admin. Code § 64-4.202.....19

Restatement (Second) of Torts section 652D cmt. a .....25

Defendant Trulieve, Inc. ("Trulieve") respectfully moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Second Amended Class Action Complaint ("Complaint" or "Compl."), DE 47, and submits the following memorandum of law in support:

## INTRODUCTION

After offering many reasons why Plaintiff's prior complaint failed to state any of the claims asserted, including that it did not plead any facts establishing a reasonable expectation of privacy, the Court stated in the Order Granting Motion to Dismiss ("Order") that "it is not clear Robinson could allege sufficient facts to cure the deficiencies identified." Order at 15. The latest iteration of Plaintiff's Complaint makes clear he cannot—it simply adds more allegations about the information collected and shared, adds general allegations about the value of data, jettisons all federal claims and some state law claims, and tries but fails to show that HIPAA applies to medical marijuana dispensaries like Trulieve. None of these changes remedy the prior pleading's fatal deficiencies. As explained below, pp. 13-20, Plaintiff still has not alleged facts showing a reasonable expectation of privacy in the data generated by browsing Trulieve's website or showing how he himself has suffered a monetary injury.

Trulieve's Privacy Policy discloses, among other things, that it "use[s] cookies to analyze website traffic," that it confirms every purchaser's information

and ID with the Florida Department of Health, and that it collects a wealth of information from website visitors. After acknowledging these disclosures but failing to grapple with their terms, the Complaint still does not and cannot plead the facts needed to establish Article III standing or the elements of the five different claims it tries to assert. For these reasons, Plaintiff yet again fails to state a claim.[1]

## BACKGROUND

### A. Trulieve and its Website Disclosures

Trulieve is the largest medical marijuana company in the State of Florida with over 130 locations and six processing facilities. Compl. ¶¶ 3, 13. Consumers can access information about Trulieve's products and make reservations to pick up those products through its website, Trulieve.com. Compl. ¶ 22. The website contains a privacy policy that governs the use of the website (the "Privacy Policy"). Ex. A; Compl. ¶ 5, n. 6.[2]

At the outset, the Privacy Policy discloses that, to make "an online product reservation," each patient's information and ID "must be confirmed" with the Florida Department of Health:

---

[1] References to "DE __" are to docket entries; emphasis is added and citations, internal quotations, internal brackets, and internal ellipses are omitted unless otherwise indicated.

[2] As explained below, the Complaint incorporates the Privacy Policy by reference and it is attached to this motion as Exhibit A.

**Third Party Disclosure**

*Do we disclose the information we collect to Third-Parties?*

In order to make an online product reservation, patient's information and ID must be confirmed with the Florida Department of Health's Compassionate Use Registry.

Ex. A; Compl. ¶ 5, n. 6.

The Privacy Policy also explains the personal information that Trulieve collects and from whom: "we collect personal information from website visitors, app users, customers, potential investors, potential employees, and physicians we partner with." Ex. A; Compl. ¶ 5, n. 6. The Privacy Policy further explains that Trulieve uses "personal information to conduct our business and to provide you with high quality production and services." *Id.* This information includes collecting "your name, email address, mailing address, phone number or other details needed to create a profile." *Id.*

### B. Plaintiff's Claims and the Proposed Classes He Seeks to Represent

Plaintiff Mark Robinson is a Florida resident and medical marijuana patient. Compl. ¶ 76. Plaintiff alleges that he used Trulieve's website for several purchases of medicinal marijuana for personal use. Compl. ¶ 77. Plaintiff acknowledges the Privacy Policy on Trulieve's website, Compl. ¶ 5, n. 6; ¶ 117, and that the Privacy Policy is a contract between Plaintiff and Trulieve, Compl. ¶ 117, but claims that he did not know his "unique identifiers would be paired with the fact that [Plaintiff] seeks marijuana for medical purposes in any way that could identify Plaintiff to third

party advertisers." Compl. ¶ 78. Plaintiff also alleges that he did not know "that the data that Trulieve.com collects would then be sold to dozens of entities for advertising purposes." Compl. ¶ 78.

Plaintiff alleges that he and proposed class members "were harmed when Trulieve invaded their privacy rights by selling data about their marijuana consumption" to third parties. Compl. ¶ 63. Plaintiff further alleges that he and proposed class members "suffered pecuniary losses when Trulieve sold and resold their data to third parties because of the value of the data itself." Compl. ¶ 65.

Plaintiff further alleges that "[w]hen cybercriminals steal PII and PHI like the information Trulieve sold to its third party business partners, the criminals face huge fines and lengthy prison sentences." Compl. ¶ 66.[3] Plaintiff explained that "consumer personal information is so valuable to identity thieves that once PII and PHI has been disclosed, criminals often trade it on the 'cyber black market or the dark web for many years.'" Compl. ¶ 67. Yet, the Complaint contains no allegations whatsoever that Plaintiff or any putative class member's information has been accessed by cybercriminals, is being traded on the cyber black-market, or is available on the dark web.

