**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| MARK ROBINSON, on behalf of himself and all others similarly situated, | : | |
| *Plaintiff*, | : | |
| v. | : | Case No. 4:24-cv-00391-AW-MJF |
| TRULIEVE INC., | : | |
| *Defendant.* | : | |

**OPPOSITION TO MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**

Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
228 Park Ave. S #97956
New York, New York 10007
Tel.: 407-259-0234
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*edward.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Ste. 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

September 15, 2025

*****Pro Hac Vice* forthcoming

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 3
III. LEGAL STANDARDS ........ 5
A. 12(b)(1) ........ 5
B. 12(b)(6) ........ 5
IV. ARGUMENT ........ 6
A. The Court may consider the Privacy Policy, but it does not compel dismissal. ........ 6
B. As the Court already recognized, Plaintiff pleads Article III standing. ........ 8
1. Plaintiff pleads injury-in-fact. ........ 9
2. Plaintiff pleads causation ........ 13
C. Plaintiff has a reasonable expectation of privacy. ........ 14
1. Tort. ........ 15
2. Contract. ........ 17
3. Trulieve's authorities don't change the outcome. ........ 20
D. Plaintiff states a claim for breach of confidence. ........ 24
E. Plaintiff states a claim for breach of implied contract. ........ 27
F. Plaintiff states a claim for unjust enrichment in the alternative to breach of implied contract. ........ 27
G. Plaintiff states a claim for public disclosure of private facts. ........ 29
H. Plaintiff states a claim for violations of the Florida Security of Communications Act. ........ 31
V. CONCLUSION ........ 34

# TABLE OF AUTHORITIES

**Cases**

*Accord Williams v. City of Minneola*,
575 So.2d 683 (Fla. Dist. Ct. App. 1991)....................................................30

*Ameritrust Co. v. White*,
73 F.3d 1553 (11th Cir. 1996)....................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................5

*Avrich v. State*,
936 So. 2d 739 (3d DCA 2006)...................................................................21

*Baker v. Akumin Corp.*,
No. 0:23-CV-62396, 2024 WL 1931480 (S.D. Fla. Apr. 16, 2024) ....................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................5

*Bennett v. Spear*,
520 U.S. 154 (1997) ....................................................................................10

*Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*,
2013 WL 5437117 (M.D. Fla. Sept. 27, 2013) ..............................................32

*Bromer v. Fla. Power & Light Co.*,
45 So. 2d 658 (Fla. 1950)............................................................................17

*Cape Publications, Inc. v. Hitchner*,
549 So.2d 1374 (Fla. 1989) ............................................................ 14, 16, 17

*City of N. Miami v. Kurtz*,
653 So. 2d 1025 (Fla. 1995) ............................................................... 22, 23

*Cohen Bros., LLC v. ME Corp., S.A.*,
872 So. 2d 321 (Fla. 3d DCA 2004)...............................................................21

*Conradis v. Buonocore*,
2021 WL 4243720 (M.D. Fla. Sept. 17, 2021) ...............................................30

*Cyr v. Orlando Health, Inc.*,
No. 8:23-cv-588-WFJ-CPT (M.D. Fla. July 5, 2023) ........................................18

*D.S. v. Tallahassee Mem'l HealthCare*,
No. 4:23cv540-MW/MAF, 2024 WL 2318621 (N.D. Fla. May 22, 2024) . 18, 29, 33, 34

*Farsian v. Alphalete Athletics, LLC*,
No. 24-61027-CIV, 2025 WL 1591452 (S.D. Fla. Feb. 25, 2025) ........................7

*Fla. Dep't of Corr. v. Abril*,
969 So. 2d 201 (Fla. 2007) ...........................................................................2, 19

*Fraga v. UKG,*
2022 WL 19486310 (S.D. Fla 2022) ...............................................................12

*Garcia v. Copenhaver, Bell & Assocs.*,
104 F.3d 1256 (11th Cir. 1997) .......................................................................5

*Gore v. State*,
74 So. 3d 1119 (Fla. 4th DCA 2011) ..............................................................26

*Herman v. Seaworld Parks & Ent., Inc.*,
No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555 (M.D. Fla. Aug. 26, 2016).......7

*Hunstein v. Preferred Collection*,
48 F.4th 1236 (11th Cir. 2022)...................................................... 11, 31

*In re Brinker Data Incident Litig.*,
No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020).........17

*Jacome v. Spirit Airlines Inc.,*
2021 WL 3087860 (Fla. Cir. Ct. 2021) ............................................... 20, 21, 33

*Jaeger v. State*,
403 So. 3d 384 (Fla. 2d DCA 2025)...............................................................22

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) .........................................................................5

*Mullis v. State*,
79 So. 3d 747 (Fla. 2d DCA 2011)..................................................................25

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .......... 12, 24

*Nautica Int'l, Inc. v. Intermarine USA, L.P.*,
5 F. Supp. 2d 1333 (S.D. Fla. 1998) .......... 8

*Patterson v. Trib. Co.*,
146 So.2d 623 (Fla. 2d DCA 1962) .......... passim

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 10, 12

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .......... 18

*Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*,
368 So. 3d 12 (Fla. 4th DCA 2023) .......... 27

*SBP Homes, LLC v. 84 Lumber Co.*,
384 So. 3d 241 (Fla. 4th DCA 2024) .......... 15

*Selinger v. Kimera Labs, Inc.*,
2022 WL 34444 (S.D. Fla. Jan. 3, 2022) .......... 30

*Smith v. Volusia Cnty., Fla.*,
2011 WL 1598741 (M.D. Fla. Apr. 28, 2011) .......... 30

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5

*State v. Johnson*,
814 So. 2d 390 (Fla. 2002) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10

*Trump v. Hawai'i*,
585 U.S. 667 (2018) .......... 13

*United States v. Litzky*,
2019 WL 1586740 (M.D. Fla. Apr. 12, 2019) .......... 25

*United States v. Robinson*,
No. 12-20319-CIV, 2012 WL 3984786 (S.D. Fla. Sept. 11, 2012) ..................... 16

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ..................... 6

*W.W. v. Orlando Health, Inc.*,
No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) passim

*Wilding v. DNC Servs. Corp.*,
941 F.3d 1116 (11th Cir. 2019) ..................... 13

