**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**Case No.: 4:24-cv-00391**

MARK ROBINSON, on behalf of himself and all
others similarly situated,

*Plaintiff*,

v.

TRULIEVE INC.,

*Defendant.*

_______________________________/

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Grace L. Mead
Andrea N. Nathan
Hannah E. Murphy
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130

October 15, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The Privacy Policy Must Be Considered on this Motion ........ 2

II. Plaintiff Had No Reasonable Expectation of Privacy ........ 5

A. Plaintiff Does Not and Cannot Dispute that any Privacy Interest in Marijuana Use Has Been Repeatedly Rejected in Many Contexts ........ 5

B. Trulieve Has No Liability for Truthful Speech about Plaintiff's Marijuana Use ........ 6

C. Neither Federal nor Florida Statutes Support Plaintiff's Claimed Expectation of Privacy ........ 9

D. Trulieve's Privacy Policy Eliminates any Reasonable Expectation of Privacy ........ 10

III. The Complaint Fails to State a Claim for Breach of Confidence—First Cause of Action ........ 11

IV. The Complaint Fails to State a Claim for Breach of Implied Contract—Second Cause of Action ........ 13

V. The Complaint Fails to State a Claim for Unjust Enrichment—Third Cause of Action ........ 14

VI. The Complaint Fails to State a Claim for Public Disclosure of Private Facts—Fourth Cause of Action ........ 15

VII. The Complaint Fails to State a Claim for Violation of Florida's Security of Communications Act—Fifth Cause of Action ........ 17

A. Plaintiff Fails to State a Claim because He Had No Reasonable Expectation of Privacy. ........ 17

B. Plaintiff Fails to State a Claim because He Does Not Allege That Trulieve Captured the Content of a Protected Communication ....................................................18

CONCLUSION ....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Borras v. State*,
229 So. 2d 244 (Fla. 1969)....................6

*Cape Publications v. Hitchner*,
549 So. 2d 1374 (Fla. 1989)....................6, 7, 16

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD, 2021 WL 2820822
(S.D. Fla. July 6, 2021)....................19

*City of North Miami v. Kurz*,
653 So. 2d 1025 (Fla. 1995)....................5

*Cox Broadcasting v. Cohn*,
420 U.S. 469 (1975)....................7

*Cyr v. Orlando Health, Inc.*,
No. 8:23-cv-588-WFJ-CPT (M.D. Fla. July 5, 2023)....................10

*D.S. v. Tallahassee Memorial Healthcare*,
2024 WL 2318621 (N.D. Fla. May 22, 2024)....................10

*Daewoo Motor America v. General Motors*,
459 F.3d 1249 (11th Cir. 2006)....................4

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007)....................4

*Florida Dept. of Corrections v. Abril*,
969 So. 2d 201 (Fla. 2007)....................9

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989)....................7

*Fraga v. UKG*,
2022 WL 19486310 (S.D. Fla. May 10, 2022)....................................................15

*Fulton v. Brancato*,
189 So. 3d 967 (Fla. 4th DCA 2016)..............................................................14

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)...........................................................19

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-80546-CIV, 2021 WL 4093295
(S.D. Fla. Aug. 23, 2021).............................................................................19

*Gore v. State*,
74 So. 3d 1119 (Fla. 4th DCA 2011)..............................................................13

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........................................................................15

*Hunstein v. Preferred Collection and Management Services, Inc.*,
48 F.4th 1236 (11th Cir. 2022) (en banc) .......................................................16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)...........................................................12

*Jacome v. Spirit Airlines*,
2021 WL 3087860 (Miami-Dade Cir. Ct. 2021)...................................17, 19, 20

*Jaeger v. State*,
403 So. 3d 384 (Fla. 2d DCA 2025)...............................................................13

*Laird v. State*,
346 So. 2d 962 (Fla. 1977) ..............................................................................6

*Leary v. United States*,
544 F.2d 1266 (5th Cir. 1977) ..........................................................................6

*Mullis v. State*,
79 So. 3d 747 (Fla. 2d DCA 2011)..................................................................13

*Muransky v. Godiva Chocaltier*,
979 F.3d 917 (11th Cir. 2020) (en banc) .........................................................12

*Patterson v. Tribune Co.*,
146 So. 2d 623 (Fla. 2d DCA 1962) ........................................................ 1, 8, 9

*Resnick v. Amed, Inc.*,
963 F.3d 1317 (11th Cir. 2012) ................................................................ 10