[3] The Complaint defines personally identifiable information as "PII" and sensitive protected health information as "PHI." Compl. ¶ 3.

Plaintiff also explained that the value of personal data as a commodity is measurable *for firms* that "attain significant market valuations by employing business models predicated on the successful use of personal data." Compl. ¶ 67. Though Plaintiff does not allege that the value firms generate based on aggregated data would produce value for individuals providing personal data. Plaintiff further explains that companies have created services where they pay consumers for a license to track their data. Compl. ¶ 69. Plaintiff does not allege that those services require the consumers to grant exclusive rights to track their data, how providing data to Trulieve would prevent consumers from entering into those licenses, or how providing data to Trulieve would in any way change the price any consumer would receive for those licenses. Indeed, Plaintiff does not even allege that he or any other proposed class member has ever used those services for data licensing.

Nonetheless, Plaintiff tries to assert five different causes of action on behalf of himself and a proposed class of individuals "in states where medical marijuana (not recreational use) is legal,"[4] who used Trulieve's website or mobile application, and "whose communications and/or data were shared with third parties." Compl. ¶

[4] These states include Alabama Arkansas, Florida, Hawaii, Louisiana, Mississippi, New Hampshire, North Dakota, Oklahoma, Pennsylvania, South Dakota, Utah, West and Virginia. If this list is narrowed to only the states in which Trulieve operates, the final class is compromised only of people who live in Florida, Pennsylvania, and West Virginia.

92. Only three states fall within Plaintiff's proposed class definition—Florida, Pennsylvania, and West Virginia.[5] The five causes of action listed in the Complaint are breach of confidence, breach of implied contract, unjust enrichment, common law public disclosure of private facts, and violation of the Florida Security of Communications Act.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I. The Privacy Policy Must Be Considered on this Motion

Trulieve's Privacy Policy, which the Complaint incorporates by reference, must be considered on this Motion.

---

[5] Plaintiff also pleads a "Florida Sub-Class" of persons in Florida, in addition to or in the alternative of the "Medical Marijuana Class." Compl. ¶ 93.

On a motion to dismiss "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[T]he district court may consider an extrinsic document if it is (1) central to plaintiff's claim; and (2) its authenticity is not challenged." *SFM Holdings v. Banc of America Securities*, 600 F.3d 1334, 1337 (11th Cir. 2010).[6]

The Privacy Policy is central to Plaintiff's claims. It contains disclosures that Plaintiff attacks as insufficient and on which all of Plaintiff's claims are based.[7]

[6] *See also, e.g., Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (considering an insurance policy, even though the complaint did not discuss its specific provisions, when analyzing a motion to dismiss a federal securities claim); *Daewoo Motor America v. General Motors*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) (ruling master transaction agreement and distribution agreement were integral to antitrust allegations and therefore district court properly considered them on a motion to dismiss); *SFM Holdings*, 600 F.3d at 1337 (district court properly considered a contract on defendant's motion to dismiss claims for breach of fiduciary duty and constructive fraud); *Calderon v. Sixt Rent a Car*, 114 F.4th 1190, 1203-1204 (11th Cir. 2024) (ruling that, under summary judgment standard, contract incorporated terms and conditions regardless of whether plaintiff read them).

[7] The Complaint includes the website address of the Privacy Policy (Compl. ¶ 5, n. 6) and generally discusses the Privacy Policy throughout. The "Introduction," for example, leads with a quotation from the Trulieve Privacy Policy, Complaint at 1 & n.1, and also tries to contrast what "Trulieve states" "in its Privacy Policy" with the Complaint's allegations about data sharing, Complaint ¶ 5. As it must, the Complaint also addresses the Privacy Policy as an express contract in its claim for breach of implied contract. *See* Complaint ¶¶ 117-118. In part based on prior briefing, Trulieve does not anticipate a dispute regarding the authenticity of the Privacy Policy, but in the event a dispute arises, Trulieve will provide a declaration attesting to its authenticity in reply.

While Plaintiff selectively quotes from and cites to the Privacy Policy, the entire document should be considered because it reflects what was actually agreed upon and disclosed to Plaintiff and other proposed class members. Since the authenticity of the attached Privacy Policy cannot legitimately be disputed, the Court must consider it to decide this Motion to Dismiss.

## II. Plaintiff Does Not and Cannot Plead a Basis for Article III Standing

While this Court previously ruled that Plaintiff had standing to assert privacy-based claims here, Order at 4-6, Trulieve submits that Plaintiff lacks standing altogether.