**Statutes**

Fla. Stat. § 381.986(5)(a) ..................... 19

Fla. Stat. § 381.987(1) ..................... 2, 16, 19

Fla. Stat. § 395.3025(4) ..................... 19

Fla. Stat. § 395.3025(7)(b) ..................... 19

Fla. Stat. § 398.18(1) ..................... 15, 17

Fla. Stat. § 934.02(1) ..................... 32

Fla. Stat. § 934.02(3) ..................... 32

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................... 5

**Treatises**

*Restatement (Second) of Torts* § 652D (1977) ..................... 14

# I. INTRODUCTION

Plaintiff Mark Robinson alleges that his medical marijuana provider, Trulieve, Inc., employed tracking technology on its website to sell Robinson's personal and medical information to third parties. The Order Granting Motion to Dismiss (Dkt. No. 42) found that Plaintiff had standing to bring his claims in federal court, but agreed with Trulieve that Plaintiff had no reasonable expectation of privacy in his marijuana use because marijuana is federally criminalized. *Id.* at 7–8. Plaintiff concedes, as he must, that federal law makes marijuana illegal; he also concedes that the government—federal and state—has regulated marijuana's medical uses. But the Court's correct ruling that the Fourth Amendment does not attach to Robinson's marijuana use answers a question different than those posed by the tort and contract claims at issue here—whether Trulieve's disclosure was "highly offensive" and "of no legitimate public concern." *Infra* at Part IV.C. Controlling Florida law answers those questions in the affirmative. *See Patterson v. Trib. Co.*, 146 So.2d 623, 624 (Fla. 2d DCA 1962) (recognizing actionable expectation of privacy for recovering addict over fact of her use and addiction to illegal narcotics).

Florida—a sovereign with authority to broaden the contours of the right to privacy within its borders—has made legislative findings that medical marijuana use is "a personal and private matter between [doctor and patient]," that public disclosure of a patient's cannabis use or a certifying physician's recommendation

"could be used to embarrass, humiliate, harass, or discriminate," and that such potential stigma is so serious as to warrant removing medical marijuana records out of its otherwise sweeping Sunshine Law. *See* Fla. Stat. § 381.987(1); Fla. H.R. Staff Analysis, HB 7005, at 6 (2022) available at https://www.flsenate.gov/Session/Bill/2022/7005/Analyses/h7005c.SAC.PDF. Florida has never diverted from the traditional expectation of confidentiality of the physician-patient relationship, as seen in its "long tradition of recognizing the privacy interests of patients in confidential medical records." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 205–06 (Fla. 2007). Florida law does not contemplate—much less permit—a dispensary to pad its profits by disseminating customers' medical marijuana records for a profit.

The SAC adds significant allegations establishing a right to privacy in medical cannabis use in Florida. SAC ¶¶ 1–2, 52–62. And it adds substantial allegations about the precise nature of the privacy violation scheme at issue here: one under which Trulieve's trackers collect patients' personal and medical marijuana details only to then blast them to third-party advertisers, and then to a massive information-selling ecosystem which ensures the data's percolation into the public domain. *Id.* ¶¶ 26–45.

Because the SAC's allegations suffice to state a claim under the state law causes of action there pleaded, the Court should deny Trulieve's motion.

## II. BACKGROUND

Defendant Trulieve is the largest medical marijuana dispensary in Florida, with hundreds of locations and multiple processing facilities. SAC ¶¶ 3, 14. Trulieve markets and sells marijuana products and services on its website. *Id.* ¶ 3. In the course of doing business and providing medical marijuana to patients in Florida and across the country, Trulieve collects personally identifiable information ("PII") and protected health information ("PHI") from visitors, including full name, email address, IP address (which can reveal users' location), information about medical marijuana purchases and activity on the Trulieve website, and physical location using geolocation data. *Id.* ¶ 5.

As a Florida-headquartered dispensary, Trulieve knows or should know that privacy is of utmost importance to consumers who purchase medical marijuana. *Id.* ¶ 62. In particular, Florida law and public policy strongly support the existence of a reasonable expectation of privacy in personal medical cannabis use. *Id.* ¶¶ 53–54. For example, Florida's constitution, not to mention Florida statutes, grant a right to privacy in patient medical records. *Id.* ¶¶ 54–56. And the Florida legislature has made it unmistakably clear that medical marijuana users have a strong expectation of privacy by exempting medical marijuana users' personal information from Florida's otherwise-broad Sunshine laws—even though the Florida government maintains a confidential registry of cannabis information. *Id.* ¶¶ 57–60.

Despite this knowledge, Trulieve installed (or allowed to be installed) trackers on sensitive areas of its website that track users' interaction with the website and/or collect data that they input into the website. *Id.* ¶¶ 24–28. These scripts transmit information including identity fields, keystrokes, location information, behavioral and transactional context information, and even full screen records of consumers' use of the website. *Id.* ¶¶ 29–30. Taken together, these data points reveal not only the patient's identity but also that the patient is a medical marijuana user, their dispensary of choice, products they looked at or purchased, and the timing of each interaction—all highly sensitive PII/PHI. *Id.* ¶ 31. And rather than protecting this precious information, Trulieve sells it to third-party advertisers, some of whom use a business model that gathers patient data and re-broadcasts it through the real-time bidding marketplace. *Id.* ¶¶ 33–36. Once exposed to the RTB marketplace, mass dissemination is not just possible, but inevitable. *Id.* ¶¶ 37–45.

Plaintiff is a medical marijuana user who resides in Florida. *Id.* ¶¶ 11, 76–77. At the time he used the Trulieve website, he did not know (because Trulieve did not warn him) that his unique identifiers would be paired with the facts of his use of the Trulieve website, and then sold and displayed to numerous third-party advertisers for Trulieve's profit. *Id.* ¶¶ 78–80. Plaintiff reasonably believed he was engaging in a private transaction and did not get the benefit of his bargain when he spent money

on Trulieve's products. *Id.* ¶ 85. Had he known the truth, Plaintiff would not have purchased from Trulieve or would have spent less money on its products. *Id.*

## III. LEGAL STANDARDS

### A. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for lack of subject matter jurisdiction, including standing. *See Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). Standing under Article III consists of three elements: (1) injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) which is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A facial attack on Article III standing requires the court merely to look and see whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; the Court may take the allegations in the complaint as true for purposes of the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

### B. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether to dismiss under Rule 12(b)(6), a court must accept

the factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

## IV. ARGUMENT

### A. The Court may consider the Privacy Policy, but it does not compel dismissal.

Trulieve argues that the Court must consider its Privacy Policy and that it authorizes the disclosures described in the SAC. Plaintiff agrees the Court may consider the Privacy Policy—the version current at the time of the events[1]—but disagrees that its "express terms" govern the parties' relationship. Dkt. 50 at 22.