*Rhythm & Hues v. Nature's Lawn Care, Inc.*,
368 So. 2d 12 (Fla. 4th DCA 2023) ............................................................ 14

*SFM Holdings v. Banc of America Securities*,
600 F.3d 1334 (11th Cir. 2010) ............................................................ 3, 4

*Smith v. Volusia County*,
2011 WL 1598741 (M.D. Fla. April 21, 2011) ............................................. 17

*State v. Johnson*,
814 So. 2d 390 (2000) ................................................................................ 10

*State v. Thompson*,
72 So. 3d 246 (Fla. 2d DCA 2011) ............................................................... 9

*Steele v. Offshore Shipbuilding, Inc.*,
867 F.2d 1311 (11th Cir. 1989) ................................................................ 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..................................................................................... 3

*United States v. Litzky*,
2019 WL 1586740 (M.D. Fla. 2019) ............................................................ 13

*W.W. v. Orlando Health, Inc.*,
No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892
(M.D. Fla. Mar. 6, 2025) ....................................................................... 10, 19

*Walker v. Florida Dept. of Law Enforcement*,
845 So. 2d 339 (Fla. 3d DCA 2003) ........................................................... 7, 8

*Warren Technology, Inc. v. UL LLC*,
962 F.3d 1324 (11th Cir. 2020) ................................................................... 4

*Whalen v. Roe*,
429 U.S. 589 (1977) ..................................................................................... 9

*Williams v. City of Minneola*,
575 So. 2d 683 (Fla. 5th DCA 1991).....17

**Statutes**

Fla. Stat. § 934.02 .....18

**Other Authorities**

https://ballotpedia.org/Florida_Amendment_2,_Medical_Marijuana_L
egalization_Measure_(2016) .....14

Restatement (Second) of Torts.....8

Restatement (Second) of Torts section 652D cmt. a .....16

Defendant Trulieve, Inc. ("Trulieve") respectfully submits this reply memorandum in further support of its Motion to Dismiss the Second Amended Class Action Complaint ("Motion to Dismiss" or "MTD"), DE 50:

## INTRODUCTION

In his Opposition, Plaintiff cites to two new lines of law to try to resuscitate a reasonable expectation of privacy but both instead undermine it and every claim asserted. Plaintiff concedes that "federal law makes marijuana illegal," DE 53 at 1, and "HIPPA, without more, falls short of creating a reasonable expectation of privacy." DE 53 at 21.

Plaintiff then principally relies on the 1962 case of *Patterson v. Tribune Co.*, 146 So. 2d 623 (Fla. 2d DCA 1962), but that case cannot support Plaintiff's claimed privacy interest in blocking truthful speech about what he describes as "illegal" drug use. The Second District there held that the law of slander and libel could support a claim based on publication of a docket entry that "might even suggest criminal dealing in narcotics." Since, both the United States Supreme Court and the Florida Supreme Court have ruled that state statutes cannot support privacy torts for truthful speech about crimes, even when the civil plaintiffs have been acquitted of charges or were even victims. Such matters of public concern cannot form the basis for liability under any privacy tort.

As a fallback, Plaintiff relies on cases involving medical records, but all of the cases enforcing privacy interests in medical records involve hospitals, nurses, doctors, and their medical records and make plain that even pharmacy records receive a much lower level of protection. Plaintiff cites no cases where courts have allowed privacy claims to go forward based on the website activity of pharmacy customers, let alone any cases where courts have allowed plaintiffs who conceded that their activity is "illegal" to press forward with claims based on records of that activity. So, for that reason too, the Opposition just confirms that this Court's prior dismissal was correct. For these and many other reasons explained below, the Second Amended Complaint should be dismissed with prejudice.[1]

## ARGUMENT

### I. The Privacy Policy Must Be Considered on this Motion

Though Plaintiff's latest complaint no longer alleges that "the Privacy Policy is a contract between Plaintiff and the Class Members, on the one hand, and Trulieve, on the other," DE 1 ¶ 96; DE 1 ¶ 96, the Second Amended Complaint continues to make it central to Plaintiff's claims and incorporates it by reference.

Plaintiff does not and cannot dispute the governing law holding that on a motion to dismiss "courts must consider the complaint in its entirety, as well as . . .