"[P]laintiff, as the party invoking federal jurisdiction, bears the burden" of establishing the "irreducible constitutional minimum" of standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" to establish Article III standing requires "[t]he plaintiff []have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A. No Injury-in-Fact

Under Article III, "an injury in law is not an injury in fact." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Only those plaintiffs who have been "concretely harmed by a defendant's statutory violation may sue that private

defendant over that violation in federal court." *Id.* "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 497 (2009). Even where a plaintiff asserts common law claims like breach of implied contract, negligence, and unjust enrichment, the plaintiff must still establish an injury-in-fact. *Tsao v. Captiva MVP Restaurant Partners*, 386 F.3d 1332, 1334-36 (11th Cir. 2021).

*No Privacy Harm Cognizable at Common Law*: In finding Plaintiff had pleaded an injury-in-fact, this Court relied on "concrete intangible injuries" including "disclosure of private information," and reasoned that Plaintiff's absence of a "reasonable expectation of privacy" "goes to the merits, which is separate from standing." Order at 2. But the Eleventh Circuit has held that a plaintiff that alleges a harm based on the public disclosure of private facts cannot establish Article III standing absent an allegation that "[a] matter [has] been made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Hunstein v. Preferred Collection*, 48 F.4th 1236, 1246 (11th Cir. 2022) (en banc). As explained in more detail below, pp. 10-11, Plaintiff's alleged privacy harm suffers

from this and other deficiencies and so cannot serve as a legally cognizable injury-in-fact.[8]

*No Facts Establishing Past Tangible Harms or Sufficiently Substantial Risks of Future Tangible Harms*: Every non-privacy, tangible harm that Plaintiff has identified is merely a risk of a future harm. The Complaint identifies the potential future risk of harm from data theft, Compl. ¶ 66, but that is insufficient. "Factual allegations that establish a risk that is substantial, significant, or poses a realistic danger" will suffice to create standing, but not "the naked assertion that [plaintiff] and members of the class continue to be exposed to an elevated risk of identify theft." *Muransky v. Godiva Chocalatier*, 979 F.3d 917, 933 (11th Cir. 2020) (en banc); *see also Tsao v. Captiva MVP Restaurant*, 986 F.3d 1332, 1343-1344 (11th Cir. 2021).

---

[8] In *Perry v. CNN*, 854 F.3d 1336, 1138, 1340 (11th Cir. 2017), the Eleventh Circuit held that a plaintiff suing under the Video Privacy Protection Act who had not consented to the release of any personal data to third parties had alleged an injury-in-fact based on the comparator tort of intrusion upon seclusion. But Plaintiff here has now abandoned that common law tort presumably because he cannot plead its elements, and the Eleventh Circuit has repeatedly refrained from expanding *Perry* beyond its narrow holding. *See, e.g., Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 997 (11th Cir. 2020) (citing *Perry* but finding no standing); *Hunstein v. Preferred Collection*, 48 F.4th 1236 (11th Cir. 2022) (en banc) (reversing panel opinion relying on *Perry* and finding no standing without mentioning *Perry*); *Muransky v. Godiva Chocaltier*, 979 F.3d 917 (11th Cir. 2020) (en banc) (citing *Perry* but finding no standing). This Court should follow the Eleventh Circuit's lead and refuse to extend *Perry* beyond its narrow holding to find no standing here.

The Complaint also identifies the potential for a future reduction in the value of the Plaintiff's and proposed class members' personally identifying information, Compl. ¶ 67, but that too is insufficient. Judge Posner has explained the notion that retaining personally identifying information somehow reduces its value is "gibberish." *Fraga v. UKG,* 2022 WL 19486310, at *12 (S.D. Fla. May, 10, 2022) (quoting *Gubala v. Time Warner Cable*, 846 F.3d 909 (7th Cir. 2017)). To frame the issue here as the United States District Court for the Southern District of Florida did: Plaintiff "presumably still know[s]" his "date[] of birth" and "email addresses"; "[n]othing prevents [him] from exchanging [his] email addresses for Wi-Fi access and exclusive discounts at their local coffee shops"; and the allegations do not "yield a reasonable inference that [defendant] prevent[ed] Plaintiff[] from giving companies permission to sell [his] data to advertisers who will target [him] for special deals." *Fraga v. UKG,* 2022 WL 19486310, at * 12. So Plaintiff here has suffered no injury-in-fact for those reasons too.[9]

[9] For the same reasons Plaintiff has not alleged a pecuniary harm, it is unclear that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act (the "CAFA") which requires the amount in controversy to exceed the sum of $5,000,000. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007) (holding removing defendants failed to meet their burden of establishing requirements for federal jurisdiction under CAFA).

### B. No Causation

Under Article III, Plaintiff also has to meet the traceability requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[P]laintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). "While demonstration of an injury is necessary to prove standing, it alone is not sufficient," because a plaintiff must also show "a causal connection between the alleged injury and the allegedly improper conduct." *Florida Ass'n of Medical Equipment Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999). In the context of data breaches, the Eleventh Circuit has ruled that even if a plaintiff can establish an injury-in-fact, the plaintiff must still establish causation. *Green-Cooper v. Brinker International*, 73 F.4th 883, 890-891 (11th Cir. 2023).