First, Plaintiff has not pleaded, and Trulieve has not shown, that Plaintiff ever saw or agreed to the Privacy Policy as an express contract governing the provision of his private information to third parties. Thus, the only contract governing Trulieve's disclosure of Plaintiff's PII/PHI to third parties is an implied one. *E.g.*, SAC ¶¶ 113–115 (discussing the "implied promise on the part of Trulieve to treat such information in accordance with typical expectations surrounding medical information"). The SAC refers to the Privacy Policy as "further evidence of the *implied* contract between Plaintiff . . . and Trulieve" to keep Plaintiff's personal and

[1] Since filing this action, Trulieve has updated its privacy policy. The version in use when Plaintiff Mark Robinson used the website is available at https://web.archive.org/web/20241217203639/https://www.trulieve.com/privacy (last visited June 22, 2025); *see also* Dkt. No. 50-1.

health information confidential. SAC ¶ 117 (emphasis added). The existence of a Privacy Policy is evidence of the reasonableness of the expectation that Trulieve would keep patients' PII/PHI private. *Id.* ¶ 118.

To the extent Trulieve argues that the Privacy Policy is an express contract, and that Plaintiff agreed to it, a threshold factual analysis is required: first, how assent was purportedly obtained—clickwrap, browsewrap, or a hybrid; and second, if browsewrap or hybrid, whether Plaintiff "had actual knowledge of the terms" or whether at the moment of transacting Trulieve furnished a hyperlink sufficiently conspicuous to place "a reasonably prudent person on inquiry notice." *See Farsian v. Alphalete Athletics, LLC*, No. 24-61027-CIV, 2025 WL 1591452, at *3–*4 (S.D. Fla. Feb. 25, 2025) (cleaned up); *see also Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *6 (M.D. Fla. Aug. 26, 2016) (rejecting under Florida law that plaintiff had constructive notice of terms and conditions found in a "hyperlink . . . in small-print type at the very bottom of the website" which users "must, unprompted, undertake to affirmatively scroll to the bottom of the page to see"). Plaintiff nowhere alleges he had actual knowledge of the Policy when he transacted with Trulieve, and Trulieve has not—and at this stage cannot—proffer evidence of constructive notice.

But even if Trulieve could prove at summary judgment that Plaintiff ever agreed to the Privacy Policy, that would still not destroy Plaintiff's claims. Contrary

to Trulieve's suggestion, the Privacy Policy does not expressly authorize Trulieve to share patient PHI/PII with third parties. Instead, it discloses only that Trulieve provides personal information to the Florida Department of Health's Compassionate Use Registry, impliedly representing that there are no other recipients. *See Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1340 (S.D. Fla. 1998) ("[A] contract may have legal effect beyond its actual words, resultant upon its wording and purpose and may embody obligations which legally are to be implied from its words and the relationship of the parties."). Trulieve, which unilaterally drafted the Privacy Policy, could have given itself express permission to disclose medical information to advertisers or otherwise included provisions governing disclosure to private third parties. It didn't. And courts may not "read into a contract things which simply are not there." *Ameritrust Co. v. White*, 73 F.3d 1553, 1562 (11th Cir. 1996) (cleaned up).[2] Thus, at most, Trulieve's Privacy Policy is evidence of the parties' implied contract governing disclosure of medical information to third parties—not a binding contract itself.

### B. As the Court already recognized, Plaintiff pleads Article III

[2] Plaintiff fully addresses Trulieve's arguments concerning its implied breach of contract claim below but recognizes the Court's prior ruling that the Privacy Policy "never promises Trulieve will not share information with others." Dkt. No. 41 at 10. With great deference to the Court, and recognizing that the Court may still disagree, Plaintiff urges the Court to read Trulieve's Privacy Policy as written; and includes these arguments in order to preserve them.

**standing.**

The Court previously ruled Plaintiff had standing to assert his claims, and nothing about Plaintiff Robinson's amended complaint disturbs that ruling. Dkt. No. 42 at 4–6 ("In short, Robinson has alleged enough to show a concrete past injury as to his privacy claims. He has also alleged a concrete injury as to his common-law claims."). As he did before, Plaintiff pleads numerous injuries that courts, including in this Circuit, have recognized as cognizable under Article III; causation, because his and the proposed Class Members' injuries are directly traceable to Trulieve's conduct; and redressability in that Plaintiff has alleged that monetary redress will compensate him and the proposed Class Members for their injuries.

**1. Plaintiff pleads injury-in-fact.**

The Court may again dispose of Trulieve's failed arguments that Plaintiff has not pleaded an injury in fact. Trulieve's largely recycled arguments are as wrong as they were the first time around. The Court has already rejected them, and the SAC offers no basis to revisit that conclusion. *See* Dkt. No. 42 at 2 (rejecting Trulieve's arguments and finding that "Robinson's common-law privacy claims allege concrete intangible injuries.").

Courts recognize three types of harm under Article III: (i) tangible harms, like physical and monetary harm; (2) intangible harms, like injuries with a close relationship to harms traditionally recognizes as providing a basis for lawsuits in

American courts; and (3) material risk of future harm. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing. *Bennett v. Spear*, 520 U.S. 154, 168 (1997).

The SAC again pleads the injuries the Court already found sufficient: (1) invasion of privacy rights and loss of privacy and confidentiality, SAC ¶¶ 6, 25, 46–62, 104–106; (2) pecuniary loss from the sale of private data to third parties and the resulting loss of value of private information, *id.* ¶¶ 63–75, 124; (3) the loss of the benefit of the bargain with Trulieve, *id.* ¶¶ 85, 109, 124, 127; and (4) the diminishment of property rights in PII and PHI, *id.* ¶ 109, 124.

As the Court has already found, invasion of privacy is a concrete intangible injury, and Plaintiff's claims "are traditionally remedied by monetary damages," which are "among the most obvious concrete injuries." Dkt. No. 42 at 4–5 (citations omitted). And in the data privacy context, these injuries give rise to Article III standing. *See, e.g.*, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017) (allegation that defendant violated plaintiff's privacy by sharing video rental history with third parties sufficient to confer standing).

And the Complaint describes in considerable detail the value and importance that marijuana consumers place on maintaining their privacy. SAC ¶¶ 6, 25, 46–62, 104–106. In light of these facts, consumers who use Trulieve to browse and purchase

marijuana products have a reasonable expectation that Trulieve will handle their information with care and not allow unnamed third parties to look over their shoulders to inspect their purchasing data. The facts in the complaint support the concrete injuries and harm that Plaintiff has alleged, and Plaintiff has satisfied the requirements of Article III.