[1] References in this reply memorandum are the same as in the Motion to Dismiss; emphasis is added and citations, internal quotations, internal brackets, and internal ellipses are omitted unless otherwise indicated.

documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[T]he district court may consider an extrinsic document if it is (1) central to plaintiff's claim; and (2) its authenticity is not challenged." *SFM Holdings v. Banc of America Securities*, 600 F.3d 1334, 1337 (11th Cir. 2010).

Plaintiff offers no answer to the many allegations about the Privacy Policy central to the Second Amended Complaint. Its Introduction leads with a quotation from the Privacy Policy, DE 47 at 1, and tries to contrast what "Trulieve states" "in its Privacy Policy" with the Complaint's allegations about data sharing, DE 47 ¶ 5. In its breach of implied contract allegations, the Complaint alleges "*[t]he existence of a Privacy Policy is further evidence of the implied contract* between Plaintiff and the Class members, on the one hand, and Trulieve, on the other," DE 47 ¶ 117, and "no language in Trulieve's Privacy Policy makes it clear to a user that their personal and health information would not be kept confidential, except in limited circumstances clearly outlined by Trulieve," DE 47 ¶ 118.

In Opposition, Plaintiff now for the first time speculates—without citing any supporting factual allegations—that he might not have agreed to the Privacy Policy. Plaintiff argues that he "has not pleaded" "that Plaintiff ever saw or agreed to the Privacy Policy as an express contract," DE 53 at 6, and "nowhere alleges he had actual knowledge of the Privacy Policy," DE 53 at 6, without identifying any well-

pleaded facts raising any contract formation issues. And the Supreme Court held almost twenty years ago that "*[f]actual allegations* must be enough to raise a right to relief above a speculative level." *Warren Technology, Inc. v. UL LLC*, 962 F.3d 1324, 1327 (11th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, Plaintiff cites cases involving motions to compel arbitration where the courts have considered evidentiary disputes, not cases where Plaintiffs have offered speculation in briefs as a substitute for the requisite factual allegations in a complaint to survive a motion to dismiss.

Plaintiff argues that he is no longer arguing that the Privacy Policy is an "express contract," DE 53 at 6-7, but the Eleventh Circuit has never so narrowly circumscribed the incorporation by reference doctrine. It has considered contracts incorporated by reference when central to securities claims, *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007), antitrust claims, *Daewoo Motor America v. General Motors*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006), and breach of fiduciary duty and constructive fraud claims, *SFM Holdings*, 600 F.3d at 1337. As explained in Trulieve's motion to dismiss and acknowledged in all three versions of the complaint here, the Privacy Policy here is

likewise central to the core issue of whether Plaintiff has a reasonable expectation of privacy.[2]

## II. Plaintiff Had No Reasonable Expectation of Privacy

Plaintiff's Opposition further undermines his claim of a reasonable expectation of privacy because it underscores that he cannot sue for damages based on any truthful statements about his marijuana use.

### A. Plaintiff Does Not and Cannot Dispute that any Privacy Interest in Marijuana Use Has Been Repeatedly Rejected in Many Contexts

Plaintiff tries to brush aside as irrelevant but does not and cannot contest: (1) this Court's ruling that "[f]ederal law designates marijuana as contraband for any purpose," DE 50 at 17; (2) "the Florida Constitution does not grant any privacy interests that would remotely support protecting information about his medical marijuana use," DE 50 at 18; or (3) "the medical marijuana industry is highly regulated and surveilled in the State of Florida," DE 50 at 19. To the contrary, Plaintiff concedes that "federal law makes marijuana illegal." DE 53 at 1.

Plaintiff tries to distinguish *City of North Miami v. Kurz*, 653 So. 2d 1025 (Fla. 1995) as limited to tobacco use because in the mid-1990s, smokers did so in public and with less stigma but that is a distinction without a difference. Now that

---

[2] Every Article III standing case argument made by Plaintiff has been addressed previously in the extensive briefing and argument on the prior motion to dismiss and the latest motion to dismiss, so this reply will not belabor them.

tobacco use is more stigmatized, Plaintiff does not suggest that the Florida Supreme Court would have reached a different result. And the Florida Supreme Court and binding Eleventh Circuit precedent also repeatedly rejected privacy challenges to criminalizing marijuana use in one's own home in the decades before the Florida Constitution made medical marijuana legal under state law.[3]

**B. Trulieve Has No Liability for Truthful Speech about Plaintiff's Marijuana Use**

Plaintiff admits that to support a privacy claim in tort, the published facts cannot be about "a legitimate concern to the public," DE 53 at 14, which fatally undermines his claimed reasonable expectation of privacy. As explained above, Plaintiff here has also conceded that "federal law makes marijuana illegal." DE 53 at 1.