As explained above, pp. 8-11, Plaintiff has pleaded no facts explaining how any disclosures or omissions in the Privacy Policy had any meaningful impact on him or injured him in any way. In other words, Plaintiff here has alleged no facts connecting any allegedly illegal action by Trulieve to any injury he has suffered and has therefore failed to allege traceability.

## III. Plaintiff Had No Reasonable Expectation of Privacy

All of Plaintiff's claims revolve around a single legal question—did he have a reasonable expectation of privacy in the information Trulieve allegedly collected and disclosed to third parties? The answer is a resounding, no. As this Court explained in its Order, there is no federal privacy right in the possession of marijuana. Order at 7. Nor is there a Florida privacy right in the possession of marijuana. *Id.* at 8. None of Plaintiff's arguments to the contrary have any merit.

### A. Florida Courts have Determined there is no Reasonable Expectation of Privacy in Website Browsing Data.

As Florida courts have held, "there can be no reasonable expectation of privacy from a third-party website owner when Plaintiff voluntarily browses through that third-party's website." *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *7 (Fla. Cir. Ct. 2021); *see also Goldstein v. Luxottica of Am., Inc.,* No. 21-80546-CIV, 2021 WL 4093295, at *1 (S.D. Fla. Aug. 23, 2021). This conclusion makes sense given the basic architecture of websites and the internet—all online movements often are logged, collected, and stored—and Florida's history of finding there is no reasonable expectation of privacy in business dealings. "An expectation of privacy in a business 'is not one which society is willing to protect.'" *Avrich v. State*, 936 So. 2d 739 (3d DCA 2006) (finding no reasonable expectation of privacy in a business phone line, even though the phone was located in the owner's home);

*see also Cohen Bros., LLC v. ME Corp., S.A.,* 872 So. 2d 321, 324 (Fla. 3d DCA 2004) (no reasonable expectation of privacy in business conference call).

Plaintiff voluntarily perused Trulieve.com, filling out forms and providing Trulieve with his personal information. As this Court explained in its Order, "the Privacy Policy leaves Trulieve more room than Robinson supposes. There is no term restricting Trulieve's data sharing." Order at 10. Plaintiff has alleged no facts in his complaint that would support a reasonable expectation of privacy in his Trulieve.com browsing information.

**B. HIPAA Does Not Create a Reasonable Expectation of Privacy.**

Plaintiff argues that he had a reasonable expectation of privacy in information collected by Trulieve.com, because the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") creates a reasonable expectation that healthcare providers will handle health information according to HIPAA requirements. For three independent reasons, HIPAA provides no basis for Plaintiff's claimed right to privacy.

*First,* Plaintiff does not and cannot plead facts establishing that HIPAA can apply to a medical marijuana dispensary like Trulieve. Congress passed HIPAA to improve Medicare, Medicaid, and the overall health care system by promoting the use of electronic health information through clear standards and rules for sharing certain health data. HIPAA Pub. L. No. 104-191 § 261. In recognition of the privacy

risks created by an increasingly digital system of personal health information, Congress directed Health and Human Services ("HHS") to promulgate privacy regulations for individually identifiable electronic health information. *Id.* § 264. While the resulting regulation—45 CFR Part 160 (the "Privacy Rule")—has created a set of standards to protect people's medical records and personal health information, this rule applies only to "Covered Entities" as defined in the rule.

Covered Entities include (1) health plans, (2) health care clearinghouses, and (3) health care providers "who transmit any health information in electronic form in connection with a transaction covered by" the Privacy Rule. *Id.* § 160.102. Transactions covered by the Privacy Rule are defined as "the transmission of information between two parties to carry out financial or administrative activities related to health care," and include:

> (1) Health care claims or equivalent encounter information.
> (2) Health care payment and remittance advice.
> (3) Coordination of benefits.
> (4) Health care claim status.
> (5) Enrollment and disenrollment in a health plan.
> (6) Eligibility for a health plan.
> (7) Health plan premium payments.
> (8) Referral certification and authorization.
> (9) First report of injury.
> (10) Health claims attachments.
> (11) Health care electronic funds transfers (EFT) and remittance advice.
> (12) Other transactions that the Secretary may prescribe by regulation.

*Id.* § 160.103. Plaintiff has made no allegations that Trulieve is a covered entity under HIPAA, nor could he. Plaintiff simply makes the conclusory allegation, with

no supporting facts, that HIPAA creates a reasonable expectation in Plaintiff's browsing information. Plaintiff does try to bolster this unsupported allegation by referring to a bulletin issued by HHS, advising *covered entities* that the use of tracking technologies might run afoul of the Privacy Rule. But Plaintiff again fails to allege how that bulletin creates a reasonable expectation of privacy in the browsing history on Trulieve.com.