Trulieve's renewed arguments concerning *Hunstein v. Preferred Collection*, 48 F.4th 1236, 1246 (11th Cir. 2022) fail again as they did the first time. *See* Dkt. No. 42 at 3 (distinguishing *Hunstein*). Plus, taking Plaintiff's pleadings as true, Plaintiff plead exactly the allegations that *Hunstein* requires: that Trulieve made his private matters public. Specifically, "[t]he publication of Plaintiff's and Class members' private facts to advertisers and other entities made the information accessible in a manner that created a substantial likelihood of further dissemination, satisfying Florida's requirement for liability, even if the information may have initially been shared with a limited audience." SAC ¶ 143. Whether Plaintiff will ultimately be able to show that Trulieve's unauthorized sharing of Plaintiff's private health information constitutes "publication" is a merits question, not appropriate for a motion to dismiss. And as this Court already ruled, *Hunstein* does not support Trulieve's conclusion because it involved statutory, not common law claims. Dkt. No. 42 at 3.

Trulieve's arguments concerning *Perry v. CNN* also fail. Plaintiff does not need to allege intrusion upon seclusion for the reasoning in *Perry* to apply. *Perry* simply states that the Video Privacy Protection Act bore a close relationship to the injury of intrusion upon seclusion that has traditionally been regarded as providing a basis for a lawsuit in English or American courts; it does not create a new rule that a Plaintiff may not plead common-law claims for public disclosure of private facts. *See Perry*, at 1340–41. As the court noted "[t]he VPPA . . . subjects a video service provider to liability only when that provider actually discloses the consumer's personal information. Supreme Court precedent has recognized in the privacy context that an individual has an interest in preventing disclosure of personal information." *Id*. The same is true here. Plaintiff Robinson is seeking to remedy the disclosure of his personal information, which is a cognizable injury; he does not need to plead an intrusion upon seclusion claim to vindicate his injuries.

Finally, Trulieve once again attempts to use *Fraga v. UKG,* 2022 WL 19486310 (S.D. Fla 2022) to argue the reduction of value of Plaintiff's and the proposed class members' personally identifying information preclude standing. However, as this Court rightly found before, "the plaintiffs in *Muransky* and *Fraga* relied on threats of future harm from potential identity theft . . . Robinson's claims do not depend on potential future harms." Dkt. No. 42 at 4. This remains true. Trulieve has already collected, shared, and sold Plaintiff's data to its undisclosed

third-party partners depriving him of the ability to profit from his data—a concrete and immediate harm by all accounts.[3]

### 2. Plaintiff pleads causation

Again, Trulieve incorrectly argues that Plaintiff has not pleaded causation; again, the Court already decided this issue against Trulieve. *See* Dkt. No. 42 at 6 (finding the allegations in the first amended complaint sufficient). As the Court recognized, "[t]hese are not difficult issues." *Id.* "To satisfy Article III's causation requirement, the named plaintiff must allege that their injuries are connected with the conduct of which they complain." *Wilding v. DNC Servs. Corp.,* 941 F.3d 1116 at 1125 (11th Cir. 2019) (quoting *Trump v. Hawai'i*, 585 U.S. 667, 697 (2018)). There is no requirement to show proximate causation; the plaintiff merely needs to show that the injury alleged is fairly traceable to the defendant's conduct and even harms that flow indirectly from the action in question can suffice. *Wilding*, 941 F.3d at 1125–26.

Here, the SAC alleges the injuries Plaintiff and the proposed Class Members suffered are directly traceable to Trulieve's act of placing advertising trackers on its

---

[3] In a passing footnote, Trulieve argues that Plaintiff has not pleaded CAFA jurisdiction (even though Plaintiff has, *see* SAC ¶ 8). This argument may be dispensed with swiftly, because the Florida Security of Communications Act ("FSCA") provides for statutory damages of $1,000 per person or $100 per violation per day. Therefore, if there are at least 5,000 class members, CAFA jurisdiction is satisfied. The Court may reasonably assume the nationwide class pleaded in ¶ 92 includes at least 5000 class members.

website to capture users' personal information and transmit it to over 20 third-party advertisers. *E.g.*, SAC ¶ 84. These allegations satisfy causation.

**C. Plaintiff has a reasonable expectation of privacy.**

Trulieve offers three reasons to support its claim that Plaintiff lacks a reasonable expectation of privacy: (i) all website users lack such an expectation when browsing third-party sites; (ii) HIPAA fails to create such an expectation; and (iii) Florida law also does not create such an expectation because (x) federal law criminalizes marijuana, (y) the Florida Constitution stops short of protecting private marijuana use, and (z) Florida surveils and regulates the industry. *See* Dkt. No. 50 at 13–19. Since none of Trulieve's authorities address the applicable private-party privacy causes of action in tort and contract, and since binding precedent compels the opposite result, Trulieve's argument fails.

The question to ask in tort is whether the publicized facts are "highly offensive to a reasonable person" and "not a legitimate concern to the public." *Cape Publications, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989) (quoting *Restatement (Second) of Torts* § 652D (1977)). In contract, it is whether the defendant made a "tacit promise" of privacy, "one that is inferred in whole or in part from the parties' conduct, not solely from their words." *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, at *11 (M.D. Fla. Mar. 6, 2025) (quoting *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 245 (Fla. 4th

DCA 2024)). Whether sounding in tort or contract, Plaintiff plausibly alleges a reasonable expectation of privacy in the details of his medical marijuana use—regardless of marijuana's federal illegality or its regulation in Florida.

**1. Tort.**

*Patterson v. Trib. Co.* dictates the outcome here.[4] 146 So.2d 623 (Fla. 2d DCA 1962). There, a Florida appellate court confirmed that Florida privacy laws apply even in the context of drug use. A newspaper published docket entries reflecting the plaintiff's judicial commitment due to her substance abuse of Demerol, a narcotic drug. *Id*. at 624. A Florida statute specifically exempted the published records from public inspection except for "the person named . . . or his counsel or . . . narcotic officers," *id*. (emphasis omitted) (quoting Fla. Stat. § 398.18(1)), but stopped short of an express prohibition on such records' publication.