Both the Florida Supreme Court and the United States Supreme Court have ruled that information about what Plaintiff describes as "illegal" activity is "of public concern." In *Cape Publications v. Hitchner*, 549 So. 2d 1374 (Fla. 1989), the Florida Supreme Court held that a couple that had received a directed verdict

[3] *Laird v. State*, 346 So. 2d 962, 963 (Fla. 1977) ("We reject the notion that smoking marijuana at home is the type of conduct protected by the constitutional right of privacy"); *Borras v. State*, 229 So. 2d 244, 246 (Fla. 1969) (ruling that privacy rights did not foreclose "the outlawing of marijuana, in private and elsewhere"); *Leary v. United States*, 544 F.2d 1266, 1270 (5th Cir. 1977) (rejecting argument "that private possession of contraband drugs is protected by the same right of privacy which permits adults to examine pornography in private").

rejecting criminal charges of child abuse could not hold a newspaper liable for publishing confidential child abuse information. A Florida statute there criminalized the disclosure of any information about confidential reports of child abuse. *Id.* at 1377. The newspaper then printed "confidential child abuse information related to [a criminal] case," *id.*, but the Florida Supreme Court held that publishers could not be held "liable for [the] public-facts tort" because the "information disclosed" was "of legitimate public concern." *Id.* at 1378. That interpretation of the scope of the "public concern" requirement was compelled by United States Supreme Court precedent. *Id.* at 1378.[4]

The Third District Court of Appeal has since recognized that *Cape Publications* required the dismissal of a complaint for invasion of privacy against the Florida Department of Law Enforcement for posting criminal records to its website in violation of "a court order directing FDLE to seal and expunge the defendant's [criminal] records." *Walker v. Florida Dept. of Law Enforcement*, 845 So. 2d 339 (Fla. 3d DCA 2003). The Third District there cited to *Cape Publications*

---

[4] *See, e.g., Florida Star v. B.J.F.*, 491 U.S. 524, 526 & n.1 (1989) (vacating damages award and striking down Florida statute that made it unlawful to communicate the name of the victim of a sexual offense); *Cox Broadcasting v. Cohn*, 420 U.S. 469, 471, 496-497 (1975) (ruling First Amendment bars "a State [from] extending a cause of action for damages for invasion of privacy caused by the publication of the name of a deceased rape victim which was publicly revealed in connection with the prosecution of a crime" despite Georgia statute that made it unlawful to print the name or identity of a sexual assault victim).

to rule that "[t]he trial court correctly held that the claimant could not state a cause of action for invasion of privacy, as a matter of law, because the information allegedly disseminated by FDLE constituted a matter of legitimate public interest or concern." *Id.* at 340.

Plaintiff hearkens back to a 1962 case that pre-dates the current Restatement (Second) of Torts as well as the above First Amendment precedent from the Florida Supreme Court and United States Supreme Court.

Plaintiff's gloss on that case must be rejected. In *Patterson v. Tribune Co.*, 146 So. 2d 623 (Fla. 2d DCA 1962), the Second District Court of Appeal held that a plaintiff stated a cause of action for publication of a docket entry that did not reveal that his commitment was "voluntary" and where "[t]o the lay reader, the publication might even suggest criminal dealing in narcotics." *Id.* at 626. Indeed, the Second District, in finding the publication "implicitly prohibited," cited not only to a Florida statute but also to the laws of "Libel and Slander." *Id.* at 626-627. To the extent *Patterson* has survived the later rulings of the Florida and United States Supreme Court about matters of "public concern," it cannot, consistent with the First Amendment, be interpreted to create civil liability for truthful statements about marijuana use.

### C. Neither Federal nor Florida Statutes Support Plaintiff's Claimed Expectation of Privacy

Plaintiff concedes that "HIPPA, without more, falls short of creating a reasonable expectation of privacy." DE 53 at 21. Plaintiff instead argues generally that furnishing "highly sensitive medical details" "while obtaining healthcare goods" "in a health care setting" creates a reasonable expectation of privacy. DE 53 at 18.