*Second*, HIPAA does not protect the kind of personally identifiable information identified in the Complaint and the Health and Human Services bulletins concluding otherwise misinterprets the statute. "[A]n agency cannot decree[] a duty that the statute does not require and that the statute does not empower the [agency] to impose." *Insurance Marketing Coaltion v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025). The kind of metadata paired with IP addresses identified in the Complaint does not fall within the scope of HIPAA, in part because "[t]here are many generic reasons why [proposed class members] may have visited such pages," "they could have been acting for family members, friends, or countless third parties, and their IP addresses provide no reasonable basis to determine otherwise." *American Hospital Assoc. v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024).[10]

---

[10] While some courts have continued to adopt the reasoning in *Becerra*, others have refused to adopt or extend it to other data privacy cases. *Compare, e.g., Rand v. Eyemart Express, LLC,* No. 3:24-CV-000621-N, 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024) (holding that "browsing of a retail website is insufficient to show that any private health information was disclosed") *with Nienaber v. Overlake Hosp.*

Nor is the information generated by a health care provider here because it "is user-generated," even if it were "received by" a health care provider (which Trulieve is not). *Id.* at 803. Because the information targeted in the Complaint "facially exceeds HIPAA's unambiguous text," *id.* at 804, HIPAA can provide no basis for a reasonable expectation of privacy.

*Finally*, it is well-established that HIPAA provides no private right of action. *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (citing *Weinberg v. Advanced Data Processing, Inc.*, 147 F.Supp.3d 1359, 1365 (S.D. Fla. 2015) (quoting *Sneed v. Pan American Hosp.*, 370 Fed.Appx. 47, 50 (11th Cir. 2010)). "Plaintiff cannot manipulate the common law to state a private, statutory cause of action where none exists." *Brush*, 238 F. Supp. 3d at 1367. So too here.

### C. Florida Law Does Not Create a Reasonable Expectation of Privacy

Plaintiff makes the conclusory allegation that Florida law supports his argument that he had a reasonable expectation of privacy in his Trulieve.com browsing data. But that claim falls short.

*First,* Plaintiff offers no response to this Court's ruling that "[f]ederal law designates marijuana as contraband for any purpose," "and there is no federal

---

*Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025) (distinguishing case because "Facebook ID, which very specifically identifies an actual individual" was tied to and disclosed with PII).

privacy right in criminal activity." Order at 7. Plaintiff does not explain how, consistent with that federal law, he has a reasonable expectation of privacy that would justify suing in federal court even under a state law theory of recovery. He cannot.

*Second*, the Florida Constitution does not grant any privacy interests that would remotely support protecting information about his medical marijuana use. The Florida Supreme Court has "reject[ed] the notion that smoking marijuana at home is the type of conduct protected by the constitutional right to privacy," and "Florida law makes clear that there is no reasonable expectation of privacy in marijuana use." Order at 7-8 (collecting authorities). Plaintiff cites *State v. Johnson*, 814 So. 2d 390, 393 (Fla. 2002), but the Florida Supreme Court held there that in a State prosecution for DUI involuntary manslaughter, the State could use an investigatory subpoena to evade statutory protections for medical records including blood draws that required notice. The Florida Supreme Court said nothing about medical marijuana, the state surveillance regime erected many years later after it was legalized by citizens' initiative, or whether anyone has a reasonable expectation of privacy in either medical marijuana use or their browsing history about medical marijuana use that could form the basis for a reasonable expectation of privacy and any civil tort.

*Third*, the medical marijuana industry is highly regulated and surveilled in the state of Florida. *See* section 381.986, Florida Statutes; *see also* Fla. Admin. Code Ch. 64-4. Though not every member of the public can request all of that information through a Sunshine Law request, Fla. Stat. § 381.987(1), marijuana itself is tracked from "seed to sale" with "24-hour access," Fla. Stat. § 381.986(8)(d), every patient has to register with the state, Fla. Stat. § 381.986(5)(a), and every purchase is logged and shared with the state system then distributed to every other medical marijuana treatment center, Fla. Stat. § 381.986(5)(a). Each dispensary must then maintain "a video surveillance system that records continuously 24 hours a day" and has cameras "that allow[] for the clear identification of persons" in areas including "point-of-sale rooms." Fla. Stat. § 381.986(5)(f). That registry, that information, and those videos then "must be available to law enforcement agencies." Fla. Stat. § 381.986(5)(a); Fla. Admin. Code § 64-4.202. In an analogous context, in *United States v. Grayden*, 977 F.3d 1146 (11th Cir. 2020), the Eleventh Circuit has held that a pervasive system of state surveillance over drug prescriptions makes the information held out to the public at large and eliminates any reasonable expectation of privacy. So too here.[11]

[11] Plaintiff cites various Florida statutes that regulate privacy of records in specific industries but those too are inapposite. S*ee Florida Dept. of Corr. v. Abril,* 969 So. 2d 201, 205 (Fla. 2007) (discussing the various statutes that regulate the privacy responsibilities of clinical laboratories and patient medical records); section 395.3025(7)(b), Florida Statutes (prohibits licensed hospitals or ambulatory surgical

## IV. The Complaint Fails to State a Claim for Breach of Confidence—First Cause of Action

In his first cause of action, Plaintiff tries to assert a claim for breach of confidence, but it fails for multiple reasons. At the outset, the Eleventh Circuit has questioned whether such a claim is actionable and can be fairly said to have "traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Muransky*, 979 F. 3d at 931.