The court of appeals rejected the defendant's argument it had broken no laws in merely viewing the docket—which erroneously identified the plaintiff by name; the real issue was whether it should have proceeded with publication. *Id*. at 626. Because Florida had passed a statute to protect the privacy of committed addicts,

[4] While *Patterson* is a tort case, the parties' expectations as relevant in implied contract is very much informed by the issues *Patterson* discusses—a private person's privacy expectations arising from the statutory scheme—and are all the stronger when considered in conjunction with Florida's "long tradition of recognizing the privacy interests of patients in confidential medical records." *See infra* at Part IV.C.2.

publishing their names supported a private right of action even without an express remedy. *Id*. (quoting 1 C.J.S. Actions § 9(b)). Here, the expectation of privacy is even stronger than *Patterson* because the marijuana use in question is medical treatment.

*Patterson*, not *Cape*, which Trulieve cites, Dkt. 50 at 25, controls. *Cf. Cape*, 549 So.2d at 1378 (noting that the "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public" and declining to impose liability on a newspaper that printed information about a criminal trial). Unlike *Cape*, Trulieve's disclosure was not part of a journalistic effort designed to inform public debate about a criminal prosecution or contentious public proceeding; it was a purely commercial act meant to monetize customer data for targeted advertising. And as the statutory framework around Florida Statute § 381.987(1) shows, Florida does not treat medical marijuana use as a crime whose dissemination the public should know about, but as a "personal and private matter" between doctor and patient, Fla. H.R. Staff Analysis, HB 7005, at 6 (2022), much like *Patterson* treated the plaintiff's use of Demerol as a private matter notwithstanding its status as a Schedule II controlled substance.[5] Further, like the statute in *Patterson*, Florida Statute § 381.987(1) does

[5] *See United States v. Robinson*, No. 12-20319-CIV, 2012 WL 3984786, at *2 (S.D. Fla. Sept. 11, 2012) ("the drugs Demerol and Fentanyl" are "both Schedule II controlled substances").

not expressly forbid publication by private parties, but its plainly stated purpose—to shield the medical marijuana registry from public scrutiny—creates a duty of nondisclosure that dispensaries, as licensed participants in the program, are charged with knowing. *Cf. Patterson*, 146 So.2d at 627 (news outlets charged with knowing statutory protections afforded those battling illegal substance addictions in public proceedings). And, just as in *Patterson* § 398.18(1) allowed narcotics officers limited access without removing privacy expectations with respect to other parties, § 381.987(1)'s carve out for law enforcement does not open the door to the indiscriminate dissemination of medical marijuana information. In short, because Trulieve's publication was commercial, not journalistic, and contravened a statute enacted to protect patient confidentiality, *Cape*'s narrow First Amendment rationale does not control here.

**2. Contract.**

In contract, Plaintiff has sufficiently pleaded an implied promise of privacy. "When considering whether an implied contract exists, a court should give 'the effect which the parties, as fair and reasonable men, presumably would have agreed upon . . . ." *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *4 (M.D. Fla. Jan. 27, 2020) (quoting *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1950)). "Because the parties' conduct is central to

determining whether an implied contract was formed, this determination is typically left for the fact finder." *Id*

When patients furnish health information to a merchant, Florida courts recognize an implied-in-fact promise to use reasonable safeguards and limit use to the requested care—an understanding the Eleventh Circuit embraced in a health insurer data breach case, *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327–28 (11th Cir. 2012) (denying motion to dismiss breach of implied contract claim where plaintiffs' health information was stolen from the defendant), and that Florida federal courts have repeatedly allowed to proceed in health pixel suits like this one, emphasizing, "the Rule 8 bar is low," *D.S. v. Tallahassee Mem'l HealthCare*, No. 4:23cv540-MW/MAF, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024); *Cyr v. Orlando Health, Inc.*, No. 8:23-cv-588-WFJ-CPT (M.D. Fla. July 5, 2023), Dkt. No. 37 ("The Rule 8 bar is fairly low."); *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-01068, 2025 WL 722892, at *11 (M.D. Fla. Mar. 6, 2025) (denying dismissal of implied contract claim in analogous hospital tracking-tools case).

Here, Plaintiff alleges that by creating an account and transacting for medical marijuana, he furnished Trulieve with highly sensitive medical details—including medical-marijuana card number, qualifying condition, and purchase history—while obtaining healthcare goods, and that Trulieve accepted that data in a healthcare setting where confidentiality is the norm. SAC ¶¶ 1–3, 5–7, 24–31, 62. Florida's

"long tradition" of medical record confidentiality and statutory commands under which "[p]atient records are confidential and must not be disclosed without the consent of the patient," Fla. Stat. § 395.3025(4), and will not be used for marketing or solicitation without specific written consent, Fla. Stat. § 395.3025(7)(b), reinforce the parties' common understanding that such information will be protected. SAC ¶¶ 52–60 (citing *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 205–06 (Fla. 2007); *State v. Johnson*, 814 So. 2d 390, 393 (Fla. 2002)).

That understanding applies with equal force to medical marijuana records: the Legislature has exempted medical marijuana personal information from public disclosure and expressly found that revealing a patient's cannabis treatment or a physician's certification "could be used to embarrass, humiliate, harass, or discriminate." SAC ¶¶ 57–58 & n.2 (citing Fla. Stat. § 381.987(1); Fla. Const. art. I, § 24(c); HB 7005 Staff Analysis at 6). The Medical Marijuana Use Registry exists only to verify authorization and record dispensing, not to facilitate secondary disclosures, underscoring the confidentiality baseline against which the parties contracted. SAC ¶ 59 (citing Fla. Stat. § 381.986(5)(a)).

Plaintiff also pleads course of dealing facts that support an implied-in-fact promise. Trulieve's Privacy Policy—then in effect—affirmed it "respects the privacy of [its] users," and, when asking "Do we disclose … to Third-Parties?,"

identified confirmation with the Department of Health registry—impliedly representing no other recipients in the purchase flow. SAC ¶ 1 & n.1; ¶ 117.

Florida courts recognize that such policies and the surrounding healthcare relationship are competent evidence of the parties' tacit agreement to safeguard personal and health information. Consistent with that doctrine, Plaintiff alleges the bargain included confidentiality (a portion of what he paid and the value he conferred was for private medical purchasing), that Trulieve breached by embedding trackers that disclosed health information to ad-tech firms, and that he suffered loss of the benefit of his bargain and other harms. SAC ¶¶ 112–121 (implied contract elements), 24–45 (disclosures via trackers/cookies/real-time bidding), 63–75, 80–85 (harms). At this stage—where "the Rule 8 bar is low" in analogous Florida pixel cases—those allegations suffice to allow the implied contract claim to proceed.