For controlled substances that are lawful with prescription and unlawful without one, dispensing pharmacies are closely monitored. Florida law enforcement does not need a warrant or patient consent to obtain this information about controlled substances, *see, e.g., State v. Thompson*, 72 So. 3d 246, 247 (Fla. 2d DCA 2011) (collecting cases), and the United States Supreme Court has held that such surveillance regimes do not invade any privacy rights, *Whalen v. Roe*, 429 U.S. 589, 603-604 (1977). The parallel close surveillance regime for medical marijuana likewise defeats any reasonable expectation of privacy here. Indeed, every statute and case cited by Plaintiff involves specific Florida statutory protections for traditional health care information from traditional health care providers that are inapplicable here.[5]

---

[5] None of Plaintiff's cases other than *Patterson* involve pharmacies or controlled substances, let alone medical marijuana dispensaries or medical marijuana. *See, e.g., Florida Dept. of Corrections v. Abril*, 969 So. 2d 201, 203 (Fla. 2007) (recognizing Florida statute supported claim for negligence by "health care providers who

Plaintiff also argues that "the Legislature has exempted medical marijuana personal information from public disclosure" under the Sunshine Law, DE 53 at 19, but that cannot serve as a springboard for civil liability. As explained above, the Florida Supreme Court and United States Supreme Court have ruled privacy torts cannot support damages claims based on truthful statements about crimes because they are matters of "public concern" even where state statutes separately granted far more sweeping protections than the Sunshine Law exemption here.

### D. Trulieve's Privacy Policy Eliminates any Reasonable Expectation of Privacy

---

conducted [plaintiff correctional institution's nurse's] HIV test" and faxed it to two separate unsecured office fax machines); *State v. Johnson*, 814 So. 2d 390, 393 (2000) (addressing admissibility of blood alcohol test contained in hospital records in criminal prosecution for manslaughter; "A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution" but outweighed by compelling state interest); *Resnick v. Amed, Inc.*, 963 F.3d 1317, 1322 (11th Cir. 2012) (theft of two laptops from a Florida corporation "that delivers health care services through health plans and government-sponsored managed care plans" that was followed by the unauthorized opening of credit cards and financial accounts in plaintiffs' names); *D.S. v. Tallahassee Memorial Healthcare*, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) ("Defendant Tallahassee Memorial Healthcare ('TMH') is a healthcare system that operates Tallahassee Memorial Hospital"); *W.W. v. Orlando Health, Inc.,* 2025 WL 722892, at *3 (M.D. Fla. Mar. 6, 2025) ("Defendant is a healthcare organization that operates over one hundred medical facilities"; Plaintiff used patient portal "to complete forms to book medical appointments, authorize treatments, and request medical records and invoices, [and] to communicate with providers"); *Cyr v. Orlando Health, Inc.,* No. 8:23-cv-588-WFJ-CPT, DE 1 at 1 & ¶, DE 37 (M.D. Fla. July 5, 2023) (denial of motion to dismiss by docket entry where complaint alleged that defendant "hospital network," a "3,238-bed system that includes 23 hospitals," offered a patient portal where patients could "access test results, request prescription refills," and "access all of [their] Bayfront health information").

As explained in Trulieve's Motion to Dismiss, p. 3, its Privacy Policy discloses: "we collect personal information from website visitors, app users, customers, potential investors, potential employees, and physicians we partner with." Ex. A; Compl. ¶ 5, n. 6. The Privacy Policy further explains that Trulieve uses "personal information to conduct our business and to provide you with high quality production and services." *Id.* This information includes collecting "your name, email address, mailing address, phone number or other details needed to create a profile." *Id.*

Plaintiff argues that "the Privacy Policy does not expressly authorize Trulieve to share patient PHI/PII with third parties," DE 53 at 8, but that tries to thread an elephantine privacy expectation through an impossibly thin needle. As explained above, it cannot serve as a basis for a reasonable expectation of privacy to impose civil liability through damages on Trulieve for truthful speech about a matter of public concern.

## III. The Complaint Fails to State a Claim for Breach of Confidence—First Cause of Action

Plaintiff concedes—as he must—that if the breach-of-confidence tort exists, he must still establish "an unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." DE 53 at 24. That creates two fatal barriers to a breach of confidence claim.