In *Muransky*, the Eleventh Circuit found that it "need not resolve" the issue of the tort's existence because a breach of confidence involves "the *unconsented,* unprivileged *disclosure to a third party of* nonpublic *information* that *the defendant has learned within a confidential relationship*." *Muransky*, 979 F. 3d at 932. The Complaint here founders on many of these requirements—by using the website after reviewing the Privacy Policy, Plaintiff not only consented to the disclosure of the information but inputted it himself. And the relationship between Robinson and Trulieve was not a "confidential" one, which "traditionally arise in the context of close professional relationships-those involving physicians, therapists, financial institutions, and the like." *Muransky*, 979 F.3d at 932.

---

centers from the use of patient information for the marketing of goods or services); section 381.987(1), Florida Statutes (exempts from public records requests—made to the Florida government—marijuana users' personal information). None regulate the medical marijuana industry's collection and use of website browsing data.

The Complaint itself cites the example of "the physician-patient relationship," Compl. ¶ 105, but Plaintiff strains that analogy so far that it snaps. As explained by the Third District Court of Appeal:

> The code of ethics for the medical profession is comprised of three separate "prongs": (1) the Hippocratic Oath; (2) The American Medical Association's (AMA) Principles of Medical Ethics; and (3) The Current Opinions of the Judicial Council of the AMA (1984 ed.). These three "prongs" underscore the highly confidential nature of the physician-patient relationship and, perhaps more importantly, affirmatively advertise to the public that a patient can properly expect his physician to protect those medical confidences which are disclosed during the physician-patient relationship.

*Castillo-Plaza v. Green*, 655 So. 2d 197, 206 (Fla. 3d DCA 1995). Plaintiff does not have the same confidential relationship with Trulieve, which according to the Complaint receives his medical marijuana ID number but is not privy to his symptoms, diagnosis, or other highly sensitive medical information.

And although Plaintiff claims that certain communications, "including personal health information" were shared (Compl. ¶ 107), "the mere receipt of confidential information is insufficient by itself to transform an arm's length transaction into a fiduciary" or confidential relationship. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022). As such, Count I for breach of confidence must be dismissed.

## V. The Complaint Fails to State a Claim for Breach of Implied Contract—Second Cause of Action

Plaintiff alleges that "[b]y accessing Trulieve's website and browsing and purchasing products, Plaintiff and Class members each respectively entered into an implied contract with Trulieve in which Trulieve agreed to safeguard information the personal health information provided by Plaintiff and the Class Members to Trulieve during their medical marijuana purchasing activities." Compl. ¶ 113. "A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997).

Plaintiff alleges there was a "reasonable expectation" Trulieve would keep his browsing history on Trulieve.com, and that he "and Class Members would not have provided nor entrusted Trulieve" with this information, "or would have paid less for its goods and services," if they had known Trulieve would not keep that information confidential. Compl. ¶¶ 114-118.

But as addressed above, Plaintiff has failed to allege facts sufficient to conclude that there was a reasonable expectation of privacy in his browsing data. Further, Plaintiff has not alleged that Trulieve exhibited an intention to keep his browsing data private, through either words or actions. This is most clear when viewing the express terms of the Privacy Policy, which as mentioned above the

Court already found includes "no term restricting Trulieve's data sharing." Order at 10. Plaintiff's subjective, one-sided, and unreasonable expectation that his browsing data would be kept private is not sufficient to allege "a tacit promise" rising to the level of implied contract.

## VI. The Complaint Fails to State a Claim for Unjust Enrichment—Third Cause of Action

Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has not alleged that Trulieve received a benefit that would be unjust to retain without compensation. "A contract implied in law, or 'quasi contract,' operates when there is no contract to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016). As this Court found in the Order, Plaintiff did not plausibly allege facts to support the legal conclusion "that sharing his identity with Trulieve conferred a benefit that Trulieve inequitably retained," and his amendment fails to address this shortcoming. Order at 12.

Plaintiff alleges that Trulieve received the benefit of the data collected from the Plaintiff, which has a monetary value, which it then sold for a profit. Compl. ¶ 124. He further alleges that Defendant received benefits in the form of "highly valuable data," including health information and personally identifiable information. *Id.* ¶ 125. Yet, how can it be that Trulieve received the benefit of data,

data generated by Plaintiff's use of Trulieve's website, under circumstances that made it unjust to retain without giving compensation? Websites generate data. And Plaintiff voluntarily visited Trulieve's website, entering his personally identifying information into webforms. Trulieve did not surreptitiously pluck this information out of Plaintiff's head. As addressed above, there is no reasonable expectation of privacy in this kind of data, so Plaintiff has failed to allege that Trulieve's generation, collection, and retention of the data created by use of its website is unjust.