**3. Trulieve's authorities don't change the outcome.**

None of Trulieve's three proffered grounds vitiates Plaintiff's reasonable expectation of privacy in his medical disclosures to Trulieve.

Trulieve's first ground posits a per se no-privacy rule for website users and business customers. Dkt. No. 50 at 13. That premise is facially dubious, and the cases cited are inapposite or overread. *Jacome v. Spirit Airlines Inc.*—a nonbinding state trial-court order—addressed only on-site session replay by the website operator. 2021 WL 3087860, at *2 (Fla. Cir. Ct. 2021) (describing the case as one of "use by

a website operator of analytics software to monitor visitors' interactions *with that website operator's own website*" (emphasis added)). The plaintiff alleged capture of clicks/keystrokes while browsing spirit.com, not disclosure to independent third parties for their own use or profit. *Id*. at *1. Thus, even taking *Jacome*'s statement that there is "no reasonable expectation of privacy from a third-party website owner when [a user] voluntarily browses" at face value, the proposition is limited to the user-versus-site-owner relationship and does not negate privacy expectations as to third-party recipients or medical information. *Id*. at *6–7. *Jacome* offers no guidance on the matter.

*Avrich v. State*, 936 So. 2d 739 (3d DCA 2006) and *Cohen Bros., LLC v. ME Corp., S.A.,* 872 So. 2d 321, 324 (Fla. 3d DCA 2004) fail to persuade too. The Fourth Amendment may afford no privacy in business spaces (as opposed to personal ones like the home). *See Avrich*, 936 So. 2d at 742. But that sheds little light on a private business's tort or contract liability for soliciting—and then surreptitiously disclosing—a customer's health information.

Plaintiff grants Trulieve's second proffered ground—that HIPAA, without more, falls short of creating a reasonable expectation of privacy. Dkt. No. 50 at 14–17. HIPAA's relevance here is merely demonstrative of health information's sensitivity to consumers, not determinative of the legal standard.

Trulieve's third and final premise—that Florida law recognizes no reasonable expectation of privacy—fares no better. Contrary to Trulieve's suggestion, Plaintiff has—respectfully, he hopes—engaged the Court's statement that "there is no federal privacy right in criminal activity," Dkt. 50 at 17–18 (quoting Dkt. No. 42 at 7), with precedent imposing liability for a private party's disclosure of another's use of illegal drugs, *supra* at Part IV.C.1 (discussing *Patterson v. Trib. Co.*, 146 So.2d 623 (Fla. 2d DCA 1962)).

Trulieve also errs in suggesting that "the Florida Constitution does not grant any privacy interests that would remotely support protecting information about his medical marijuana use." Dkt. No. 50 at 18. As with the Fourth Amendment, Article I, section 23 protects a person's "right to be let alone and free from *governmental* intrusion," not interactions amongst private parties. Fla. Const. art. I, § 23 (emphasis added). But to the extent Article I, section 23 is consulted for guidance, Florida precedent addressing medical records recognizes their special sensitivity and requires the government to demonstrate a compelling interest to justify disclosure. *See Jaeger v. State*, 403 So. 3d 384, 387 (Fla. 2d DCA 2025) (applying compelling-interest standard). Respectfully, the medical records line of cases is closer than the Court's previously cited case—*City of N. Miami v. Kurtz*, 653 So. 2d 1025 (Fla. 1995). *See* Dkt. No. 42 at 8 (discussing *Kurtz*). *Kurtz* held that an applicant for a public job lacked a constitutional privacy expectation in disclosing smoking habits

in that public-employment context, and it limited its holding to those facts. *Kurtz*, 653 So. 2d at 1028. In those days, a smoker's habit was self-evident—signaled by "smoking" restaurant sections, designated hotel rooms or rental cars, and workplace smoking areas. *Id*. Today, medical marijuana use is "personal and private," Fla. H.R. Staff Analysis, HB 7005 at 6, and users do not broadcast their usage the way cigarette smokers once signaled their habit.

Trulieve's last challenge—that Florida's dense regulation and surveillance of medical marijuana erase any privacy expectation—also does not pass muster. However broad the State's authority to regulate and give law enforcement access, it does not confer on private parties an indiscriminate right to disseminate medical marijuana records to any number of third parties. Binding Florida authority resolves the point: in *Patterson*, notwithstanding narcotics officers' statutory access to the subject records, and notwithstanding that she abused Demerol, a Schedule II controlled substance, the plaintiff had a potentially valid tort claim against a private newspaper for such records' publication to other private citizens. 146 So.2d at 624, 627. Here, equally, extensive regulation does not open the door to broad private dissemination.

In short, Trulieve's three objections notwithstanding, Plaintiff plausibly alleges—and Florida tort and contract principles confirm—that he retains a reasonable expectation of privacy in his medical marijuana information.

**D. Plaintiff states a claim for breach of confidence.**

Trulieve argues Plaintiff's breach of confidence claim fails because (1) it is supposedly not a viable cause of action even though numerous courts have held otherwise, (2) Plaintiff provided the information (although Trulieve then disclosed to dozens of advertisers without his consent), and (3) Trulieve's position as Plaintiff's medical marijuana provider is somehow insufficient for a confidential relationship. These arguments fail. A common law breach of confidence claim requires "an unconsented, unprivileged disclosure to a third party of nonpublic information that defendant has learned within a confidential relationship." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020). Plaintiff's complaint satisfies each element.

*First*, Plaintiff alleged that Trulieve disclosed nonpublic information without his authorization. SAC ¶¶ 76–82. Specifically, Trulieve disclosed the fact that Plaintiff was a medical marijuana patient, his browsing data, name, email, regulated-use details, and potentially his card-related or physician-identifying data. *Id.* ¶ 79. Trulieve's Privacy Policy does not authorize disclosure of information provided to Trulieve to *anyone* other than a state agency. Given this, Plaintiff's expectation was that his information would only be shared for that purpose. So, it is of no moment that Plaintiff provided the information to Trulieve, because Trulieve's disclosure of the information was unauthorized. Trulieve cites no cases for the argument that

"inputting [the information] himself" destroys a breach of confidence claim; most confidential information shared in the context of a confidential relationship is consensually shared. The whole point of the confidential relationship is to facilitate that trust.