*First,* the relationship between Robinson and Trulieve was not a "confidential" one, which "traditionally arise in the context of close professional relationships-those involving physicians, therapists, financial institutions, and the like." *Muransky v. Godiva Chocaltier*, 979 F.3d 917, 932 (11th Cir. 2020) (en banc). Plaintiff does not have the same confidential relationship with Trulieve, which according to the Complaint receives his medical marijuana ID number, *e.g.* DE 47 ¶¶ 31, 36, 47(c), but is not privy to his symptoms, diagnosis, or other highly sensitive medical information. And although Plaintiff characterizes medical marijuana use as "personal health information," DE 47 ¶¶ 31, 36, 47(c), 107, "the mere receipt of confidential information is insufficient by itself to transform an arm's length transaction into a fiduciary" or confidential relationship. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022). Plaintiff's authorities to the contrary involve precisely the type of examples recited by the Eleventh Circuit in *Muransky*, which are a far cry from Plaintiff's relationship with Trulieve.

*Second,* Plaintiffs' argument must be rejected for the same reasons this Court previously rejected Plaintiff's "implied contract" claim, namely the failure to allege any "reasonable expectation Trulieve would keep his medical marijuana use confidential and part of the monies paid to Trulieve was for that purpose." DE 42 at

11. Both the prior complaint and its current iteration "include[] no facts to support these conclusions." DE 42 at 11.[6]

## IV. The Complaint Fails to State a Claim for Breach of Implied Contract—Second Cause of Action

Plaintiff's one-paragraph defense his claim for breach of implied contract does not and cannot point to any allegations that, as part of what he bought from Trulieve, he purchased an assurance that no information would be shared with commercial third-parties.

Plaintiff recycles the arguments about a reasonable expectation of privacy and argues that Trulieve had accepted "highly sensitive health information long protected under Florida law," DE 53 at 27, but that claim contrasts sharply with

[6] The cases Plaintiff cites are inapposite or support Trulieve's position. *See Jaeger v. State*, 403 So. 3d 384, 385 (Fla. 2d DCA 2025) (ruling trial court properly refused to enforce subpoena of medical records unrelated to charged offense, including test results and any notes and observations from treating nurses, EMTs, and physicians); *Mullis v. State,* 79 So. 3d 747, 749, 751 (Fla. 2d DCA 2011) (ruling detective properly obtained pharmacy records during an investigation and affirming denial of motion to suppress those records despite absence of subpoena or warrant but finding medical records kept in doctors' offices entitled to greater protections); *Gore v. State*, 74 So. 3d 1119, 1120 (Fla. 4th DCA 2011) (ruling trial court properly denied motion to suppress "pharmacy records, which police obtained without a warrant or subpoena" but did err "by denying Defendant's motion to suppress his medical records and physician statements"); *United States v. Litzky,* 2019 WL 1586740, at *1-2 (M.D. Fla. 2019) (granting unopposed motion to file "three psychological evaluations" in support of "[m]ental [r]etardation" and "[o]rganic [b]rain [s]yndrome" made at age 10; no mention of breach of confidence tort).

Florida law. Only in 2016 did Florida voters legalize medical marijuana,[7] which means that before then it had zero protections under Florida law. And, again, Plaintiff concedes that that "federal law makes marijuana illegal." DE 53 at 1. So Plaintiff does not and cannot explain how its confidentiality has been "long protected under Florida law."[8]

## V. The Complaint Fails to State a Claim for Unjust Enrichment—Third Cause of Action

As explained in the Motion to Dismiss, pp. 23-25, Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has not alleged that Trulieve received a benefit that would be unjust to retain without compensation. "A contract implied in law, or 'quasi contract,' operates when there is no contract to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016). As this Court found in the prior order granting the motion to dismiss, Plaintiff did not plausibly allege facts to support the legal conclusion "that sharing his identity with Trulieve

---

[7] https://ballotpedia.org/Florida_Amendment_2,_Medical_Marijuana_Legalization_Measure_(2016)

[8] Plaintiff's allegations here contrast with those in the single case cited by Plaintiff, where at trial "two witnesses [had] testified that [defendant] agreed to work directly with [plaintiff] concerning additional landscaping and that [defendant] would pay [plaintiff] directly for the additional materials and labor." *Rhythm & Hues v. Nature's Lawn Care, Inc.*, 368 So. 2d 12, 14 (Fla. 4th DCA 2023).

conferred a benefit that Trulieve inequitably retained," and his amendment fails to address this shortcoming. DE 42 at 12.