Plaintiff also alleges that if he had known of Trulieve's data retention practices, he would not have provided his data to Trulieve. But in *Baker v. Akumin Corp.*, No. 0:23-CV-62396, 2024 WL 1931480, at *7 (S.D. Fla. Apr. 16, 2024), the court flatly rejected the same type of conclusory allegation as unsupported by well-pleaded facts. In that case, Plaintiff argued that "the services he received 'were of a lesser value than what he reasonably expected to receive under the bargains struck with Defendant.'" *Id.* The court rejected this contention because he failed "to allege actual facts demonstrating that he paid Defendant more than the value of medical services or that Defendant charges an amount for data security above the value of medical services." *Id.* The same reasoning applies with even greater force here. Plaintiff has not alleged sufficient facts to state a plausible claim that he paid above market value for their marijuana because of the alleged disclosure of personal

information. So, the Complaint's attempt to state a claim for unjust enrichment fails as a matter of law.

## VII. The Complaint Fails to State a Claim for Public Disclosure of Private Facts—Fourth Cause of Action

In Florida, the elements of the common law tort of public disclosure of private facts can be summarized as (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989).

The allegations in the Complaint fail to meet this standard for two principal reasons. *First,* "[b]efore the right of privacy attaches 'a reasonable expectation of privacy must exist.'" *Stall v. State*, 570 So. 2d 257, 260 (Fla. 1990). As explained above, Plaintiff did not have a reasonable expectation of privacy in his Trulieve.com browsing information.

*Second,* such a claim "requires that a matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (citing Restatement (Second) of Torts section 652D cmt. a). Likewise, in Florida, "the tort of invasion of privacy must be accompanied by publication to the public in general or to a large number of persons." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989).

Though the latest version of the Complaint tries to juice the number of vendors to which Trulieve disclosed the information, "communications that are private rather than public" do not support a claim, "even the most inclusive common-law definitions of publicity were not met when the plaintiff made no allegation that the defendant could have expected public disclosure to arise from his communications," "a disclosure to many people still may be private, or at least not publicity," and "rather than playing a numbers game, [courts] ask whether the disclosed information reaches, or is sure to reach, the public." *Hunstein*, 48 F.4th at 1246-1248 & n.2. The Complaint here falls well short of those standards by failing to allege how information about any individual website visitor is transmitted beyond vendors and is sure to reach the public at large. [12]

[12] The cases Plaintiff previously cited on public disclosure of private facts are inapposite. *See, e.g., Conradis v. Buonocore*, 2020 WL 4243720, at *1 (M.D. Fla. 2021) (granting motion for default judgment for plaintiff where defendant blackmailed plaintiff with images where she appeared to be nude and then made Facebook posts encouraging users to use the images to extort plaintiff, posted them on plaintiff's business Facebook page, and sent them to plaintiff's professional contacts); *Selinger v. Kimera Labs*, 2022 WL 3444, at *8 (S.D. Fla. Jan. 3, 2022) (denying motion to dismiss where plaintiff alleged defendant had "engaged in a campaign to disseminate confidential and highly sensitive information of a sexual nature"" about plaintiff and "it is reasonable to infer from [the] amended complaint that a campaign designed to harass, humiliate, and intimidate [plaintiff]—as well as ruin her professional reputation—is a campaign that targets a large number of people"); *Smith v. Volusia County*, 2011 WL 1598741, at * 1-2 (M.D. Fla. April 21, 2011) (denying motion to dismiss where plaintiff alleged that when she was a minor lifeguard and then defendant told "many other individuals on the Beach Patrol that Plaintiff had sexual relations with [plaintiff]" and "several other male lifeguards

## VIII. The Complaint Fails to State a Claim for Violation of Florida's Security of Communications Act—Fifth Cause of Action

Florida's Security of Communications Act ("SCA") makes it unlawful for anyone to "[i]ntentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept any wire, oral, or electronic communication. Fla. Stat. § 934.03(1)(a). For the following reasons, Plaintiff fails to state a claim pursuant to the SCA.

### A. Plaintiff Fails to State a Claim because he had no Reasonable Expectation of Privacy.

"Before the right of privacy attaches 'a reasonable expectation of privacy must exist.'" *Stall v. State*, 570 So. 2d 257, 260 (Fla. 1990). Accordingly, no liability under SCA "exists unless there is a reasonable expectation of privacy in the underlying communication." *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (plaintiff had not pled an expectation of privacy in a website tracking case). For the reasons explained above, pp. 13-20, Plaintiff fails to allege a reasonable expectation of privacy in his Trulieve.com browsing data.