*Second*, despite Trulieve's arguments, the relationship between Trulieve and Plaintiff is a "confidential relationship." While Trulieve is not the Plaintiff's treating physician, that does not mean Plaintiff and Trulieve do not share a confidential relationship. Trulieve operates similar to a pharmacy. Trulieve offers a health product, medical marijuana, to individuals who are legally allowed and qualified to purchase medical marijuana under state law. Trulieve verifies a customer's eligibility to purchase medical marijuana by obtaining information about their medical marijuana cards and in some instances with the Florida Department of Health's Compassionate Use Registry's assistance. Courts recognize that health information and information concerning one's prescriptions is confidential information and that individuals have an expectation of privacy in their prescription records. *See United States v. Litzky*, 2019 WL 1586740 at *2 (M.D. Fla. Apr. 12, 2019) (recognizing that personal health information is generally considered to be personal, private, and sensitive in nature when sealing defendant's psychological evaluations); *Mullis v. State*, 79 So. 3d 747, (Fla. 2d DCA 2011) (stating that a doctor's prescription of a medication is a form of treatment and the government

could not obtain information about the prescription without a warrant under Florida law); *Gore v. State*, 74 So. 3d 1119, 1122 (Fla. 4th DCA 2011) (recognizing that there is some expectation of privacy in pharmacy records). The same logic of the confidentiality of the information provided to Trulieve applies.

*Finally*, *W.W. v. Orlando Health, Inc.* is also an apt comparison to Plaintiff's experience with Trulieve and dispenses with Trulieve's argument that the Eleventh Circuit does not recognize breach of confidence as a claim. In *W.W.*, the Plaintiff alleged that Defendant Orlando Health, Inc., Plaintiff's hospital, installed "tracking tools on Defendant's website[, which] intercepted her protected health information and transmitted it to Meta and Google." 2025 WL 722892 at *8. Specifically, plaintiff alleged that she input information on Defendant's website to find gastroenterologists and cardiologists and in doing so communicated her health information related to various conditions to help her find doctors concerning these medical conditions and systems. *Id*. On these findings, the court determined Plaintiff had adequately pleaded a breach of confidence claim and denied the defendant's motion to dismiss.

Although this case arose in the doctor-patient context, as explained, the relationship between Trulieve and Plaintiff similarly constitutes a confidential relationship. Like the Plaintiff is *W.W.*, Plaintiff Robinson shared information with Trulieve regarding his medical status as he is authorized under Florida law to

purchase medical marijuana. SAC ¶ 114. Further, like in *W.W.*, Plaintiff extensively detailed how Trulieve intercepted Plaintiff's information, which was health-related data. *Id.* ¶ 24–45. Following the reasoning in *W.W.*, the Court should not dismiss Plaintiff's breach of confidence claim as Plaintiff alleged an unconsented, unprivileged disclosure to a third party of nonpublic information that defendant has learned within a confidential relationship.

**E. Plaintiff states a claim for breach of implied contract.**

Trulieve's argument against Plaintiff's implied contract claim boils down to the claim that he "has failed to allege facts sufficient to conclude that there was a reasonable expectation of privacy in his browsing data." Dkt. No. 50 at 22. As explained above, that argument fails. *Supra* at Part IV.C.2. So does Trulieve's effort to smuggle the Privacy Policy's "express terms" into an implied-in-fact analysis, Dkt. No. 50 at 22–23; *see Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So. 3d 12, 15 (Fla. 4th DCA 2023) ("[A] fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement.") (cleaned up). In any event, the Policy reinforces (rather than negates) the tacit promise of confidentiality. *Supra* at Part IV.C.2. In short, by accepting highly sensitive health information long protected under Florida law, Trulieve impliedly promised, at a minimum, not to disclose it gratuitously.

**F. Plaintiff states a claim for unjust enrichment in the alternative to**

**breach of implied contract.**

Contrary to Trulieve's arguments, Plaintiff's unjust enrichment allegations suffice to meet the "low" bar of Rule 8.

First, Trulieve argues that its dissemination of health data is not unjust because Plaintiff lacked a reasonable expectation of privacy. *Id*. at 23–24. That argument fails for the reasons discussed in Part IV.C above.

Second, Trulieve believes that Plaintiff's allegations fall short of showing that he conferred a benefit to Trulieve. But again in *W.W. v. Orlando Health, Inc.*, the Middle District of Florida rejected an argument against unjust enrichment nearly identical to Trulieve's. *See* 2025 WL 722892 at *10. The plaintiff—defendant's patient—identified her sensitive medical information as the conferred benefit, which the defendant then "consciously collected and used . . . for its own gain" by collecting and disseminating it through trackers. *Id*. The court found "that private information, at least in the context of sensitive medical information, has value," that "no [cited] controlling law" in Florida adopted the defendant's restrictive view, and that, in any case, the question is a factual one, not suited for a motion to dismiss. *Id*.

As that of the *Orlando Health* plaintiff, the data at issue here is not mere "website usage information," *id*., but sensitive information about Plaintiff's use of marijuana for medical purposes—information with "monetary value," SAC ¶¶ 52–

60, 64–69, 72–74, which Trulieve used "to enrich itself" by selling it to third parties at Plaintiff's expense, *id.* ¶ 124.

Trulieve's cited authority, *Baker v. Akumin Corp.*, misses the mark: it concerns whether a data breach plaintiff had alleged an Article III injury in pleading he paid the defendant for a benefit—data security—he did not receive. *See* 2024 WL 1931480, at *6–*7 (S.D. Fla. Apr. 16, 2024). For the *Baker* court, that theory of injury required some allegation that Plaintiff paid some "amount for data security above the value of medical services." *Id.* Plaintiff's unjust enrichment claim here, however, does not rely on the allegation that he overpaid for Trulieve's services, but that, as in *W.W.*, his medical data has value which Trulieve received and exploited without compensating Plaintiff. At this stage, Rule 8's "low" bar must yield to Plaintiff's well pleaded allegations, *W.W.*, 2025 WL 722892, at *6, and all the more where resolution requires, as here, "answering highly technical questions," *D.S.*, 2024 WL 2318621 at *1.

**G. Plaintiff states a claim for public disclosure of private facts.**

Trulieve next argues Plaintiff cannot satisfy two elements of public disclosure of private facts—the private facts element and the publicity element. *See* Dkt. No. 50 at 25. Trulieve's attack on the former simply reprises its reasonable expectation argument addressed in Part IV.C above and it fails for the same reasons.

With respect to publicity, Trulieve maintains the complaint does not show that Plaintiff's health information is "sure to reach the public," claiming it "falls well short" for not alleging how any individual user's data is transmitted past vendors and into the public domain. Dkt. No. 50 at 26. Not so.