Plaintiff argues that "his medical data has value which Trulieve received and exploited without compensating Plaintiff," DE 53 at 35, but Plaintiff cannot explain how the retention was unjust when he identifies no harm, let alone financial harm, from its surrender. As explained in this Court's prior order, his allegations of losses are "conclusory" because he has "alleged no facts showing his personally information was financially valuable to him or its value decreased once shared." DE 42. As this Court explained, "any website user devalues his own information's value every time he makes an online purchase." DE 42 at 13.[9]

## VI. The Complaint Fails to State a Claim for Public Disclosure of Private Facts—Fourth Cause of Action

In Florida, the elements of the common law tort of public disclosure of private facts can be summarized as "(1) the publication, (2) of private facts, (3) that are

---

[9] Though the Second Amended Complaint tries to identify a market for selling personally identifying information, it does not allege that those markets require exclusive access to a person's personally identifying information. DE 47 ¶ 68. As Judge Altonaga has put it: "Nothing prevents [plaintiffs] from exchanging their email addresses for Wi-Fi access and exclusive discounts at their local coffee shops" or "giving companies permission to sell their data to advertisers who will target them for special deals." *Fraga v. UKG*, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022). Indeed, Judge Posner similarly explained that the defendant "did not take the plaintiff's personal information away from him," he "hasn't been deprived of anything," and he "isn't asking [defendant] to return his personal information," the argument that the plaintiff has been harmed is "gibberish." *Id.* at *12 (quoting *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017)).

offensive, and (4) are not of public concern." *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989).

As explained above, Plaintiff has failed to state this claim principally because he had no reasonable expectation of privacy, meaning that the facts were not "private." In part, he lacked a reasonable expectation of privacy because he has conceded that under federal law marijuana use is unlawful, making it a matter of "public concern."

The Complaint also fails to satisfy the "publication" requirement. Plaintiff argues that his information was sent "across multiple commercial systems," DE 53 at 31, but that does not establish that it was sent to the public at large. Publication requires "that a matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (citing Restatement (Second) of Torts section 652D cmt. a)). Likewise, in Florida, "the tort of invasion of privacy must be accompanied by publication to the public in general or to a large number of persons." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). Indeed, in the only case not previously addressed in Trulieve's motion but cited in the Opposition now, the Fifth District held that at summary judgment that a video of an autopsy of a 14-year-old did not meet the

publication requirement when it was played at an officer's home in an allegedly party atmosphere. *Williams v. City of Minneola*, 575 So. 2d 683, 685-686 (Fla. 5th DCA 1991). Plaintiff does not and cannot identify a single member of the public at large who learned that he uses medical marijuana because Trulieve shared his data or how they would do so.[10]

## VII. The Complaint Fails to State a Claim for Violation of Florida's Security of Communications Act—Fifth Cause of Action

Plaintiff also fails to state a claim under Florida's Security of Communications Act ("SCA").

### A. Plaintiff Fails to State a Claim because He Had No Reasonable Expectation of Privacy.

Plaintiff argues that he need not show a reasonable expectation of privacy because that requirement applies only to "oral communications" and not "wire communications," DE 53 at 32, but that misunderstands how fundamental the requirement is and misreads the statute's definitions. The SCA's legislative findings, history, and the decisions interpreting those impose the requirement of a reasonable expectation of privacy more generally. *Jacome v. Spirit Airlines*, 2021 WL 3087860, at *6-7 (Miami-Dade Cir. Ct. 2021). The statutory definitions

---

[10] Every case involving limited disclosure to members of the public cited by Plaintiff involved information of a "sexual nature," DE 50 at 26 n. 12, with one even involving rumors about sex with a minor, *Smith v. Volusia County*, 2011 WL 1598741, at * 1-2 (M.D. Fla. April 21, 2011).

likewise make clear that wire communications are treated the same: it restricts a "[w]ire communication to 'any aural transfer,'" Fla. Stat. § 934.02(1), an "aural transfer" is "a transfer containing the human voice at any point," Fla. Stat. § 934.02(18), and so "wire communication" includes the requirements for an "oral communication," including the requirement of "an expectation that such communication is not subject to interception under circumstances justifying such an expectation," Fla. Stat. § 934.02(2).

As explained above, Plaintiff had no reasonable expectation of privacy here and so no cause of action under the SCA.