---

began to pursue Plaintiff by, among other things, repeatedly asking her out and sending her sexually explicit text messages.").

### B. Plaintiff Fails to State a Claim because he does not Allege that Trulieve Captured the Content of a Communication Protected by SCA.

Because Plaintiff does not allege Trulieve acquired the "contents" of a communication by collecting Trulieve.com browsing data, he fails to allege facts that satisfy the statutory definition of intercept. The SCA defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). "Contents when used with respect to any wire, oral, or electronic communication, includes any information concerning the *substance, purport, or meaning* of that communication." Fla. Stat. § 934.02(7) (emphasis added).

Florida state and federal courts have consistently found that website tracking technology does not capture the "content" of a communication and therefore does not intercept electronic communications pursuant to the SCA. In *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *1 (Fla. Cir. Ct.), Plaintiff alleged that while browsing Spirit's website, Spirit used tracking technologies to intercept "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff." The court ruled that the SCA—as well as its federal analogue, the Federal Wiretap Act—was not passed with the intent to "extend to the use of commonplace analytics software to improve a website browsers' experience." *Id.* at *3. The court went on to explain that the contents of a

communication "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Id.* As such, the information allegedly collected by Spirit was not sufficient to allege that Spirit acquired the contents of any communications. *Id.* at 4. Other courts applying the reasoning in *Jacome* have come to the same conclusion.[13]

Plaintiff similarly fails to allege that Trulieve captured the intended message conveyed by a communication. Plaintiff alleges Trulieve transmitted "information such as full name, email address, IP address, information about marijuana purchases and activity, physical location, customer_id, persistent device IDs, keystrokes and other regulated-use details, contact and device coordinates, scroll depth, and behavior and transactional context details like mouse movements and keystrokes."

---

[13] *See e.g. Goldstein v. Costco Wholesale Corp.,* 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021); *Cardoso v. Whirlpool Corp*., No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021).

*But cf. W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, at *3 (M.D. Fla. Mar. 6, 2025) (finding that the technology employed by the defendant, a healthcare organization, did intercept communications where it tracked "her status as a medical patient, her health conditions, her desired treatment, and her preferred physician or specialist, as well as any information included in phrases and search queries she entered into [d]efendant's website," associated with her personally identifying information, and resulting in advertisements on other websites related to the same illnesses for which she sought treatment). Unlike the plaintiff in *W.W.*, Plaintiff has not alleged he saw a single targeted ad from Trulieve, let alone one that disclosed what health conditions from which he may suffer.

Compl. ¶ 156. Despite Plaintiff's conclusory allegations that this constitutes the "substance, import, and meaning of communications," *id.*, this information is "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message." *Jacome*, 2021 WL 3087860, at *4. [14]

**CONCLUSION**

The Complaint must be dismissed because Plaintiff lacks standing and otherwise fails to state a claim for each count he attempts to assert.

[14] Plaintiff also fails to state a claim pursuant to SCA for two more technical reasons: (1) "software, email servers, and drives to not constitute devices under the wiretapping statutes." *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (Fla. Cir. Ct. 2021) (collecting cases). (2) Although Plaintiff alleges that the "electronic communications are intercepted contemporaneously with their transmission." Comp. ¶ 159, this, "without pleading any ultimate facts in support [is] insufficient to demonstrate that any interception happened contemporaneously with transmission as opposed to being retrieved from storage." *Id.* at *6.

Date: July 30, 2025

Respectfully submitted,

By: /s/ *Grace L. Mead*
GRACE L. MEAD
Florida Bar No. 49896
gmead@stearnsweaver.com
ANDREA N. NATHAN
Florida Bar No. 16816
anathan@stearnsweaver.com
HANNAH E. MURPHY
Florida Bar No. 1032759
hmurphy@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: 305-789-3200
(305) 789-3200
Facsimile: 305-789-3395
(305) 789-3395

*Attorneys for Defendant, Trulieve, Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), I HEREBY CERTIFY that the foregoing Response, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 7,278 words as measured by Microsoft Office for Word.

s/ Grace L. Mead
GRACE L. MEAD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Grace L. Mead
GRACE L. MEAD

## SERVICE LIST

**KATHERINE M AIZPURU**
TYCKO & ZAVAREEI LLP -
WASHINGTON DC
2000 PENNSYLVANIA AVENUE
NW
SUITE 1010
WASHINGTON, DC 20006
202-973-0900
Email: kaizpuru@tzlegal.com
*PRO HAC VICE*

**ARTURO JOSE PENA MIRANDA**
STERLINGTON PLLC - NEW YORK
NY
ONE WORLD TRADE CENTER
285 FULTON STREET
85TH FLOOR
NEW YORK, NY 10007
407-839-4200
Email:
arturo.pena@sterlingtonlaw.com

*Counsel for Plaintiff Mark Robinson*
*and the Proposed Classes*