In Florida, "a defendant may become liable through revealing the matter to only one person, from whom the information predictably goes to many." *Williams v. City of Minneola*, 575 So.2d 683, 689 (Fla. 5th DCA 1991); *Smith v. Volusia Cnty., Fla.*, 2011 WL 1598741, at *6 (M.D. Fla. Apr. 28, 2011) (allegation that defendant told "other members of the Beach Patrol" about plaintiff's sexual relationship with coworker was sufficient to state a claim). No precise threshold applies here; the facts and circumstances of each case must be taken into consideration—in other words, this is a jury issue. *See, e.g.*, 9 Am. L. of Torts § 30:34. The assessment is both qualitative and quantitative. *See Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at *8 (S.D. Fla. Jan. 3, 2022) (disclosure of information about plaintiff's sexual history to unspecified number of "other individuals" sufficed to state a claim); *Conradis v. Buonocore*, 2021 WL 4243720, at *5 (M.D. Fla. Sept. 17, 2021) (publishing nude photos online sufficient to state a claim, though number of persons who viewed them was not alleged).

Contrary to Trulieve's claim, Plaintiff alleges not only a pathway by which his data could pass beyond Trulieve's many vendors and into the public domain, but

that it has, for all practical purposes, already been disseminated there. The complaint pleads that Trulieve's embedded scripts transmit identity fields and regulated-use details "every time a page loads" to multiple third parties in real time, SAC ¶¶ 29–31; those third parties operate real-time bidding, under which a single page view is broadcast to "*thousands*" of platforms and brokers, with every recipient getting the data whether or not it bids, *id*. ¶¶ 32–36 (emphasis added); the same payloads are then re-broadcast in secondary auctions, repackaged into dossiers containing deeply personal data, and resold in publicly accessible marketplaces, rendering mass exposure inevitable, *id*. ¶¶ 40, 42–45. As to Plaintiff specifically, his identifying and medical-use information "entered the RTB ecosystem" and was "rebroadcast to a global network," triggering a cascading chain of distribution across multiple commercial systems. *Id*. ¶¶ 79–82.

Plaintiffs' allegations are fundamentally different from *Hunstein*—Trulieve's case of choice—where the complaint alleged only a one-to-one transfer to a single mail vendor acting as the defendant's agent. *See Hunstein.*, 48 F.4th at 1244. Plaintiff succeeds in raising a claim for public disclosure of private facts.

### H. Plaintiff states a claim for violations of the Florida Security of Communications Act.

The Florida Security of Communications Act ("FSCA") was designed to protect private medical marijuana information. *See W.W*, 2025 WL 722892 at *4. The statute prohibits "[i]ntentionally intercept[ing], endeavor[ing] to intercept, or

procur[ing] any other person to intercept or endeavor to intercept any . . . electronic communication." Fla. Stat. § 934.03(1)(a). "Intercept[ing]" under the statute includes acquisition of the contents of electronic communications "through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3).

Trulieve's arguments for dismissing the FSCA claim fail. First, Trulieve's argument ignores the text of the FSCA, which distinguishes between oral communications in which a violation can only be proven when the interception occurs "under circumstances justifying" "an expectation that such communication is not subject to interception," and a "wire communication" that carries no similar requirement. *See* Fla. Stat. § 934.02(1), (2). *See also Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, 2013 WL 5437117, at *4 (M.D. Fla. Sept. 27, 2013) ("Wire communications are generally protected regardless of whether the person making or receiving the communication has an expectation of privacy. Plaintiffs' expectation of privacy is not relevant to statutory liability for the interception of wire communications." (citation omitted)). Accordingly, even though Plaintiff did have an expectation of privacy in his use of the Trulieve website to purchase medical marijuana, *see supra* Part IV.C, should the Court conclude otherwise, the FSCA violation remains.

Second, Plaintiff sufficiently alleges that Trulieve captured the "contents" of a communication under the FSCA. In arguing otherwise, Trulieve again relies on

*Jacome v. Spirit Airlines, Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021), but that argument fails for the same reason it failed in *W.W. v. Orlando Health, Inc.* Like Trulieve, the defendant in *W.W.* relied on *Jacome*. The court rejected its arguments, finding that (1) the *Jacome* case did not apply to technologies that intercepted communications regarding healthcare; (2) the *Jacome* court did not address disclosures of search terms and other communications; and (3) the FSCA was specifically intended "to protect private personal and business records (like medical records)." *See W.W.*, 2025 WL 722892 at *4-5. *Accord D.S.*, 2024 WL 2318621 at *1 (plaintiff stated a claim for FSCA where defendant "installed software on its public website that tracked her movements and searches" and "disclosed the plaintiff's private information to third parties"). The same rationale applies here.

Courts across the country have found allegations similar to Plaintiff's state a claim under other states' analogous wiretap acts. *See W.W.*, 2025 WL 722892 at *4 (citing cases from Illinois, California, Minnesota, and Washington). In contrast, Trulieve's other cases are distinguishable because they do not involve healthcare.

Trulieve seeks to dispose of *W.W.* and cases like it in a footnote, claiming that the Court can ignore those on-point cases because plaintiff did not allege that he saw a targeted ad. But *W.W.* did not turn solely on whether the plaintiff saw a targeted ad. Instead, the court's analysis focused on the specific information intercepted. Here, like *W.W.* and *D.S.*, the complaint contains detailed allegations of the types of

contents intercepted (which are similar to those alleged in *W.W.*), the interceptions occurred in a medical context, and the information was publicized in the marketplace. Further, as another court in this District concluded, these issues involve answering highly technical questions and are therefore better suited to resolution on summary judgment. *D.S.*, 2024 WL 2318621 at *1.

## V. CONCLUSION

For the reasons above, the Motion should be denied.

Dated: September 15, 2025

Respectfully submitted,

*/s/ Arturo Peña Miranda*
Arturo Peña Miranda
Bar No. 1025613
Jennifer Czeisler*
Edward Ciolko*
**STERLINGTON, PLLC**
228 Park Ave. S #97956
New York, New York 10003
Tel.: 407-259-0234
*arturo.pena@sterlingtonlaw.com*
*jen.czeisler@sterlingtonlaw.com*
*edward.ciolko@sterlingtonlaw.com*

Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, D.C. 20006
Tel.: 202-973-0900
*kaizpuru@tzlegal.com*

**Pro Hac Vice* forthcoming

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum, including body, headings, quotations, and footnotes, and excluding those portions exempt from the Rule, contains 7,883 words as measured by Microsoft Office.

*/s/ Arturo Peña Miranda*
Arturo Peña Miranda