### B. Plaintiff Fails to State a Claim because He Does Not Allege That Trulieve Captured the Content of a Protected Communication

Because Plaintiff does not allege Trulieve acquired the "contents" of a communication by collecting Trulieve.com browsing data, he fails to allege facts that satisfy the statutory definition of intercept. The SCA defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). "Contents when used with respect to any wire, oral, or electronic communication, includes any information concerning the *substance, purport, or meaning* of that communication." Fla. Stat. § 934.02(7)

Florida state and federal courts have consistently found that website tracking technology does not capture the "content" of a communication and therefore does

not intercept electronic communications pursuant to the SCA. In *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *1 (Fla. Cir. Ct.), Plaintiff alleged that while browsing Spirit's website, Spirit used tracking technologies to intercept "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff." The court ruled that the SCA—as well as its federal analogue, the Federal Wiretap Act—was not passed with the intent to "extend to the use of commonplace analytics software to improve a website browsers' experience." *Id.* at *3. The court went on to explain that the contents of a communication "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Id.* As such, the information allegedly collected by Spirit was not sufficient to allege that Spirit acquired the contents of any communications. *Id.* at 4. Other courts applying the reasoning in *Jacome* have come to the same conclusion.[11]

---

[11] *See e.g. Goldstein v. Costco Wholesale Corp.,* 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021); *Cardoso v. Whirlpool Corp*., No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021).

*But cf. W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, at *3 (M.D. Fla. Mar. 6, 2025) (finding that the technology employed by the defendant, a healthcare organization, did intercept communications where it tracked "her status as a medical patient, her health conditions, her desired treatment, and her preferred physician or specialist, as well as any information included in phrases and search queries she entered into [d]efendant's website," associated with

Plaintiff similarly fails to allege that Trulieve captured the intended message conveyed by a communication. Plaintiff alleges Trulieve transmitted "information such as full name, email address, IP address, information about marijuana purchases and activity, physical location, customer_id, persistent device IDs, keystrokes and other regulated-use details, contact and device coordinates, scroll depth, and behavior and transactional context details like mouse movements and keystrokes." DE 47 ¶ 156. Despite Plaintiff's conclusory allegations that this constitutes the "substance, import, and meaning of communications," *id.*, this information is "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message." *Jacome*, 2021 WL 3087860, at *4. It is simply a record of purchase transactions but does not include any message, let alone its substance or meaning.[12]

---

her personally identifying information, and resulting in advertisements on other websites related to the same illnesses for which she sought treatment).

[12] Plaintiff also fails to state a claim pursuant to SCA for two more technical reasons: (1) "software, email servers, and drives do not constitute devices under the wiretapping statutes." *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (Fla. Cir. Ct. 2021) (collecting cases). (2) Although Plaintiff alleges that the "electronic communications are intercepted contemporaneously with their transmission." Comp. ¶ 159, this, "without pleading any ultimate facts in support [is] insufficient to demonstrate that any interception happened contemporaneously with transmission as opposed to being retrieved from storage." *Id.* at *6.

## CONCLUSION

The Complaint must be dismissed because Plaintiff lacks standing and otherwise fails to state a claim for each count he attempts to assert.

Date: October 15, 2025

Respectfully submitted,

By: /s/ *Grace L. Mead*

GRACE L. MEAD
Florida Bar No. 49896
gmead@stearnsweaver.com
ANDREA N. NATHAN
Florida Bar No. 16816
anathan@stearnsweaver.com
HANNAH E. MURPHY
Florida Bar No. 1032759
hmurphy@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: 305-789-3200
(305) 789-3200
Facsimile: 305-789-3395
(305) 789-3395

*Attorneys for Defendant, Trulieve, Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), I HEREBY CERTIFY that the foregoing Reply, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 5,122 words as measured by Microsoft Office for Word.

s/ Grace L. Mead
GRACE L. MEAD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of October, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Grace L. Mead
GRACE L. MEAD

## SERVICE LIST

**KATHERINE M AIZPURU**
TYCKO & ZAVAREEI LLP -
WASHINGTON DC
2000 PENNSYLVANIA AVENUE
NW
SUITE 1010
WASHINGTON, DC 20006
202-973-0900
Email: kaizpuru@tzlegal.com
*PRO HAC VICE*

**ARTURO JOSE PENA MIRANDA**
STERLINGTON PLLC - NEW YORK
NY
ONE WORLD TRADE CENTER
285 FULTON STREET
85TH FLOOR
NEW YORK, NY 10007
407-839-4200
Email:
arturo.pena@sterlingtonlaw.com

*Counsel for Plaintiff Mark Robinson*
*and the Proposed Classes*